**CASE NO. 25-2072**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| JASON SANCHEZ, | ) |
|     Plaintiff- Appellee | ) |
| | ) |
| v. | ) |
| | ) |
| MIKE GALLAGHER, individually | ) |
| and in his official capacity, | ) |
| and EDDY COUNTY BOARD OF | ) |
| COMMISSIONERS, | ) |
|     Defendants-Appellants. | ) |

On Appeal from the United States District Court
For the District of New Mexico
The Honorable Judge Margaret I. Strickland
D.C. No. 2:25-cv-00226-MIS-GJF

**APPELLANTS' APPENDIX**

Respectfully submitted,

JONLYN M. MARTINEZ
Attorneys for Defendants-Appellants
P.O. Box 1805
Albuquerque, NM 87103-1805
(505) 247-9488

CERTIFICATE OF SERVICE

I hereby certify on this October 1, 2025, I sent a copy of the foregoing via

the CM/ECF system and electronic mail to all counsel of record.

*/s/ Jonlyn M. Martinez*
JONLYN M. MARTINEZ
*Attorney for Defendants-Appellants*
P.O. Box 1805
Albuquerque, NM 87103-1805
(505) 247-9488

# No. 25-2072
## TABLE OF CONTENTS
## APPELLANTS' APPENDIX

| Document Number | Filing Name | Date | Pg. No. |
|---|---|---|---|
| N/A | Table of Contents | N/A | i |
| N/A | Docket Sheet | | 0001 |
| 1 | Complaint | 03/05/2025 | 0005 |
| 4 | Defendants' Answer to Plaintiff's Complaint | 03/31/2025 | 0013 |
| 6 | Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity | 04/02/2025 | 0019 |
| 6-1 | Affidavit of Medrano | 04/02/2025 | 0030 |
| 6-2 | Affidavit of Gallagher | 04/02/2025 | 0034 |
| 8 | Unopposed Motion to Stay Proceedings Pending Outcome of Defendants' Motion for Summary Judgment [Document No. 6] | 04/11/2025 | 0036 |
| 9 | Order Granting Stay and Vacating Scheduling Order | 04/11/2025 | 0041 |
| 10 | Plaintiff's Response to Defendants' Motion for Summary Judgment | 04/16/2025 | 0042 |
| 10-1 | Declaration of Jason Sanchez | 04/16/2025 | 0059 |
| 10-2 | Declaration of Curtis Waldo | 04/16/2025 | 0066 |
| 13 | Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity | 04/29/2025 | 0094 |
| 13-1 | LaSella Affidavit | 04/29/2025 | 0106 |
| 14 | Defendants' Notice of Completion of Briefing | 04/30/2025 | 0110 |
| 15 | Unopposed Motion for Leave to file Sur-Reply | 05/01/2025 | 0112 |
| 15-1 | Sur-Reply in Further Response to Defendants' Motion for Summary Judgment | 05/01/2025 | 0114 |

| 16 | Order Granting [15] Unopposed Motion for Leave to file Sur-Reply | 05/05/2025 | 0117 |
|----|------------------------------------------------------------------|------------|------|
| 17 | Sur-Reply in Further Response to Defendants' Motion for Summary Judgment | 05/05/2025 | 0119 |
| 18 | Order Denying Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity | 06/10/2025 | 0122 |
| 19 | Notice of Appeal | 06/30/2025 | 0151 |

APPEAL

# U.S. District Court
# United States District Court - District of New Mexico (Las Cruces)
# CIVIL DOCKET FOR CASE #: 2:25-cv-00226-MIS-GJF

Sanchez v. Gallagher et al
Assigned to: District Judge Margaret I. Strickland
Referred to: Magistrate Judge Gregory J. Fouratt
Related Cases:  2:25-cv-00560-DLM-KRS
                2:25-cv-00351-DLM-GBW
Case in other court:  USCA, 25-02072
Cause: 28:1983 Civil Rights

Date Filed: 03/05/2025
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Jason Sanchez**                    represented by   **Benjamin Gubernick**
                                                      Gubernick Waldo Law Advocates LLP
                                                      717 Texas Ave
                                                      Suite 1200
                                                      77002
                                                      Houston, TX 77002
                                                      623-252-6961
                                                      Email: ben@wglawllp.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Curtis Waldo**
                                                      Waldo Gubernick Law Advocates, LLP
                                                      717 Texas Avenue, Ste. 1200
                                                      Houston, TX 77002
                                                      713-306-0512
                                                      Email: curtis@wglawllp.com
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Mike Gallagher**                   represented by   **Jonlyn M Martinez**
*individually and in his official capacity*          Law Firm of Jonlyn M. Martinez
                                                      P O Box 1805
                                                      105 14th St. SW
                                                      Albuquerque, NM 87103-1805
                                                      (505) 247-9488
                                                      Fax: (505) 247-9566
                                                      Email: jonlyn@jmartinezlaw.net
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Eddy County Board of Commissioners**   represented by   **Jonlyn M Martinez**
                                                          (See above for address)

Appellants' Appendix
0001

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/05/2025 | 1 | COMPLAINT against All Defendants ( Filing Fee - Online Payment), filed by Jason Sanchez. (Waldo, Curtis) (Entered: 03/05/2025) |
| 03/05/2025 | | Filing and Administrative Fees Received: $ 405 receipt number ANMDC-9817658 re 1 Complaint filed by Jason Sanchez (Payment made via Pay.gov)(Waldo, Curtis) (Entered: 03/05/2025) |
| 03/05/2025 | | United States Magistrate Judge Kevin R. Sweazea and United States Magistrate Judge Gregory J. Fouratt assigned. (eh) (Entered: 03/05/2025) |
| 03/05/2025 | 2 | PLEASE TAKE NOTICE that this case has been randomly assigned to United States Magistrate Judge Kevin R. Sweazea to conduct dispositive proceedings in this matter, including motions and trial. Appeal from a judgment entered by a Magistrate Judge will be to the United States Court of Appeals for the Tenth Circuit. **It is the responsibility of the case filer to serve a copy of this Notice upon all parties with the summons and complaint.** *Consent is strictly voluntary, and a party is free to withhold consent without adverse consequences. Should a party choose to consent, notice should be made no later than 21 days after entry of the Order setting the Rule 16 Initial Scheduling Conference.* For e-filers, visit our Web site at www.nmd.uscourts.gov for more information and instructions. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (eh) (Entered: 03/05/2025) |
| 03/05/2025 | | Summons Issued as to Eddy County Board of Commissioners. (eh) (Entered: 03/05/2025) |
| 03/05/2025 | 3 | APPENDIX/SUPPLEMENT re 1 Complaint *Civil Cover Sheet* by Jason Sanchez (Waldo, Curtis) (Entered: 03/05/2025) |
| 03/05/2025 | | Summons Issued as to Mike Gallagher. (eh) (Entered: 03/05/2025) |
| 03/31/2025 | 4 | ANSWER to 1 Complaint with Jury Demand by Mike Gallagher, Eddy County Board of Commissioners. Related document: 1 Complaint filed by Jason Sanchez.(Martinez, Jonlyn) (Entered: 03/31/2025) |
| 04/01/2025 | 5 | INITIAL SCHEDULING ORDER by Magistrate Judge Gregory J. Fouratt. A Telephonic Rule 16 Initial Scheduling Conference is set for **May 19, 2025 at 10:00 a.m. MDT.** Joint Status Report and Provisional Discovery Plan due by **May 12, 2025.** The parties shall call the WebEx conference line at (855) 244-8681 and dial access code 2313 888 6328 to connect to the proceedings. When prompted for an Attendee ID number, press #. Unless otherwise notified by the Clerk or the Court a notice of consent or non-consent for this case to proceed before the trial Magistrate Judge should be submitted by each party no later than **April 22, 2025.** (jww) (Entered: 04/01/2025) |
| 04/02/2025 | 6 | Opposed MOTION for Summary Judgment *based in part on qualified immunity* by Mike Gallagher, Eddy County Board of Commissioners. (Attachments: # 1 Exhibit Affidavit of Medrano, # 2 Exhibit Affidavit of Gallagher) (Martinez, Jonlyn) (Entered: 04/02/2025) |
| 04/11/2025 | 8 | Unopposed MOTION to Stay re 6 Opposed MOTION for Summary Judgment *based in part on qualified immunity* by Eddy County Board of Commissioners, Mike Gallagher. (Martinez, Jonlyn) (Entered: 04/11/2025) |
| 04/11/2025 | 9 | ORDER GRANTING STAY AND VACATING INITIAL SCHEDULING ORDER by Magistrate Judge Gregory J. Fouratt. (am) (Entered: 04/11/2025) |

Appellants' Appendix
0002

| 04/16/2025 | 10 | RESPONSE in Opposition re 6 Opposed MOTION for Summary Judgment *based in part on qualified immunity* filed by Jason Sanchez. (Attachments: # 1 Exhibit Sanchez Decl, # 2 Exhibit Waldo Decl) (Waldo, Curtis) (Entered: 04/16/2025) |
|---|---|---|
| 04/23/2025 | 11 | PLEASE TAKE NOTICE that this case has been reassigned to District Judge Margaret I. Strickland as the trial judge.<br><br>Under D.N.M.LR-Civ. 10.1, the first page of each document must have the case file number and initials of the assigned judges.<br><br>***Accordingly, further documents filed in this matter must bear the case number and the judges' initials shown in the case caption and the NEF for this document.*** **Kindly reflect this change in your filings.**<br><br>Magistrate Judge Kevin R. Sweazea no longer assigned to this case.<br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (eh) (Entered: 04/23/2025) |
| 04/29/2025 | 12 | NOTICE REGARDING DOCUMENT ENTRIES: Because this case has been reassigned to a district judge, please be advised that any documents filed by the parties under Rule 73(b) have been permanently removed from the docket. Document(s) removed: No. 7. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (kg) (Entered: 04/29/2025) |
| 04/29/2025 | 13 | REPLY to Response to Motion re 6 Opposed MOTION for Summary Judgment *based in part on qualified immunity* filed by Eddy County Board of Commissioners, Mike Gallagher. (Attachments: # 1 Exhibit Affidavit) (Martinez, Jonlyn) (Entered: 04/29/2025) |
| 04/30/2025 | 14 | NOTICE of Briefing Complete by All Defendants re 6 Opposed MOTION for Summary Judgment *based in part on qualified immunity* filed by Eddy County Board of Commissioners, Mike Gallagher (Martinez, Jonlyn) (Entered: 04/30/2025) |
| 05/01/2025 | 15 | First MOTION for Leave to File *Sur-Reply* by Jason Sanchez. (Attachments: # 1 Exhibit Proposed Sur-Reply) (Waldo, Curtis) (Entered: 05/01/2025) |
| 05/05/2025 | 16 | ORDER by District Judge Margaret I. Strickland GRANTING 15 Unopposed Motion for Leave to File Sur-Reply.<br><br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (jsq) (Entered: 05/05/2025) |
| 05/05/2025 | 17 | RESPONSE in Opposition re 6 Opposed MOTION for Summary Judgment *based in part on qualified immunity Sur-Reply* filed by Jason Sanchez. (Waldo, Curtis) (Entered: 05/05/2025) |
| 06/10/2025 | 18 | ORDER by District Judge Margaret I. Strickland DENYING 6 Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity. (gri) (Entered: 06/10/2025) |
| 06/30/2025 | 19 | NOTICE OF APPEAL as to 18 Order on Motion for Summary Judgment by Eddy County Board of Commissioners, Mike Gallagher. (Filing Fee - Online Payment) (Martinez, Jonlyn) (Entered: 06/30/2025) |
| 06/30/2025 | | Filing Fee Received: $ 605 receipt number ANMDC-10054602 re 19 Notice of Appeal filed by Eddy County Board of Commissioners, Mike Gallagher (Payment made via Pay.gov)(Martinez, Jonlyn) (Entered: 06/30/2025) |
| 07/07/2025 | 20 | Transmission of Preliminary Record to US Court of Appeals re 19 Notice of Appeal (Attachments: # 1 Preliminary Record) (ac) (Entered: 07/07/2025) |

| 07/09/2025 | 21 | USCA Information Letter with Case Number 25-2072 for 19 Notice of Appeal filed by Eddy County Board of Commissioners, Mike Gallagher. (ac) (Entered: 07/09/2025) |
| 07/21/2025 | 22 | TRANSCRIPT ORDER FORM by Eddy County Board of Commissioners, Mike Gallagher requesting the proceedings held on n/a be transcribed for the 19 Notice of Appeal (Martinez, Jonlyn) (Entered: 07/21/2025) |
| 07/22/2025 | 23 | NOTICE TO USCA that Record is Complete re 19 Notice of Appeal. (nr) (Entered: 07/22/2025) |

**PACER Service Center**

**Transaction Receipt**

09/22/2025 11:19:42

| PACER Login: | jonlyn2010 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:25-cv-00226-MIS-GJF |
| Billable Pages: | 3 | Cost: | 0.30 |

Appellants' Appendix
0004

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JASON SANCHEZ

      Plaintiff,

                                                   Case No: _____

vs.

MIKE GALLAGHER,
individually and in his official
capacity, and
EDDY COUNTY BOARD OF
COMMISSIONERS,
      Defendants.

## COMPLAINT

Plaintiff Jason Sanchez ("Sanchez" or "Plaintiff"), by and through undersigned counsel,

brings this Complaint for damages and in support states the following:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Jason Sanchez is a resident of Texas.  Sanchez formerly lived in Eddy

County, New Mexico.

2.      Defendant Mike Gallagher is the county manager of Eddy County.  As county

manager, Gallagher oversees day-to-day operations and all of Eddy County's government

departments, including its regional fire service, sheriff's office, clerk's office and public works

department.  Gallagher attends the regular Eddy County Board of Commissioners ("Board")

meetings that take place once every two weeks.  Though he may at times delegate such decisions to

others, Gallagher has ultimate say in what comments from the public are heard at such meetings.

Gallagher will often read these comments himself.  On information and belief, Gallagher is a resident

of Eddy County, New Mexico.

3.      Defendant Eddy County Board of Commissioners (the "Board") is the executive

1

body responsible for administering governmental authority in Eddy County, New Mexico. The Board has its headquarters in Eddy County, New Mexico.

4.    This Court has subject matter jurisdiction because suit is brought against Defendants under the New Mexico Civil Rights Act, and for violations of Plaintiff's civil rights under 42 USC § 1983.

5.    This Court has personal jurisdiction over Defendants because Defendants are residents of New Mexico and the conduct complained of occurred in New Mexico.

6.    Venue is proper in this court as one or more Defendants is a resident of Eddy County, New Mexico.

7.    A notice of claim under the New Mexico Civil Rights Act has been timely provided via mail.

## STATEMENT OF FACTS

8.    This case concerns Defendants' illegal and unconstitutional viewpoint discrimination against Plaintiff relating to written comments Plaintiff sought to make during a public meeting of the Eddy County Board of Commissioners on March 4, 2025, but which Defendants denied Plaintiff the right to make.

9.    The Board holds its regular meeting every two weeks to discuss Eddy County business.

10.    These meetings are public forums. Except for certain matters such as litigation or employment negotiations that are discussed in private during Executive Session, the meetings are open to the public. The public can view the meeting in-person, and the Board makes the meeting available to watch online, too.

11.    There is a time at the beginning of Board meetings when members of the public can speak in person to the Board about matters of public concern. Such members of the public get

2

three minutes to speak.

12.    For example, at the February 18, 2025 meeting, a local resident complained about a neighboring RV leaving sewage near his property.

13.    Until very recently, the Board solicited comments through a public webpage on Eddy County's website and Eddy County's Facebook page, through which any person could submit a comment to be read at the meeting.

14.    The website portal specifically noted that submitted written comments were preferable to in-person comments.

15.    On information and belief, one of the reasons the Board encouraged written comments was so that people could express their views without the hassle of having to travel to a meeting at a certain time and place.

16.    It is customary that Gallagher or someone else will read written comments at the beginning of the Board meeting. For example, at the February 18, 2025 meeting, Gallagher read a comment from someone who was concerned about government land seizures.

17.    On or around February 25, 2025, via the portal, Plaintiff submitted a comment to be read at the next Board meeting, scheduled for March 4, 2025.

18.    Plaintiff's comment concerned public corruption at the Eddy County Sheriff's Office ("ECSO"). Specifically, Plaintiff questioned the integrity of certain ECSO employees, including Matthew Hutchinson, the elected sheriff, and Mark Cage, the former sheriff and now-undersheriff.

19.    If read aloud, Plaintiff's comment would have been less than three minutes long. Plaintiff's comment did not contain profanity. Plaintiff's comment did not promote his personal business interests. Plaintiff's comment did not encourage violence. Plaintiff's comment was submitted with ample time prior to the March 4, 2025 meeting.

Appellants' Appendix
0007

20.     Plaintiff submitted his comment in an effort to raise awareness about corruption and a two-tiered system of justice in Eddy County.

21.     On March 3, 2025, Plaintiff noticed that someone from Eddy County had disabled the online system for submitting comments to be read at the Board meeting. *I.e.*, despite what only two weeks ago was Defendants' professed preference for written comments submitted ahead of time, it seemed Defendants disabled this function after receiving Plaintiff's comment.

22.     This decision to disable the online submission of comments was made either by Mike Gallagher, or by persons acting with authority granted to them by Mike Gallagher.

23.     The Board meeting proceeded on March 4, 2025, at 8:30 a.m., and lasted for around three hours.

24.     Despite being properly submitted through the website portal, no part of Plaintiff's comment about the ECSO was read, by Gallagher or by anyone else.

25.     Plaintiff's comment was available to Gallagher and others working for Gallagher. Gallagher and his minions simply decided not to read it at the meeting.

26.     They decided not to read Plaintiff's comment because Gallagher and his minions wanted to protect Matthew Hutchinson, Mark Cage, and others in the ECSO, from criticism or embarrassment.

27.     In addition, on information and belief, Defendants deleted the online comment submission process because they knew Plaintiff lived in Texas; they knew it would be difficult for Plaintiff to attend a meeting in-person; and they wanted to discourage Plaintiff from being able to voice his concerns about corruption in Eddy County going forward.

28.     Defendants' conduct constitutes illegal viewpoint discrimination, prohibited by the United States and New Mexico Constitutions.

29.     Due to Defendants' illegal censorship, Plaintiff has experienced damages,

4

including loss of his right to express his concerns about public corruption at the March 4, 2025 Board meeting.

## COUNT I

### VIOLATIONS OF ARTICLE 2, § 17 OF THE NEW MEXICAN CONSTITUTION

**Brought by Sanchez against the Eddy County Board of Commissioners**

30.    Plaintiff incorporates all foregoing paragraphs as if fully stated here.

31.    The New Mexico Civil Rights Act creates a private cause of action against public bodies to redress the violation of a person's civil rights by government actors employed by a public body or a person acting on behalf of a public body under color of law.

32.    Decisions about what comments to permit at Board meetings constitute state action, as the Board is a government entity.

33.    The Board's biweekly meetings are a public forum under the laws of New Mexico and the United States.

34.    Gallagher was acting in furtherance of his official duties by determining what public comments to permit during the biweekly meeting held on March 4, 2025, or, alternatively, by delegating that authority.

35.    Gallagher was acting under color of law at all relevant times.

36.    Article 2, § 17 of the New Mexican Constitution states, "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

37.    Gallagher violated Plaintiff's free speech rights when he or those acting on his authority decided not to read Plaintiff's comment regarding ECSO corruption at the March 4, 2025 Board meeting.

38.    Gallagher had no legal basis to prevent Plaintiff's comment from being read.

39.    Gallagher **acted with malice in deciding not to read Plaintiff's comment.** **Specifically, Gallagher** acted with the intent to censor Plaintiff, chill his speech, and prevent the

5

public from learning the truth about the ECSO and its leadership.

40.     Gallagher caused Plaintiff harm by preventing him from exercising his free speech rights.

41.     Defendant Eddy County Board of Commissioners is liable for these harms pursuant to the New Mexico Civil Rights Act, NMSA § 41-4A-3.

## COUNT II

### 42 U.S.C. § 1983 - VIOLATION OF
### FIRST AMENDMENT OF UNITED STATES CONSTITUTION

**Brought by Plaintiff against Gallagher
(in his individual and official capacities) and the Eddy County Board of Commissioners**

42.     Plaintiff incorporates all foregoing paragraphs as if fully stated here.

43.     Gallagher censored Plaintiff as described above in violation of Plaintiff's constitutional rights, including the First Amendment to the U.S. Constitution.

44.     Due to these wrongful acts, Plaintiff has suffered injuries including but not limited to the inability to express himself as that right is guaranteed by the U.S. Constitution.

45.     On information and belief, the Board has inadequately trained its personnel on how to solicit comments at public meetings, and this failure was a moving force behind the violations of Plaintiff's First Amendment rights.

46.     Alternatively, on information and belief, the Board has a formal or informal custom, policy, and practice of not reading comments at its meetings that are critical of ECSO and its leadership.

47.     Gallagher acted with malice in denying Plaintiff his First Amendment rights.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter an order granting Plaintiff the following relief.

a.     Enter a Judgment against Defendants finding that they are liable to Plaintiff;

6

Appellants' Appendix
0010

b.      Award injunctive relief to Plaintiff;

c.      Award compensatory damages for all of Plaintiff's claims;

d.      Award punitive damages for Plaintiff's § 1983 claims;

e.      Award the costs and expenses of this case, including attorneys' fees for Plaintiff's §

1983 claims and New Mexico Civil Rights Act claims;

f.      Award pre-judgment and post-judgment interest;

g.      Award all other further and general relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury on all issues so triable.

Appellants' Appendix
0011

Date:  March 5, 2025

Respectfully submitted,


WALDO GUBERNICK
LAW ADVOCATES LLP

*/s/ Curtis Waldo*_____
Benjamin Gubernick
 New Mexico Bar No. 145006
Ben@wglawllp.com
 Curtis Waldo
 New Mexico Bar No. 163604
 curtis@wglawllp.com
346-394-8056
717 Texas St., Suite 1200
Houston, TX 77002

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

     **Plaintiff,**

**vs.**　　　　　　　　　　　　　　　　　　　　**Case No.: 2:25-cv-00226-KRS-GJF**

**MIKE GALLAGHER,**
**individually and in his official**
**capacity, and**
**EDDY COUNTY BOARD OF**
**COMMISSIONERS,**

     **Defendants.**

### DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

COME NOW Defendants Eddy County Board Of Commissioners and Mike Gallagher (hereafter "County Defendants"**),** by and through their counsel, Jonlyn M. Martinez, Law Office of Jonlyn M. Martinez, LLC, and hereby answer the Plaintiff's Complaint (hereafter "Plaintiff's Complaint") as follows:

### ANSWER TO INTRODUCTION

The County Defendants deny the allegations contained in the Plaintiff's Introduction.

### ANSWER TO PARTIES, JURISDICTION AND VENUE

1. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraph 1 of the Plaintiff's Complaint and therefore, deny same.

2. The allegations contained in paragraphs 2 and 3 of the Plaintiff's Complaint set forth legal conclusions to which no response is required by the County Defendants. To the extent a response is deemed required, the County Defendants deny same.

1

Appellants' Appendix
0013

3. The County Defendants admit the allegations contained in paragraphs 4, 5 and 6 of the Plaintiff's Complaint.

4. The allegations contained in paragraph 7 of the Plaintiff's Complaint set forth legal conclusions to which no response is required by the County Defendants. To the extent a response is deemed required, the County Defendants deny same.

### ANSWER TO FACTUAL ALLEGATIONS

5. The County Defendants deny the allegations contained in paragraphs 8 and 9 of the Plaintiff's Complaint.

6. The allegations contained in paragraph 10 of the Plaintiff's Complaint set forth legal conclusions to which no response is required by the County Defendants. To the extent a response is deemed required, the County Defendants deny same.

7. The County Defendants admit the allegations contained in paragraph 11 of the Plaintiff's Complaint.

8. With respect to the allegations contained in paragraph 12 of the Plaintiff's Complaint, the County Defendant states that minutes and recordings of the County's Board Meetings speak for themselves. To the extent the Plaintiff has misrepresented the matters presented or discussed at these meetings, the Defendants deny same.

9. With respect to the allegations contained in paragraph 13 of the Plaintiff's Complaint, the County Defendants state that it previously permitted public comments to be submitted through the County's website and its Facebook page. The County Defendants deny the remaining allegations contained in in paragraph 13 of the Plaintiff's Complaint.

10. The County Defendants deny the allegations contained in paragraphs 14 and 15 of the

Appellants' Appendix
0014

Plaintiff's Complaint.

11. With respect to the allegations contained in paragraph 16 of the Plaintiff's Complaint, the County Defendant states that minutes and recordings of the County's Board Meetings speak for themselves. To the extent the Plaintiff has misrepresented the matters presented or discussed at these meetings, the Defendants deny same.

12. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraph 17 of the Plaintiff's Complaint and therefore, deny same.

13. The County Defendants deny the allegations contained in paragraph 18 of the Plaintiff's Complaint.

14. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraphs 19, 20 and 21 of the Plaintiff's Complaint and therefore, deny same.

15. The County Defendants admit the allegations contained in paragraph 22 of the Plaintiff's Complaint.

16. The County Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraphs 23 and 24 of the Plaintiff's Complaint and therefore, deny same.

17. The County Defendants deny the allegations contained in paragraphs 25, 26, 27, 28 and 29 of the Plaintiff's Complaint.

## ANSWER TO COUNT I: VIOLATIONS OF ARTICLE 2, § 17
## OF THE NEW MEXICAN CONSTITUTION

18. With respect to the allegations contained in paragraph 30 of the Plaintiff's Complaint,

3

the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 29 of the Plaintiff's Complaint, as stated above, as though fully set forth herein.

19. The allegations contained in paragraphs 31, 32, 33, 34, 35 and 36 of the Plaintiff's Complaint set forth legal conclusions to which no response is required by the County Defendants. To the extent a response is deemed required, the County Defendants deny same.

20. The County Defendants deny the allegations contained in paragraphs 37, 38, 39, 40 and 41 of the Plaintiff's Complaint.

## ANSWER TO COUNT II: 42 U.S.C. § 1983 - VIOLATION OF FIRST AMENDMENT OF UNITED STATES CONSTITUTION

21. With respect to the allegations contained in paragraph 42 of the Plaintiff's Complaint, the County Defendants incorporate and adopt by reference all of their admissions and denials to paragraphs 1 through 41 of the Plaintiff's Complaint, as stated above, as though fully set forth herein.

22. The County Defendants deny the allegations contained in paragraphs 43, 44, 45, 46 and 47 of the Plaintiff's Complaint.

## JURY DEMAND

The County Defendants demand a trial by jury of all claims so triable.

## GENERAL DENIAL

The County Defendants deny each and every allegation of the Plaintiff's Complaint not specifically admitted above, including but not limited to any substantive allegations or requests for relief in Plaintiff's introductory language and request for relief.

4

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred in whole, or in part, by the doctrine of qualified immunity.

### THIRD AFFIRMATIVE DEFENSE

At all times, the Defendant's actions were justified, reasonable, were undertaken in good faith and without malice.

### FOURTH AFFIRMATIVE DEFENSE

The acts or omissions of persons other than the County Defendants constitute the sole proximate cause of the injuries and damages, if any, alleged by the Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims and damages are barred, in whole or in part by law.

### SIXTH AFFIRMATIVE DEFENSE

To the extent Plaintiff alleges that the County Defendants was negligent or otherwise at fault under any theory, which is denied, the Plaintiff and/or other third persons were negligent or otherwise at fault, thereby barring or reducing Plaintiff's recovery from the County Defendants under the principles of comparative fault.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims and damages are barred, in whole or in part by law.

Appellants' Appendix
0017

## EIGHTH AFFIRMATIVE DEFENSE

At all times, the County Defendants actions were reasonable and appropriate under the circumstances.

## NINTH AFFIRMATIVE DEFENSE

The County Defendants reserve the right to rely upon such other defenses as may become known or available during discovery proceedings in this case and hereby reserve the right to amend their answer to include such defenses.

Wherefore, having fully answered the Plaintiff's Complaint, the County Defendants respectfully request that the Court dismiss the Plaintiff's Complaint with prejudice, award the County Defendants their costs and attorneys' fees incurred herein, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

*Electronically filed March 31, 2025*
By:    */s/ Jonlyn M. Martinez*
       JONLYN M. MARTINEZ
       Attorneys for County Defendants
       P.O. Box 1805
       Albuquerque, NM 87103-1805
       (505) 247-9488

I hereby certify that a copy of the foregoing
was sent via CM/ECF to all counsel
of record on March 31, 2025:

_____/s/_____

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JASON SANCHEZ

        Plaintiff,

vs.                                     Case No.: 2:25-cv-00226-KRS-GJF

MIKE GALLAGHER,
individually and in his official
capacity, and
EDDY COUNTY BOARD OF
COMMISSIONERS,

        Defendants.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## BASED IN PART ON QUALIFIED IMMUNITY

COME NOW Defendants Mike Gallagher and Eddy County Board of Commissioners

(hereafter "County Defendants"), by and through their counsel, Jonlyn M. Martinez, Law Office

of Jonlyn M. Martinez, LLC, and hereby submit their Motion for Summary Judgment Based in

Part on Qualified Immunity pursuant to Fed. R. Civ. P. 56.

Counsel for the Plaintiff opposes this Motion.

## BACKGROUND

The Plaintiff's Complaint [Document No. 1], contains the following Counts:

Count I Violations of Article 2, § 17 of the New Mexican Constitution against Defendant
County; and

Count II 42 U.S.C. § 1983 - Violation of First Amendment of United States Constitution
against both Defendants.

The Plaintiff's claims arise from the Plaintiff's claim that his public comments were not

read at an Eddy County Commission meeting. The Defendants submit that at no time did the

Defendants refuse to read the Plaintiff's statements while reading other statements. Instead, a

decision had been made not to utilize on-line public comments prior to the Plaintiff's submission

1

of an on-line public comment. The decision to stop using on-line public comments did not violate the Plaintiff's rights. Therefore, the Defendants request that summary judgment be entered in favor of the Defendants.

## UNDISPUTED MATERIAL FACTS

1.      As a result of COVID, on or about April 9, 2020, Eddy County created a public comment form that was made available through a link on the Board of County Commissioners' webpage on the County's website and through a link the Eddy County public information officer posted on Facebook. *See Affidavit of Medrano*, at ¶ 4, attached hereto as Exhibit A.

2.      This public comment form provided: "In an effort to comply with public health orders, the number of persons attending the Eddy County Board of Commissioners meeting will be limited, but in person public comments are possible. The preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at the meeting. Please complete the online form below to submit your comments.  Individuals wishing to make in person Public Comments need to be in good health and follow recommended practices." *See Affidavit of Medrano*, at ¶ 5, attached hereto as Exhibit A, *and see Affidavit of Gallagher*, at ¶ 4,  attached hereto as Exhibit B.

3.      It was discovered that for almost two years, the public comment forms were being sent to two disabled email addresses. *See Affidavit of Medrano*, at ¶ 6, attached hereto as Exhibit A.

4.      Eddy County discovered this issue when an individual sent an email to a county employee on April 18, 2024, indicating that her public comment had not been read. *Id*., at ¶ 7. The IT Department was asked to look into this matter and the issue concerning the disabled email addresses was discovered. *Id*.

2

5.     Andrew Medrano determined that public comment forms had been submitted on the County's website but had not been sent to an active email address. *Id*., at ¶ 8.

6.     It appears that multiple public comment forms were not read at County Commission meetings as a result of this issue. *Id*. ., at ¶ 9.

7.     A new County Manager, Mike Gallagher, began working for Eddy County in January of 2025. *See Affidavit of Medrano*, at ¶ 10, attached hereto as Exhibit A, *and see Affidavit of Gallagher*, at ¶ 2, attached hereto as Exhibit B.

8.     Due to the fact that public health orders related to social distancing under COVID have been rescinded, Mike Gallagher determined that an on-line public comment form was no longer needed. *See Affidavit of Gallagher*, at ¶ 5, attached hereto as Exhibit B.

9.     On February 7, 2025, Mike Gallagher instructed Eddy County staff to remove the public comment form from the County's website. *Id*., at ¶ 6.

10.     On February 7, 2025, Andrew Medrano received an email from Adrienne Jones, the County Manager's Executive Administrative Assistant. *See Affidavit of Medrano*, at ¶ 11, attached hereto as Exhibit A.

11.     Ms. Jones' email instructed Andrew Medrano to immediately remove the form titled "Public Comments for the Next Board of County Commissioners' Meeting" from the County's website. *Id*., at ¶ 12.

12.     On February 7, 2025, Andrew Medrano removed the link to the form titled "Public Comments for the Next Board of County Commissioners' Meeting" from the County Commission's webpage. *Id*., at ¶ 13.

Appellants' Appendix
0021

13.    Mike Gallagher was informed that the link to the form titled "Public Comments for the Next Board of County Commissioners' Meeting" was removed from the County Commission's webpage. *See Affidavit of Gallagher*, at ¶ 7, attached hereto as Exhibit B.

14.    Mike Gallagher was informed that no link was posted on Eddy County's Facebook page on March 3, 3025, prior to the March 4, 2025, Eddy County Commission Meeting.  *Id*., at ¶ 8.

15.    The last public comment form read at the Eddy County Commission Meeting of February 18, 2025, was submitted on February 5, 2025. *See Affidavit of Medrano*, at ¶ 15, attached hereto as Exhibit A.

16.    On February 26, 2025, Mr. Medrano was contacted by Adrienne Jones informing him that the form titled "Public Comments for the Next Board of County Commissioners' Meeting" had  not been removed from the County's website. *Id*., at ¶ 16.

17.    Andrew Medrano reviewed the website and determined that although he had removed the link to this form from the Board of County Commissioners' webpage, the form was still available through a link on the County website's "How Do I" drop down menu. He was previously unaware that this form was available on a drop down menu. *Id*., at ¶ 17.

18.    A link to the form may also have been available through old Facebook posts. *Id*., at ¶ 18.

19.    On February 26, 2025, Andrew Medrano removed the form titled "Public Comments for the Next Board of County Commissioners' Meeting" from the County's website. Therefore, even if links to the form still exist, the form cannot be accessed. *Id*., at ¶ 19.

20.    Mike Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to

4

read a form submitted after February 7, 2025. *See Affidavit of Gallagher*, at ¶ 10, attached hereto as Exhibit B.

### POINTS AND AUTHORITIES

Summary judgment is properly granted if the moving party demonstrates there is no genuine dispute of material fact, and it is entitled to judgment as a matter of law. *Hall v. Allstate Fire & Cas. Ins. Co.*, 20 F.4th 1319, 1323 (10th Cir. 2021). When the moving party does not bear the burden of persuasion at trial, it may carry its burden of production by pointing to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998). Given a properly supported summary judgment motion, a nonmoving party must set forth specific facts upon which a rational trier of fact could find in its favor. *Id*. A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012) (quotations omitted). In the present case, the Undisputed Material Facts establish that the individually named Defendant is entitled to qualified immunity and the Defendants are entitled to summary judgment.

**A.**     **Plaintiff's Claim Under the New Mexico Civil Rights Act Fails.**

The Plaintiff's Complaint alleges that he is bringing Count I under the New Mexico Human Rights Act for an alleged violation of Count I Violations of Article 2, § 17 of the New Mexican Constitution which provides:

> Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged

5

as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted.

In the present case, the County Defendant passed no law to restrain or abridge the Plaintiff's liberty of speech. Instead, the County Defendants determined that the submission of online public comments was no longer needed, because the public health orders related to social distancing under COVID was no longer in place at County Commission meetings. *See Undisputed Facts*, at ¶¶'s 1, 2, 7, 8, 9 and 20. On February 7, 2024, the Defendants attempted to remove the ability to submit public comment forms from the County's website. *Id.*, at ¶¶'s 10-12, 16-19. Defendant Gallagher was informed that the link to the public comment form had been removed from the County Commissioner's webpage and that no link was posted on the Eddy County Facebook page. *Id*., at ¶¶'s 13-14. The last public comment read at the Eddy County Commission Meeting of February 18, 2025, was submitted on February 5, 2025. *Id*., at ¶ 15. The Plaintiff's Complaint alleges that he submitted his public comment form on February 25, 2025. *See Plaintiff's Complaint*, at ¶ 17. Defendant Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to read a form submitted after February 7, 2025. *Id*., at ¶ 15. Based on the First Amendment analysis below, the Plaintiff is unable to establish that the Defendants took any action to restrain or abridge his speech based on its content. The decision not to utilize public comment forms was made 18 days before the Plaintiff submitted his form. Therefore, the Plaintiff cannot establish a violation of Article 2, § 17 of the New Mexican Constitution.

**B.    Plaintiff's Claim Brought Under 42 U.S.C. § 1983 For Violation of First Amendment of United States Constitution Fails.**

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U. S. Const., Amdt. 1. Under

Appellants' Appendix
0024

that Clause, a government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U. S. 92, 95, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972). Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *Reed v. Town of Gilbert*, 576 U.S. 155, 163, 135 S. Ct. 2218, 2226 (2015), citing *R. A. V. v. St. Paul*, 505 U. S. 377, 395, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992); *Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd*., 502 U. S. 105, 115, 118, 112 S. Ct. 501, 116 L. Ed. 2d 476 (1991).

    In the present case, the Defendants took no action based on the content of the Plaintiff's speech. Instead, eighteen days (18) prior to the Plaintiff's submission of his online public comment, a decision was made to stop using online public comment forms. *See Undisputed Material Facts*, at ¶¶ 1-11. The decision was made because social distancing restrictions related to COVID were no longer in place. *Id*., at ¶ 8.  The County removed the link to the public comment from its website and from its Facebook post prior to the Eddy County Commission meeting. *Id*., ¶¶ 12-19. Defendant Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to read a form submitted after that date. *Id*., at ¶ 20.  The last public comment form read at the Eddy County Commission Meeting of February 18, 2025, was submitted on February 5, 2025. *Id*., ¶ 15. Based on the foregoing, Defendant Gallagher is entitled to qualified immunity and the Plaintiff's claims against Defendant County are subject to dismissal because there was no violation of the Plaintiff's rights.

Appellants' Appendix
0025

### 1.    Defendant Gallagher is Entitled to Qualified Immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018), quoting *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (quotations omitted). "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Id.*, quoting *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Id.*, quoting *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017). To be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.*, quoting *White v. Pauly*, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)). Although there need not be a "'case directly on point,'" *id.* (quoting *Mullenix*, 136 S. Ct. at 308), "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it . . .'" *Id.*, quoting *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774, 191 L. Ed. 2d

Appellants' Appendix
0026

856 (2015) (brackets omitted) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014)).

Courts must not define "clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). Instead, "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308. (quotations omitted). "Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id*., quoting *White*, 137 S. Ct. at 552 (brackets and ellipsis omitted) (quoting *Anderson*, 483 U.S. at 639).

In the present case, the Plaintiff's First Amendment right to free speech was not violated by the Defendants. The Plaintiff had no right to have a comment read at the Eddy County Commission Meeting once it had been determined that Eddy County would no longer utilize public comments submitted online. The decision to stop accepting public comments submitted online applied to everyone, not just the Plaintiff. Thus, no decision was made with regard to the content of the Plaintiff's speech and the Plaintiff cannot establish the first prong of the qualified immunity analysis. The Plaintiff can also not establish the second prong of the qualified immunity analysis. There is no Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, that places this constitutional question beyond debate. The Defendants were unable to locate any case law that determined that the enforcement of a decision to stop accepting public comment forms violates the Constitution. Based on the foregoing, Defendant Gallagher is entitled to qualified immunity.

Appellants' Appendix
0027

## 2.  The Plaintiff's *Monell* Claim Fails.

The Plaintiff's 42 U.S.C. § 1983 claim against Defendant County fails. In *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court stated that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013), quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision. *Id*., citing Martin A. Schwartz, Section 1983 Litigation Claims & Defenses, § 7.06[A] (2013).  In the present case, as set forth above, Defendant Gallagher, the County Manager, decided that public comment forms submitted online were no longer required because the social distancing restriction in place as a result of COVID had been rescinded. To the extent this decision can be deemed a policy or custom, it does not violate the First Amendment.  If a person has suffered no constitutional injury, he cannot establish his *Monell* claim against their employer. *City of L.A. v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571,

Appellants' Appendix
0028

1573 (1986). Therefore, the Plaintiff's claims brought in Counts II against Defendant County should also be dismissed.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Court grant the Defendants' Motion for Summary Judgment.

Respectfully submitted.

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

By: */s/ Jonlyn M. Martinez*
      JONLYN M. MARTINEZ
      *Attorney for County Defendants*
      P.O. Box 1805
      Albuquerque, NM 87103-1805
      P: (505) 247-9488
      jonlyn@jmartinezlaw.net

I hereby certify that a copy of the foregoing
was served via CM/ECF on
April 2, 2025, to all counsel of record:


_____/s/_____

Appellants' Appendix
0029

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JASON SANCHEZ

     Plaintiff,

vs.                                                  Case No.: 2:25-cv-00226 SMD-GJF

MIKE GALLAGHER,
individually and in his official
capacity, and
EDDY COUNTY BOARD OF
COMMISSIONERS,

     Defendants.

### AFFIDAVIT OF ANDREW MEDRANO

1.     My name is ANDREW MEDRANO, and I am over 18 and I have personal knowledge of the information contained herein.

2.     I am employed as an IT Specialist III for Eddy County. I have been employed by Eddy County for eight years and I have been employed in the IT Department since 2020.

3.     As part of my duties, I maintain the Eddy County website.

4.     As a result of COVID, on or about April 9, 2020, Eddy County created a public comment form that was made available through a link on the Board of County Commissioners' webpage on the County's website and through a link the Eddy County public information officer posted on Facebook.

5.     This public comment form provided: "In an effort to comply with public health orders, the number of persons attending the Eddy County Board of Commissioners meeting will be limited, but in person public comments are possible. The preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at

1

EXHIBIT A

the meeting. Please complete the online form below to submit your comments.  Individuals wishing to make in person Public Comments need to be in good health and follow recommended practices."

6.     It was discovered that for almost two years, the public comment forms were being sent to two disabled email addresses.

7.     Eddy County discovered this issue when an individual sent an email to Adrienne Jones on April 18, 2024, indicating that her public comment had not been read. The IT Department was asked to look into this matter and the issue with the disabled email address was discovered.

8.     I determined that public comment forms had been submitted on the County's website but had not been sent to an active email address.

9.     Therefore, it appears that multiple public comment forms were not read at County Commission meetings as a result of this issue.

10.     A new County Manager, Mike Gallagher, began working for Eddy County in January of 2025.

11.     On February 7, 2025, I received an email from Adrienne Jones, the County Manager's Executive Administrative Assistant.

12.     Ms. Jones' email instructed me to immediately remove the form titled "Public Comments for the Next Board of County Commissioners' Meeting" from the County's website.

13.     On February 7, 2025, I removed the link to the form titled "Public Comments for the Next Board of County Commissioners' Meeting" from the County Commission's webpage and I sent an email to Ms. Jones confirming that I had completed her request.

2

EXHIBIT A

14.     I also observed that in addition to me removing the link from the County Commission's webpage, the link to the public comment form was no longer provided by the County's public information officer on Facebook.

15.     The last public comment form read at the Eddy County Commission Meeting of February 18, 2025, was submitted on February 5, 2025.

16.     On February 26, 2025, I was contacted by Adrienne Jones informing me that the form titled "Public Comments for the Next Board of County Commissioners' Meeting" had not been removed from the County's website.

17.     I reviewed the website and determined that although I had removed the link to this from the Board of County Commissioners' webpage, the form was still available through a link on the County website's "How Do I" drop down menu which I had no knowledge of.

18.     A link to the form was also available through old Facebook posts.

19.     On February 26, 2025, I removed the form titled "Public Comments for the Next Board of County Commissioners' Meeting" from the County's website. Therefore, even if links to the form still exist, the form cannot be accessed.

20.     On February 26, 2025, I communicated with Adrienne Jones to let her know I had completed her request.

FURTHER AFFIANT SAYETH NOT

ANDREW MEDRANO

SUBSCRIBED AND SWORN TO before me on March 21, 2025.

STATE OF NEW MEXICO
NOTARY PUBLIC
TEANNA ROMERO
COMMISSION# 1138134
EXPIRES: JUNE 7, 2026

Notary Public

3

EXHIBIT A

My Commission Expires:

June 7, 2026

4

EXHIBIT A

IN **THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


**JASON SANCHEZ**

     **Plaintiff,**

**vs.**                                **Case No.: 2:25-cv-00226 SMD-GJF**

**MIKE GALLAGHER,**
**individually and in his official**
**capacity, and**
**EDDY COUNTY BOARD OF**
**COMMISSIONERS,**

     **Defendants.**

### AFFIDAVIT OF MIKE GALLAGHER

1.     My name is MIKE GALLAGHER, and I am over 18 and I have personal knowledge of the information contained herein.

2.     I am employed as the County Manager for the Eddy County Board of Commissioners. I have been employed in this capacity since January of 2025.

3.     After I began my employment as the County Manager I learned that as a result of COVID, in 2020, Eddy County created a public comment form that was made available through a link on the Board of County Commissioners' webpage and through a link the Eddy County public information officer posted on Facebook.

4.     This public comment form provided: "In an effort to comply with public health orders, the number of persons attending the Eddy County Board of Commissioners meeting will be limited, but in person public comments are possible. The preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at the meeting. Please complete the online form below to submit your comments. Individuals

1

EXHIBIT B                Appellants' Appendix

wishing to make in person Public Comments need to be in good health and follow recommended practices."

5.    Due to the fact that public health orders related to social distancing under COVID have been rescinded, I determined that an on-line public comment form was no longer needed.

6.    On February 7, 2025, I instructed Eddy County staff to remove the public comment form from the County's website.

7.    The link to the form titled "Public Comments for the Next Board of County Commissioners' Meeting" was immediately removed from the County Commission's webpage.

8.    No link was posted on Eddy County's Facebook page on March 3, 3025, prior to the March 4, 2025, Eddy County Commission Meeting.

9.    I do not know how the Plaintiff was able to submit a public comment form following February 7, 2025.

10.   However, because no links had been made available to the public to submit a public comment form following February 7, 2025, I did not feel it was appropriate to read a form submitted after the date I instructed the form be removed from the website.

FURTHER AFFIANT SAYETH NOT

_____
MIKE GALLAGHER

SUBSCRIBED AND SWORN TO before me on April 5, 2025.

_____
Notary Public

My Commission Expires:

June 7, 2026

STATE OF NEW MEXICO
NOTARY PUBLIC
TEANNA ROMERO
COMMISSION# 1138134
EXPIRES: JUNE 7, 2026

2

**EXHIBIT B**                    Appellants' Appendix
0035

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JASON SANCHEZ**

      **Plaintiff,**

**vs.**                                                      **Case No.: 2:25-cv-00226-KRS-GJF**

**MIKE GALLAGHER,**
**individually and in his official**
**capacity, and**
**EDDY COUNTY BOARD OF**
**COMMISSIONERS,**

      **Defendants.**

**UNOPPOSED MOTION TO STAY PROCEEDINGS PENDING OUTCOME OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOCUMENT NO. 6]**

COME NOW all Defendants, by and through their counsel, Jonlyn M. Martinez, Law Office of Jonlyn M. Martinez, LLC, and respectfully submit this Motion to Stay Proceedings Pending Outcome of their Motion for Summary Judgment based in part on qualified immunity filed April 2, 2025 [Document No. 6].

Counsel for the Plaintiff does not oppose this Motion. *See email correspondence*, attached hereto.

**BACKGROUND**

The County Defendants have filed a Motion for Summary Judgment based in part on qualified immunity in this matter. The County Defendants have asserted the defense of qualified immunity therein. This Motion was filed April 2, 2025 [Document No. 6] and is currently pending.

**POINTS AND AUTHORITIES**

As set forth above, in their Motion for Summary Judgment, the County Defendants asserted the defense of qualified immunity. Qualified immunity is not only a defense to liability

but also an entitlement to immunity from suit and other demands of litigation. *Siegert v. Gilley*,

114 L. Ed. 2d 277, 111 S. Ct. 1789, 1793 (1991). The qualified immunity defense protects

governmental officials performing discretionary functions from liability as well as the burdens of

trial and discovery. *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004); *Workman v.*

*Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) ("we reiterate that qualified immunity is not only a

defense to liability but also entitlement to immunity from suit and other demands of litigation")

(citing *Siegert v. Gilley*, 500 U.S. 226 (1991)). Indeed, when a dispositive motion based on

qualified immunity is filed, a court has limited discretion on the issue of a stay of discovery, and

should stay discovery until the court considers and determines the dispositive motion. *Workman*,

958 F.2d at 336. In a suit with multiple defendants, only some of whom assert qualified

immunity, all discovery should be postponed pending a ruling on qualified immunity. *See*

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009).   Based on the foregoing, this matter should be

stayed pending the outcome of the County Defendants' Motion for Summary Judgment.

## CONCLUSION

Based on the foregoing, the County Defendants request that this Court stay this matter,

pending the outcome of County Defendants' Motion for Summary Judgment based in part on

qualified immunity.

Respectfully Submitted:

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

By: */s/ Jonlyn M. Martinez*
    JONLYN M. MARTINEZ
    Attorney for County Defendants
    P.O. Box 1805
    Albuquerque, NM 87103-1805
    P: (505) 247-9488
    jonlyn@jmartinezlaw.net

Appellants' Appendix
0037

I hereby certify that copy of the foregoing
was served via CM/ECF to all counsel of record
on April 11, 2025:

*/s/ Jonlyn M. Martinez*
Jonlyn M. Martinez, Esq.

3

 Outlook

---

## Re: Sanchez v. Gallagher et al,, 2:25-cv-00226-KRS-GJF

---

**From** Curtis Waldo <curtis@wglawllp.com>

**Date** Wed 4/9/2025 11:08 AM

**To** Jonlyn Martinez <jonlyn@jmartinezlaw.net>

**Cc** Ben Gubernick <ben@wglawllp.com>

Jonlyn,
Plaintiff is unopposed.

Curtis

On Tue, Apr 8, 2025 at 4:19 PM Jonlyn Martinez <jonlyn@jmartinezlaw.net> wrote:

> Dear Counsel,
>
> I am writing to obtain your position on Defendant's Motion to Stay due to the pending Motion based on qualified immunity in this matter.
>
> Please advise.
>
> Thank you
>
> **Jonlyn M. Martinez**
>
> Law Office of Jonlyn M. Martinez, LLC
>
> P.O. Box 1805
>
> Albuquerque, NM  87103-1805
>
> (505) 247-9488
>
> (505) 247-9566 (fax)

**This document and any documents attached hereto may contain privileged information.  If you have received this transmission in error, please call the telephone number above and either destroy these documents or return them by U.S. mail to the mailing address above.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**JASON SANCHEZ**

     **Plaintiff,**

**vs.**                                                                    **Case No.: 2:25-cv-00226-KRS-GJF**

**MIKE GALLAGHER,**
**individually and in his official**
**capacity, and**
**EDDY COUNTY BOARD OF**
**COMMISSIONERS,**

     **Defendants.**

**ORDER GRANTING STAY AND**
**<u>VACATING INITIAL SCHEDULING ORDER</u>**

THIS MATTER is before the Court on Defendants' April 11, 2025 Unopposed Motion to

Stay Proceedings Pending Outcome of County Defendants' Motion for Summary Judgment.   ECF

8.   Noting that the Motion is unopposed and being otherwise fully advised, the Court GRANTS

the Motion.

IT IS THEREFORE ORDERED that this case is STAYED pending the presiding judge's

decision on Defendants' Motion for Summary Judgment [ECF 8].

IT IS FURTHER ORDERED that the Court's Initial Scheduling Order [ECF 5], all

associated deadlines, and the May 19, 2025 initial scheduling conference are VACATED.

SO ORDERED.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

     **Plaintiff,**

                                        **Case No: 2:25-cv-00226-KRS-GJF**

**vs.**

**MIKE GALLAGHER,**
**individually and in his official**
**capacity, and**
**EDDY COUNTY BOARD OF**
**COMMISSIONERS,**

     **Defendants.**

## <u>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

     Plaintiff files this Response to Defendants' Motion for Summary Judgment, along with the attached Sanchez Declaration, Waldo Declaration, and exhibits thereto, and in support states as follows:

### I.      <u>OVERVIEW OF RESPONSE</u>

     Starting on April 9, 2020, the Eddy County Board of Commissioners (the "Board") permitted members of the public to submit online comments to be read at the Board's bi-weekly meetings.[1] According to Defendants, at some point in 2022, the comment submission system was *de facto* disabled when the recipient email address became inactive,[2] but the issue was fixed in April 2024. At the May 7, 2024 meeting, the backlog of emailed comments was read.[3]  An online comment submitted on February 5, 2025 was read at the February 18, 2025 meeting, and the online comment

---

[1] Mot. at p.2, ¶2.
[2] *Id.* at pp.2-3, ¶¶3-6.
[3] Ex. B-1 (meeting minutes).

1

Appellants' Appendix
0042

form continued to be available on the Board's website through February 26, 2025.[4]

This means, of all the online comments submitted since April 9, 2020, based on the summary judgment evidence, ***Plaintiff's comment is the only one to have been submitted and not read***. In their Motion, Defendants would have this Court believe it is pure coincidence that Plaintiff's comment was critical of Eddy County law enforcement. But Plaintiff lives in the real world. This was no coincidence. This was not content-neutral decision-making. Drawing all reasonable inferences in Plaintiff's favor, as this Court must, it was unconstitutional viewpoint discrimination.

Defendants argue that when Plaintiff submitted his comment, County manager/Defendant Mike Gallagher had already decided to remove the submission form from the County's website. But Gallagher's purported edict, as incompetently as it was executed, is not at issue. Plaintiff is not seeking an injunction requiring the County to revert changes to its website. What Gallagher may *not* do is receive Plaintiff's comment, which Gallagher did, and which Plaintiff validly submitted through the County website, and elect not to read it due to his disagreement or discomfort with its content. This decision by Gallagher—not some other decision to end online comments—is the actionable conduct. Gallagher's decision constituted viewpoint discrimination and censorship by a government entity, plain and simple, and it runs afoul of the core protections in our country's First Amendment.

At most, Defendants' Motion offers a competing inference about why Gallagher declined to read Plaintiff's comment. But on summary judgment, and with no discovery, "all justifiable inferences" are to be made in favor of the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). For these reasons and those below, Defendants' Motion should be denied.

---

[4] Mot. at p.4.

Appellants' Appendix
0043

## II.    <u>UNDISPUTED MATERIAL FACTS</u>

**A.  Plaintiff's Response to Defendants' purportedly undisputed facts.**

Pursuant to Local Rule 56.1(b), Plaintiff does not dispute paragraphs 1-11, 13-16, or 19 of Defendants' purported Undisputed Material Facts.  Plaintiff contests paragraphs 12, 17-18, and 20.  To wit:

**Defendants' Paragraph 12:  On February 7, 2025, Andrew Medrano removed the link to the form titled "Public Comments for the Next Board of County Commissioners' Meeting" from the County Commission's webpage. *Id.*, at ¶ 13.**

<u>RESPONSE</u>:  This statement is false.  By Medrano's own admission, he did not "remove[] the link to the form…from the [Board's website]."  He removed a link from one part of the website but left it up elsewhere.  This does not constitute "remov[al]."  Indeed, as of this day the link to the form is still on the County's website.

**Defendants' Paragraph 17:  Andrew Medrano reviewed the website and determined that although he had removed the link to this form from the Board of County Commissioners' webpage, the form was still available through a link on the County website's "How Do I" drop down menu. He was previously unaware that this form was available on a drop down menu. *Id.*, at ¶ 17.**

<u>RESPONSE</u>:  This statement is false.  Medrano had not "removed the link to this form from the [Board website]."  At best, Medrano had removed a link to the form from one part of the website.  But he left up the link on another part of the website.

**Defendants' Paragraph 18:  A link to the form may also have been available through old Facebook posts. *Id.*, at ¶ 18.**

<u>RESPONSE</u>:  This statement is false or at best misleading/incomplete.  The "link to the form" was still available on the Board's website on February 25, 2025.  The link was also available

3

via the Board's Facebook posts.  While some of these posts may have been "old," the links had not been removed, and they were accessible to Plaintiff.

**Defendants' Paragraph 20:  Mike Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to read a form submitted after February 7, 2025.** *See* **Affidavit of Gallagher, at ¶ 10, attached hereto as Exhibit B.**

**RESPONSE**:  This statement is false.  Specifically, it is false that "no links had been made available to the public to submit a public comment form following February 7, 2025…."  There had been a link by which one could submit a public comment.  That is how Plaintiff was able to submit a comment on February 25, 2025.

## B.  Objections to Defendants' summary judgment evidence.

Plaintiff contends Defendants' summary judgment evidence does not support its Motion, and the Motion should be denied on that basis.  In the alternative, Plaintiff objects to the Gallagher Affidavit.  Federal Rule of Civil Procedure 56(c)(4) requires that affidavits in support of a motion for summary judgment "be made on personal knowledge."  Gallagher's Affidavit violates this requirement.  Specifically, Paragraph 7 of the Gallagher Affidavit states that "immediately" after Gallagher's instruction to remove the online comment form from the Eddy County website, the link was, in fact, removed.  Yet as the Medrano Affidavit and Sanchez Declaration make clear, this was not true, as the link to the online comment form remained available on the Eddy County website after February 7.  Hence, Gallagher's statement that the link was immediately removed is incorrect and not based on his personal knowledge.  At best, Gallagher is relying on what someone told him, which is inadmissible hearsay, and Plaintiff objects.

## C.  Additional Undisputed Material Facts

Plaintiff further states as follows:

4

1.      The Eddy County Board of Commissioners typically holds meetings every two weeks, which are open to the public.[5]

2.      For several years, the Board advertised on its website and via its Facebook page that comments from the public may be submitted through an online portal to be read at these Board meetings.[6]

3.      On May 7, 2024, a number of comments that had been submitted electronically were read at the Board meeting.[7]

4.      Defendants' Motion suggests all these online comments were read at once because for the two years prior to that, the email address to which comments had been going was inactive.[8]

5.      As recently as February 18, 2025, a comment submitted via the online portal was read at the Board meeting.[9]

6.      On February 25, 2025, Plaintiff visited the Board's Facebook page, which contained a link that purported to take whoever clicked on it to the portion of the Board website where he/she could submit a comment to be read at the next meeting.[10]

7.      Plaintiff was aware at this time that the next Board meeting was scheduled for March 4, 2025, and he wished to submit a comment to be read at that meeting.[11]

8.      Plaintiff clicked on the Facebook link.[12]

_____

[5] Ex. B-2 (printout of Eddy County Board website, describing meetings taking place around every two weeks). The website is available here:  https://www.co.eddy.nm.us/194/County-Commissioners (last visited April 14, 2025).  Sanchez Decl. at ¶3.
[6] Sanchez Decl. at ¶3.
[7] *See* Ex. B-1 (meeting minutes).
[8] Mot. at ¶¶4-6.
[9] *Id.* at ¶15.
[10] Sanchez Decl. at ¶4.
[11] *Id.* at ¶5.
[12] *Id.* at ¶6.

Appellants' Appendix
0046

9.      As advertised, the Facebook link took Plaintiff to the portion of the Board website where one might submit a comment to be read at the next meeting.[13]

10.      Plaintiff submitted his comment through the form available on the Board's website.[14]

11.      Plaintiff's comment did not contain any profanity.  If read in its entirety, the comment would have taken less than three minutes to read.[15]

12.      The text of Plaintiff's comment is found within Exhibit A-1 to the Sanchez Declaration.  In sum, Plaintiff was wrongfully convicted of a crime, which he attributed to Eddy County law enforcement,[16] and in his comment, Plaintiff wished to express his concern about abuse of power by law enforcement.[17]

13.      Shortly after submitting his comment, Plaintiff received an email notification, attached to the Sanchez Declaration as Exhibit A-1.[18]

14.      The email notification from Eddy County read as follows:

> "In an effort to comply with public health orders, the number of persons attending the Eddy County Board of Commissioners meeting will be limited, but in person public comments are possible. The preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at the meeting. Please complete the online form below to submit your comments. Individuals wishing to make in person Public Comments need to be in good health and follow recommended practices."[19]

15.      On March 3, 2025, Plaintiff returned to the Board website and saw that the form he had used six days prior was no longer available.[20]

---

[13] *Id.* at ¶7.
[14] *Id.* at ¶8.
[15] *Id.* at ¶9.
[16] *Id.* at ¶10.
[17] *Id.*
[18] *Id.* at ¶11.
[19] Exhibit A-1.
[20] Sanchez Decl. at ¶13.

Appellants' Appendix
0047

16.     On or around March 4, 2025, Plaintiff listened to the entirety of the March 4 Board meeting, and his comment was not read.[21]

17.     Plaintiff further states that in a separate lawsuit, he was censored by the Southeast New Mexico College, a public institution, for criticizing former Eddy County sheriff (now undersheriff), Mark Cage.[22]  (Mr. Cage is on the board of Southeast New Mexico College).[23]

18.     Plaintiff reasonably believes that this separate instance of censorship by Southeast New Mexico College shows culpability on the part of the Board in this case.[24]

19.     That is, it shows a broader scheme by Mark Cage to censor criticism of Eddy County law enforcement, using Mr. Gallagher in this lawsuit, and Southeast New Mexico College in the other.[25]

20.     There is no evidence that, prior to the February 25, 2025 meeting, Gallagher or the County enacted or announced any policy prohibiting written comments (online or otherwise) from being read at Board meetings.

21.     There is no evidence that, since February 7, 2025, the County has declined to read any written public comment besides the comment submitted by Plaintiff.

### III.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if the moving party shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*,

---

[21] *Id.* at ¶14.
[22] *See Sanchez v. Southeast New Mexico College, et al.*, Case No. 2:25-cv-00351 (D.N.M.) (filed April 10, 2025); Sanchez Decl. at ¶¶15-17.
[23] https://www.senmc.edu/board-of-trustees/index.html (last visited April 14, 2025); Sanchez Decl. at ¶¶15-17.
[24] Sanchez Decl. at ¶¶16-17.
[25] *Id.*

Appellants' Appendix
0048

477 U.S. 317, 323 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

If the movant fails to meet this burden, summary judgment must be denied. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("The court should give credence to the evidence favoring the nonmovant...."). Only once the movant satisfies its burden does the burden shift to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). At the summary judgment stage, courts may not weigh evidence or assess credibility. *Anderson*, 477 U.S. at 255.

## IV.    ARGUMENT

Defendants move for summary judgment on four bases: (1) there has been no violation of Plaintiff's federal constitutional rights; (2) the defense of qualified immunity bars Plaintiff's recovery against Gallagher; (3) there can be no *Monell* liability; and (4) there is no violation of the New Mexico Civil Rights Act. For the below reasons, Defendants have failed to meet their summary judgment burden as to each. At a minimum, Plaintiff is entitled to discovery, and Defendants' Motion should be denied on this basis as well.

**A. Defendants' summary judgment evidence shows Gallagher censored Plaintiff's speech.**

Under 42 U.S.C. § 1983, a claimant must establish "(1) a violation of rights protected by the federal Constitution...(2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State...." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).

Here, Defendants concede as they must that ***content-based*** censorship is unconstitutional and at best warrants strict scrutiny,[26] which applies equally to government-run websites and social

---

[26] Mot. at pp.6-7.

8

media pages.[27]   Defendants argue, however, that Gallagher did not engage in content-based censorship because when Plaintiff submitted his comment, Gallagher had already decided not to solicit online comments.[28]   According to Defendants, Gallagher's decision was content-neutral and hence passes constitutional muster.[29]

The problem with Defendants' "content-neutral" argument is it is undermined by Defendants' own summary judgment evidence.  Defendants' own employee's affidavit concedes that the Board's website **did** continue to solicit online comments after February 7, 2025.  Medrano Aff. at ¶16 (Medrano:  as of February 26, 2025, the form to submit an online comment "had not been removed from the County's website").  When Gallagher realized the Board's website had in fact continued to solicit online comments, any state actor and leader who truly cared about fairness and the Constitution would have realized the mistake and read the comment.  This is what the Board did on May 7, 2024, when it realized the comment system had been disabled for the prior two years.[30]   *It read the previously unread comments*.  It did not say, "Too bad; no one can have their comments read because of this error."  The Board erred on the side of more speech, not less.  Yet, when it came to Plaintiff's comment, for the first and only time, Defendants decided to sweep the comment under the rug and not read it.  If Defendants had wanted to be content-neutral, Gallagher would have read the comment.

At a minimum, Gallagher could have inquired as to **how** Plaintiff was able to submit his comment when Gallagher had ordered the online form disabled, but Gallagher does not appear to have done that.  Gallagher himself admits that even now, he "do[es] not know how Plaintiff was able to submit a public comment form following February 7, 2025."  Gallagher Aff. at ¶9.  That

---

[27] *See generally Lindke v. Freed*, 601 U.S. 187, 198 (2024).
[28] Mot. at p.7.
[29] *Id.* at pp.7, 9.
[30] Ex. B-1.

Appellants' Appendix
0050

Gallagher failed to investigate this fact and instead simply declined to read the comment strongly suggests that Gallagher declined to read the comment due to its content and not because of some issue of fairness or propriety. After all, if it was about propriety, Gallagher would have thought to ask how his office received the comment to begin with so that he could be fair in making his decision not to read it.[31]

Defendants argue "[t]he decision to stop accepting public comments submitted online applied to everyone, not just the Plaintiff," (Mot. at 9), but this is plainly false. The Board's website did not stop accepting public comments online. The form **was** available, both on the Board website and through Facebook.[32] That is how Plaintiff was able to submit his comment. Defendants' own evidence shows the link/form was available to submit comments post-February 7. If Gallagher really cared about fairness to the public, he would have realized that contrary to his wishes the comment form **was** still available post-February 7, and he would have read Plaintiff's comment.

Gallagher's argument boils down to, "trust me." But this is not a proper summary judgment argument. There is ample evidence by which a jury might conclude Gallagher's purportedly content-neutral explanation is pretextual. Gallagher could see Plaintiff's comment and knew it was critical of Eddy County law enforcement. As a fellow Eddy County employee, Gallagher had reason to protect the reputation of Eddy County law enforcement. If Plaintiff's comment had been complimentary of Gallagher or Eddy County law enforcement, can there be any doubt Gallagher would have read it? Gallagher knew a comment had been read at the February 18 Board meeting; Gallagher knew his IT department had failed to effectuate his request to disable public comments

---

[31] In Gallagher's words, he did not read the comment because he did not think it would be "appropriate." Gallagher Aff. at ¶10. The problem of course is that Gallagher did zero investigation into how the comment was submitted, so he could not judge what was appropriate or not appropriate.

[32] Medrano Aff. at ¶17 (on February 26, Medrano "reviewed the website and determined…the form was still available through a link on the County's website…"); Sanchez Decl. at ¶¶4-8 (describing how Plaintiff submitted an online comment).

Appellants' Appendix
0051

after February 7; and Gallagher knew the public could submit comments as late as February 25 and that the form to do so was still on the Eddy County website and Facebook page. From these facts, it is a perfectly natural inference to draw that Gallagher declined to read Plaintiff's comment because Gallagher disapproved of Plaintiff's viewpoint. Yet, Defendants would have this Court infer the opposite. This gets the summary judgment burden exactly backwards. *Anderson*, 477 U.S. at 255 (inferences to be drawn in favor of nonmovant).

**B. Defendants' summary judgment evidence does not establish any content-neutral policy that would bar Plaintiff's comment from being read at the March 4 meeting.**

The constitutional violation at issue is not Gallagher's supposed decision not to accept online comments; it is Gallagher's decision not to read Plaintiff's comment at the March 4 meeting.[33] Yet, Defendants offer no summary judgment evidence of any content-neutral policy concerning the reading or not reading of online comments. Gallagher's Affidavit states that on February 7, 2025, he "instructed Eddy County staff to **remove the public comment form from the County website**."[34] That is it—all Gallagher says is he told an underling to remove a form. Gallagher does not say the County changed policy to no longer read written comments at Board meetings. Gallagher does not say the County changed policy to no longer read comments submitted after some date. Gallagher does not say he communicated this supposed new policy to the public or posted it on the Board's website or instructed others to do so. The only significance of February 7 is that was when Gallagher appears to have issued an instruction to an underling about an online form, an instruction which apparently was not followed.

If Plaintiff had submitted has comment via regular email as opposed as through the online form, would it have been read? How about if he had sent it via regular mail? Defendants' summary

---

[33] *E.g.*, Compl. [Dkt. #1] at ¶25 (failure to read comment at March 4 Board meeting is alleged constitutional violation).
[34] Gallagher Aff. at ¶6.

Appellants' Appendix
0052

judgment evidence leaves these questions unanswered.

For these reasons, Defendants' summary judgment evidence has not even established a content-neutral reason for the unconstitutional act at issue—not reading Plaintiff's comment. Defendants' Motion should be denied on this basis alone.

**C.  The Court should reject Gallagher's defense of qualified immunity.**

Qualified immunity protects a government official from liability where the official's conduct does not violate a clearly established constitutional right.  *Romero v. Story*, 672 F.3d 880, 884 (10th Cir. 2012).  Under U.S. Supreme Court precedent, if, as here, defendant pleads qualified immunity, prior to discovery, the trial court must determine whether, ***assuming the truth of the plaintiff's allegations***, the official's conduct violated clearly established law.  *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also Janny v. Gamez*, 8 F.4th 883, 902 (10th Cir. 2021) ("In qualified immunity cases, the requirement that courts view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion usually means adopting ... the plaintiff's version of the facts.").

Here, assuming the truth of Plaintiff's allegations and drawing all inferences in Plaintiff's favor, Gallagher engaged in viewpoint discrimination when he elected not to read Plaintiff's comment at the March 4 meeting.  It is "clearly established" that such viewpoint discrimination violates the First Amendment.  *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys.").  That is the end of the inquiry.  Qualified immunity does not grant Gallagher a presumption that he acted with pure motive.  Quite the opposite:  "improper intent [is] a pure issue of fact."  *Crawford*, 523 U.S. at 589.

For these reasons, the Court should deny Gallagher's motion for summary judgment on his defense of qualified immunity.

Appellants' Appendix
0053

**D. At most, Defendants' Motion raises an array of material fact questions, and Plaintiff requires additional discovery.**

At best, Defendants' Motion raises a host of factual questions that preclude summary judgment:

- What links and forms were available to the public to submit online comments for Board meetings, and when were they available? Defendants' Motion states that, from February 7, 2025, to February 26, 2025, both a "link" and a "form" were available through which a person could submit a comment.[35] Yet, at the same time, Defendants contend, "Mike Gallagher determined that *because no links had been made available to the public to submit a public comment form following February 7, 2025*, it was not appropriate to read a form submitted after February 7, 2025."[36] Which one is it? Was a link available or not? Both statements cannot be true. If a link was available, and Gallagher knew it, yet Gallagher still refused to read Plaintiff's comment, this strongly undermines his supposed justification for not reading the comment and supports Plaintiff's allegation that he was censored.

- How was Plaintiff able to submit an online comment after February 7? Plaintiff details how he believes his comment was submitted.[37] Gallagher professes not to understand how this was possible: "I do not know how the Plaintiff was able to submit a public comment form following February 7, 2025." Gallagher Aff. at ¶9. Again, if Gallagher knew Plaintiff followed proper protocols yet still declined to read his comment, that strongly supports Plaintiff's claim of unlawful censorship.

- What other online comments were submitted between February 7, 2025, and February 26, 2025? Did Gallagher make a similar decision not to read those comments? Was Plaintiff's comment the first and only comment to be submitted online after February 7? How did Gallagher and his employees become aware of Plaintiff's comment? Did Gallagher discuss Plaintiff's comment with anyone from Eddy County law enforcement? Did anyone else from Gallagher's office suggest that Gallagher not read Plaintiff's comment? The answers to all these questions go directly to Gallagher's motive for not reading Plaintiff's comment, which Defendants' Motion has placed at issue.

- Does Gallagher's purported policy not to accept online comments also apply to comments submitted by US mail or other method? Were comments submitted by

---

[35] Mot. at ¶17 ("[Eddy County employee] Andrew Medrano reviewed the website and determined that although he had removed the link to this form from the Board of County Commissioners' webpage, *the form was still available through a link on the County website's "How Do I" drop down menu*."). Defendants seem to be saying that they removed access to the form/link from one part of the website but left it up on another party of the website, but to be clear, there is no difference. Everything—the drop down menu, the "link," the "form"—it was all accessible on the Board's website.

[36] Mot. at ¶20.

[37] Sanchez Decl. at ¶¶4-8.

Appellants' Appendix
0054

mail after February 7? Does Gallagher's purported policy apply to those comments? Defendants cannot rely on a supposed content-neutral policy but not say what the policy is. Indeed, there is no summary judgment evidence of any content-neutral policy ***not to read*** written comments, whether the comments are submitted via email, online form, USPS, or some other means.

- Why did Gallagher state in his Affidavit that he did not know how Plaintiff was able to submit an online comment (Gallagher Aff. at ¶9), when Gallagher's own employee Medrano explained exactly how Plaintiff was able to submit an online comment in the Affidavit supplied by Medrano in this case? Medrano Aff. at ¶9. Did Gallagher not ask Medrano or his other employee (Adrienne Jones) why Plaintiff was still able to submit a comment? If Gallagher had known how Plaintiff was able to submit an online comment, would that have changed Gallagher's decision not to read Plaintiff's comment? If Gallagher did no investigation about how Plaintiff was able to submit a comment, this strongly suggests disapproval of Plaintiff's viewpoint and not some over-arching concern about fairness was the source of Gallagher's decision-making.

- What instruction did Gallagher give regarding online comments, and what instruction was communicated to Medrano? Gallagher says in his Affidavit that he instructed "Eddy County staff" to remove the comment "form" from the Board website. Medrano says that Adrienne Jones told him to remove a "form." Medrano Aff. at ¶12. Yet, Medrano says he only removed a "link to the form," not the form itself. *Id.* at ¶13. So, it seems Medrano did not follow Gallagher's instruction to remove the "form" and he only removed a "link," yet Gallagher seems to have appreciated none of this. Gallagher Aff. at ¶9 ("I do not know how the Plaintiff was able to submit a public comment form following February 7, 2025."). Again, this goes to Gallagher's motive, which Defendants have placed at issue.

- Why did Gallagher not read Plaintiff's comment? In his Affidavit, Gallagher states, "because no links had been made available to the public to submit a public comment form following February 7, 2025, I did not feel it was appropriate to read a form submitted after the date I instructed the form be removed from the website." Gallagher Aff. at ¶10. Yet Gallagher's explanation that no link to a form was available is plainly false, and Gallagher could have discovered how the comment was submitted if Gallagher had just consulted with his employee, Medrano. Did Gallagher ask Medrano how the comment was submitted? If not, why not? If so, what did Medrano say?

Pursuant to Rule 56(d), Plaintiff provides the Waldo Declaration as Exhibit B, which sets forth the additional topics on which Plaintiff needs discovery to justify its opposition to Defendants' Motion.[38]

---

[38] Ex. B at ¶7.

Appellants' Appendix
0055

**E.  Defendants' *Monell* arguments are circular and wrong.**

Defendants' *Monell* argument is confusing.  Defendants concede that *Monell* liability attaches where "a final decision by a municipal policymaker" is at issue.  Mot. at 10.  Defendants concede Gallagher was the city manager in charge of making policy about what comments were solicited and read at Board meetings.[39]  Defendants concede it was ***Gallagher*** who chose not to read Plaintiff's comment, based on ***Gallager's*** own purported policy.[40]  Defendants cannot have their cake and eat it too.  Defendants cannot cite Gallagher's policies as an excuse for his censorship but at the same time say Gallagher is not the final policymaker, especially given there is no evidence that his policies (if they even exist) were created or applied in a content-neutral fashion.  At the end of the day, Defendants' *Monell* argument is circular—"there is no liability under *Monell* because there is no liability."  Defendants offer no separate reason to reject Plaintiff's *Monell* claim, and there is none.  For the same reasons that Defendants' Motion should be rejected on other grounds, Plaintiff's *Monell* arguments should be rejected, too.

**F.  A genuine issue of material fact exists regarding Plaintiff's New Mexico Civil Rights Act claim.**

Defendants moves for summary judgment on Plaintiff's New Mexico Civil Rights Act ("CRA") claim.  The CRA provides:

> A person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court.

NM Stat § 41-4A-3(B).  Under the CRA, plaintiffs may sue a "public body" that has deprived them of their rights.  NM Stat § 41-4A-3(A).  New Mexico has expressly waived qualified immunity and

---

[39] *See* Mot. at p.7 (referencing decisions made by Gallagher with respect to not reading Plaintiff's comment).

[40] *Id.*

Appellants' Appendix
0056

sovereign immunity for CRA claims.  NM Stat §§ 41-4A-4, 41-4A-9.  The New Mexico Constitution provides:  "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."  N.M. Const. at Art. II, § 17.

Here, as described above, it can be reasonably inferred that Defendants engaged in viewpoint discrimination against Plaintiff when they elected not to read his comment.  Just as viewpoint discrimination offends the U.S. Constitution, it is similarly violative of the New Mexico Constitution.[41]  To the extent Defendants argue the Board passed no "law" censoring Plaintiff,[42] this is a red herring.  NM Stat § 4-37-1 empowers "The board of county commissioners [to] make and publish any ordinance to discharge [its] powers *not inconsistent with statutory or constitutional limitations placed on counties*."  (emphasis added).  The Board is a state actor and is a creature of statute.  The Board may not circumvent the New Mexico Constitution merely because it does not itself enact state legislation.

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests the Court deny Defendants' Motion for Summary Judgment.  Plaintiff seeks all other relief to which he may be entitled at law or in equity.

---

[41] Under New Mexico law, state constitutional free speech protections will generally track federal protections unless there is some reason to deviate therefrom.  *See State v. Perry*, 2009-NMCA-052, ¶ 24.  Here, there is no basis upon which New Mexico state law could or would permit viewpoint discrimination, and Defendants do not argue that it does.
[42] Mot. at 6 (with respect to CRA claim, "The County Defendant passed no law to restrain or abridge the Plaintiff's liberty of speech.").

16

Appellants' Appendix
0057

Date:  April 16, 2025

Respectfully submitted,

WALDO GUBERNICK
LAW ADVOCATES LLP

*/s/ Curtis Waldo*_____
Benjamin Gubernick
 New Mexico Bar No. 145006
Ben@wglawllp.com
 Curtis Waldo
 New Mexico Bar No. 163604
 curtis@wglawllp.com
346-394-8056
717 Texas St., Suite 1200
Houston, TX 77002

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2025, I caused the foregoing document to be filed with the Court and served on counsel for all parties.

 */s/ Curtis Waldo*_____
Curtis Waldo

# **<u>EXHIBIT A</u>**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

     **Plaintiff,**

                                      **Case No: 2:25-cv-00226-KRS-GJF**

**vs.**

**MIKE GALLAGHER,
individually and in his
official capacity, and
EDDY COUNTY BOARD
OF COMMISSIONERS,**

     **Defendants.**

## DECLARATION OF JASON SANCHEZ

1. My name is Jason Sanchez. I am an individual residing in Texas. I formerly resided in Eddy County and still have family and friends there. I am the plaintiff in the above-captioned lawsuit.

2. I am over the age of 21 years old. I am competent to testify to the facts in this Declaration and have personal knowledge of the facts set forth herein.

3. For several years, the Eddy County Board (the "Board") has advertised on its website and via its Facebook page that comments from the public may be submitted through an online portal to be read at Board meetings. These meetings take place approximately every two weeks.

4. On February 25, 2025, I visited the Board's Facebook page, which contained a link that purported to take whoever clicked on it to the portion of the Board website where he/she could submit a comment to be read at the next meeting.

5. I was aware at this time that the next Board meeting was scheduled for March 4, 2025, and I wished to submit a comment to be read at that meeting.

6. I clicked on the Facebook link.

7. As advertised, the Facebook link took me to the portion of the Board website where one might submit a comment to be read at the next meeting.

8. I submitted my comment through the form available on the Board's website.

1

9. My comment did not contain any profanity. If read in its entirety, the comment would have taken less than three minutes to read.

10. A true and correct copy of the text of my comment is attached hereto as Exhibit A-1. In sum, I was wrongfully convicted of a crime, which I attribute to Eddy County law enforcement, and in my comment, I wished to express my concern about abuse of power by law enforcement.

11. Shortly after submitting my comment, I received an email notification, a true and correct copy of which is attached hereto as part of Exhibit A-1.

12. The email notification from Eddy County read as follows:

> "In an effort to comply with public health orders, the number of persons attending the Eddy County Board of Commissioners meeting will be limited, but in person public comments are possible. The preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at the meeting. Please complete the online form below to submit your comments. Individuals wishing to make in person Public Comments need to be in good health and follow recommended practices."

13. On March 3, 2025, I returned to the Board website and saw that the form I had used six days prior was no longer available.

14. On or around March 4, 2025, I listened to the entirety of the March 4 Board meeting, and my comment was not read.

15. I further state that in a separate lawsuit, I was censored by the Southeast New Mexico College, a public institution, for criticizing former Eddy County sheriff (now undersheriff), Mark Cage. (Mr. Cage is on the board of Southeast New Mexico College).

16. I reasonably believe that this separate instance of censorship by Southeast New Mexico College shows culpability on the part of the Board in this case.

17. That is, it shows a broader scheme by Mark Cage to censor criticism of Eddy County law enforcement, using Mr. Gallagher in this lawsuit, and Southeast New Mexico College in the other.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: _____4/15/2025_____    _____

BC4994D7DC994C9...

Jason Sanchez

2

# **EXHIBIT A-1**

From: Jason Sanchez snchez22@icloud.com
Subject: Fwd: Online Form Submittal: Public Comments for the Next Board of County Commissioners' Meeting
Date: Mar 3, 2025 at 5:19:50 AM
To: Jason Sanchez snchez22@gmail.com

Sent from my iPhone

Begin forwarded message:

**From:** noreply@civicplus.com
**Date:** February 25, 2025 at 9:33:06 PM CST
**To:** snchez22@icloud.com
**Subject: Online Form Submittal: Public Comments for the Next Board of County Commissioners' Meeting**

Public Comments for the Next Board of County Commissioners' Meeting

PUBLIC COMMENTS FORM
*In an effort to comply with public health orders, the number of persons attending the Eddy County Board of Commissioners meeting will be limited, but in person public comments are possible. The preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at the meeting. Please complete the online form below to submit your comments. Individuals wishing to make in person Public Comments need to be in good health and follow recommended practices.*

| Contact Information | |
| --- | --- |
| First Name | Jason |
| Last Name | Sanchez |
| City | *Field not completed.* |
| State | Texas |

| Zip | *Field not completed.* |
|---|---|
| Email Address | snchez22@icloud.comn |
| Public Comments | |
| Please type your comments to be read during the Board of County Commissioners' meeting. | In 2018 my freedom was taken away and it destroyed the parent-child relationship I had with my 2.5 year old son to satisfy the egos of your public officials in Eddy County. I was later exonerated of any wrong doing despite having made this Commission aware of the unethical behavior of Jared Rostro and the ECSO Leadership. No has been held accountable for the crimes committed against me that destroyed the parent-child relation between me and my son. |

I'm not going to sit here and tell you i was the perfect co-parent when I wasn't. Sharing a child can be the most difficult thing when parents cannot get along and go tit for tat yall all knew the charges were false including this commission.

I am demanding the resignation and/or prosecution of Eddy County Sheriff Matthew Hutchinson, Undersheriff Mark Cage, Capt Eric Threlkeld, and Sgt Jared Rostro for their participation in my frivolous prosecution.

How many times is Eddy County Sheriff going to allow Rostro to abuse his kids?

How many times is Eddy County Sheriff going allow Rostro to stalk his ex or harass her despite having a DV Expert?

How many more people are going to be victimize by Rostro because the Leadership at Eddy County Sheriff is complicit in his unethical behavior?

How many times is Eddy County Sheriff going to allow Threlkeld to testify false in DV hearings?
How many more good LEO must lose their lively hood because the Eddy County Sheriff has to protect Jared Rostro for some reason?

How many times is Eddy County Sheriff Leadership going to allow Rostro and their actions destroy the Eddy County Sheriff's Office Institution?

How many more times is Eddy County Sheriff and Eddy County going to allow Mark Cage to lie on financial disclosures for personal gain?

How more times is President of Affirming Heart Victim Services Amy Dugas going to let Jared Rostro victimize his children and ex wife?

Thank you for time and the public awakes your response to this troubling matter.

Sir Eddy County Exposed

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

  **Plaintiff,**

            **Case No: 2:25-cv-00226-KRS-GJF**

**vs.**

**MIKE GALLAGHER,**
**individually and in his**
**official capacity, and**
**EDDY COUNTY BOARD**
**OF COMMISSIONERS,**

  **Defendants.**

## DECLARATION OF CURTIS WALDO

1. My name is Curtis Waldo.  I am an attorney with the law firm Waldo Gubernick Law Advocates, LLP.  My business address is 717 Texas Ave., Ste. 1200, Houston, TX 77002. I am admitted to practice law in New Mexico, Texas, and New York.

2. My law firm represents Jason Sanchez in the above-captioned action.

3. I am over the age of 21 years old.  I am competent to testify to the facts in this Declaration and have personal knowledge of the facts set forth herein.

4. I am attaching hereto as Exhibit B-1 a true and accurate copy of the minutes of the May 7, 2024 meeting of the Eddy County Board, which I downloaded from the Eddy County Board website, located at https://www.co.eddy.nm.us/AgendaCenter/County-Commissioners-2 (last visited April 15, 2025).

5. I am attaching hereto as Exhibit B-2 a true and accurate copy of a printout from the Eddy County Board website, listing Board meetings as having occurred approximately every two weeks for 2023 to 2025.  The website is available at: https://www.co.eddy.nm.us/194/County-Commissioners (last visited April 15, 2025).

6. I further state that my law firm filed this case on or around March 5, 2025.  Defendants answered on March 31, 2025 and filed their Motion for Summary Judgment on April 2, 2025.  No discovery has taken place in the case to date.

7. Due to the lack of discovery to date, the following facts are unknown which would justify opposition to Defendants' motion for summary judgment:

- Have there been other online comments submitted since April 9, 2020, which were not read at Board meetings?  What was the subject matter of those online comments?  Did they concern Eddy County law enforcement?

- Did Gallagher inquire with Medrano, Jones, or any other Eddy County employee about why his instructions were apparently not followed to disable the online comment submission form?  If so, what response did he receive?  If he did not so inquire, why not?

- Was there or was there not a form/link available on Eddy County's website to submit comments between February 7 and February 25?  Medrano's affidavit states there was a form/link, while Gallagher's Affidavit states there was not.

- How was Plaintiff able to submit a comment through Eddy County's website?  Gallagher's Affidavit professes not to know.  Was the manner in which Plaintiff submitted his comment as Plaintiff described in his Affidavit not available to the public, as Gallagher seems to think?

- As of now, Gallagher states merely that as of February 7, 2025, he wished not to accept online comments.  Gallagher does not say he instituted a policy not to *read* online comments at Board meetings.  Did Gallagher ever enact such a policy?  When?  Why?  How was this policy publicized?

I declare under penalty of perjury that the foregoing is true and correct.


Executed:  April 16, 2025

_Curtis Waldo_
Curtis Waldo

# <u>EXHIBIT B-1</u>

**EDDY COUNTY BOARD OF COMMISSIONERS**
**MINUTES OF A REGULAR MEETING**
**MAY 7, 2024**

Be it remembered that the Eddy County Board of Commissioners held a regular meeting in the Eddy County Administration Complex-Room 211 on May 7, 2024 at 8:30 a.m. Gonzales called the meeting to order and led the Pledge of Allegiance and the Salute to the New Mexico State flag. Henry gave the invocation.

**PRESENT:**

| | |
|---|---|
| JAMES (BO) BOWEN | CHAIRMAN, DISTRICT 4 |
| SARAH CORDOVA | VICE-CHAIR, DISTRICT 5 |
| ERNEST CARLSON | COMMISSIONER, DISTRICT 1 |
| JON HENRY | COMMISSIONER, DISTRICT 2 |
| FRED BEARD | COMMISSIONER, DISTRICT 3 |
| ROBERTA GONZALES | COUNTY MANAGER |
| CAS TABOR | COUNTY ATTORNEY |
| CARA COOKE | COUNTY CLERK |
| TAMI WHITE | CHIEF DEPUTY CLERK |
| LAURIE PRUITT | COUNTY TREASURER |
| CAROLYN STROBLE | CHIEF DEPUTY TREASURER |
| RHONDA HATCH | COUNTY ASSESSOR |
| MARK CAGE | SHERIFF |
| ADRIENNE JONES | EXEC ADMIN ASSISTANT |
| BREANNA SHIELDS | FINANCE DIRECTOR |
| PATSY CARRASCO | PAYROLL |
| STEVE MCCROSKEY | COMMUNITY SERVICES DIRECTOR |
| TANYA LOPEZ | COMMUNITY SERVICES SECRETARY |
| JASON BURNS | PUBLIC WORKS DIRECTOR |
| ROXANN BRANNON | HUMAN RESOURCES DIRECTOR |
| BILLY MASSINGILL | DETENTION WARDEN |
| JOSHUA MACK | FIRE CHIEF |
| CAROL HENNINGTON | INFORMATION SYSTEMS DIRECTOR |
| ROLAND RODRIQUEZ | IT SPECIALIST III |
| DEBRA HAMPTON | DWI PROGRAM DIRECTOR |
| STEPHANIE YBABEN | RED ROCKET MEDIA |

1

<u>**TIMED AGENDA**</u>

<u>**8:30 A.M.:**</u>

1. <u>**PUBLIC COMMENTS/ANNOUNCEMENTS.**</u> *(THREE MINUTE TIME LIMIT PER PERSON) (WE REQUEST ALL COMMENTS BE RESPECTFUL AND COURTEOUS IN NATURE)* Gonzales read public comments she had received thru email and public comment forum:

   <u>**Lynn Nymeyer:**</u> Nymeyer had served on a committee in the 1980's that applied for and received federal funding for the maintenance and preservation of historic downtown sites and buildings. She believed that the courthouse had been included in this federal program and would be protected in perpetuity by federal law as a historic landmark. She urged the County to not take drastic action without a complete background search and a vote by Eddy County citizens.

   <u>**Sandy Collier:**</u> Collier felt that historic preservation was an important way to transmit our understanding of the past to future generations, that the courthouse was not just a building but a cornerstone of activity central to all of Carlsbad. She felt the building was beautiful with lovely grounds and worth restoring. She asked the County to consider it.

   <u>**Davis Ruark:**</u> Ruark implored the County to make provisions for the renovation of the Carlsbad courthouse. He stated that he has had a legal career spanning almost 40 years. After trialling many serious cases in many courthouses, he felt that the older courthouses demanded respect & solemnity from lawyers, participants, and the general public. He felt that court proceedings needed to impress on all how serious our criminal & civil justice systems should be viewed. He stated the newer courts with their 12 x 12 rooms, cheap benches, and cheap furniture contributed to the view that our justice system was not serious.

   <u>**Lynda Bickerstaff:**</u> Bickerstaff was concerned and disagreed with relocating the courthouse to the southside industrial complex. She did not want to leave the courthouse to the misguided workings of an independent party who did not care about the historic building. She felt that many who had grown up here had seen countless historic buildings be destroyed, which has left the city with a void to the past. She did not want this to be the fate of the Eddy County Courthouse.

   <u>**Wren Prather-Stroud:**</u> Prather-Stroud felt the historic courthouse should remain the visual and working center of Eddy County. She felt that a new location for the detention center would improve the

2

downtown area, but building a new courthouse was not necessary or desirable. She stated that anyone who had lived in Carlsbad was proud of the majestic building at the center of downtown that still functioned as our unique courthouse. She asked to please preserve it as a working courthouse for the future citizens of the county. She stated that she did feel that moving the detention center was a good plan.

**Judy Parker:** Parker stated that she was raised in Carlsbad. Her family had come to Eddy County in 1905. She requested that the courthouse be restored and not destroyed. She had been in all 48 lower states and no one had such a historic courthouse other than Texas.

**Barbara June Wynn:** Wynn requested a no vote on the relocation of the courthouse.

**Gwen Gadbury:** Gadbury addressed the 4/15/2024 Commission Meeting. She felt our current courthouse was unique and fitting for New Mexico. She felt the location was where it needed to be, in the center of town where events take place and was accessible to Artesia residents. She felt that a courthouse out by the airport was an absurd location. She felt it would be more dangerous to drive with the oilfield traffic and make it further for the Artesia residents to travel. She did feel the location was suitable for a new jail on the outskirts of town.

**Marjorie Purcell:** Purcell has been a resident and property owner since 1949. She stated that she was appalled when she read that the Eddy County courthouse was in danger of being replaced. She felt that the building was an extremely important part of Carlsbad history and identity. She stated that as the town had changed over the years the courthouse was a constant reminder of the charm and history of Eddy County.

**Kelly Wixom:** Wixom stated that he and his household strongly opposed the idea of building a new courthouse. He felt that tax dollars would be better spent on infrastructure. He felt that this had the sound & smell of something for benefit of someone's personal bank account. Given the opportunity, he would vote no on this and anyone that supports this.

**Suzette Johnson:** Johnson requested a no vote on the proposed judicial complex in south Carlsbad. She stated that our courthouse was a treasured landmark. Adding if the courts must be moved, they should not be moved to the industrial complex in south Carlsbad.

3

**Floyd & Christine Haston:** The Haston's asked the Commissioners to renovate our historical courthouse. They felt that our town was booming with new people that would also learn to love the historical site. They felt that our courthouse is Carlsbad and it has shared the sorrows and joys with the citizens. As the town moves to the future, they asked to please not erase the past. They stated that it was repairable and it would speak to the history and future after we are long gone.

**Larry Mitchell:** Mitchell asked the county to be in favor of keeping the county courthouse activities downtown where it is in the middle of the governmental area in town. He felt that the detention center would work best outside of town by the Sheriff's office. He stated that the courthouse would better serve Carlsbad and Artesia by being central to the community. He proposed a solution to keep the courthouse as is and add on to the county annex. He requested a no vote to fund a new courthouse. Mitchell submitted a second comment requesting the Commissioners vote in support of keeping the courthouse and its services in the present location. He understood that the structure would not be demolished but felt the courthouse and its operations are central to the city of Carlsbad and a vital part of the downtown economy. Many downtown retailers, businesses, and restaurants rely on traffic from Eddy County employees and visitors. He stated that relocating the function of the courthouse would move at least 100 employees outside of the city also causing a longer drive for the citizens of northern Eddy County. He stated it was a great concept to construct a new detention center by the Sheriff's office.

**Donald S. Smith:** Smith encouraged all County Commissioners to vote against tearing down the courthouse. He stated that a yes vote to tear down the historic courthouse would mean a no vote from him against his commissioner next election.

**Larry Mullins:** Mullins could not believe they were contemplating to tear down the courthouse. He stated that it was a symbol of Carlsbad and should be preserved. He had also heard the high school may be torn down and wondered what was happening to his town.

**Allen Gwinn:** Gwinn requested a no vote on the proposed judicial complex. He asked that the commission pursue the route to preserve and renovate our current courthouse. He stated that Chaves County was able to do it. He felt to abandon our courthouse was an affront to citizens of Eddy County. He stated that several downtown buildings were available and could be renovated to expand it.

4

**Martine-Marie Helton:** Helton asked the Commission not to make any of the proposed changes to the courthouse. She stated the courthouse gives a sense of tradition, character, and dignity. She felt that a strip mall courthouse would be generically bland and would not express the pride that citizens of Carlsbad have in their town.

**Faith Johnston:** Johnston stated that she was sad and distraught by the proposal to move all County offices including the courthouse to the south side industrial complex. She felt this was a disservice to Carlsbad. She stated that our courthouse was iconic, a beautiful historic building that is the very center of Carlsbad. She reminded about the Farmer's Market and the Christmas displays then the idea of selling it for a bed and breakfast or a niche hotel. She stated to abandon it would only cause it to fall into disrepair. She recommended the County use the money to do improvements and implored the County to rethink this idea. She stated that we had lost too many iconic buildings in Carlsbad and to sacrifice the courthouse would be a regrettable decision.

**Elaine Mead Murphy:** Murphy urged the Commissioners to contact the NM Historic Preservation District regarding the restoration of the Eddy County Courthouse so it could remain in place and continue to function as it had for generations as the soul of downtown. She stated that our local Mainstreet Organization would be able to facilitate the conversation. Murphy submitted a second comment stating the citizens wished to maintain the courthouse at the historic downtown plaza for its original purpose. She requested a public tour of the interior to see the history, architect, and heritage of the building. She requested the Commission bring the public's attention to Pioneer Plaza so they could see the hundreds of names of families who settled here generations ago. She asked to please preserve the building for its original purpose as directed by its historic designation.

**Mark Horton:** Horton an attorney in Carlsbad spoke to the Commission. He was amazed to hear that every comment that was read opposed moving the courthouse. He asked the Commissioners to really listen to the public. He stated that this was not a few squeaky wheels, that this was the entire public urging them not to move the courthouse. There were practical reasons and sentimental reasons but all were valid. He was struck by comments made by people that work in the courthouse, referring to comments by Davis Ruark a prosecutor he had been across from during several trails. He felt that Ruark was right in his comments stating that the courthouse needed to have solemnity; it needed to have a solemn, professional atmosphere. It did not need to look like a new high-rise office, it needed to look like a courthouse. He stated that people who never went in the courthouse

5

urged them not to move it because it was the center of town, they only saw it from the outside but it meant something to them. It meant something that the heartbeat of the legal community was there. He stated that every attorney in town was located within a mile of the courthouse. He stated that there was no good reason that he had heard to move the courthouse to the industrial park; it did not make any sense. He felt that the Commissioners were hoping to use land available at a cheap price and build from the ground up thus save a lot of money. The County could probably renovate for less than it would cost to build something of quality like they already have. He asked to leave the courthouse at the center of the city, not to move it to the far end of town. He urged the Commission to vote no on moving the courthouse and put the plan behind them.

**Norbert Rempe:** Rempe spoke to the commission. He stated our governor had recently called a special session to take up additional safety protections that New Mexicans demanded, but past works demonstrated the absence of concern for the safety of children in the womb. He stated our neighbors: Eunice, Hobbs, Clovis, Lea & Roosevelt Counties have made abortion practically impossible within their jurisdictions. He felt we can and must do likewise. He stated that the Commissioners should act with dispatch in following our neighbors' example. Their binding ordinances are public record, available to our commissioners and their legal counsel.

**TRAILING AGENDA:**

1. **APPROVE:**
   a. **\*COMMISSION MEETING MINUTES FOR APRIL 16, 2024.**
      Carlson moved, seconded by Cordova, to approve the Commission Meeting Minutes for April 16, 2024. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0.
   b. **\*EXPENSE APPROVAL REPORT FOR APRIL 2024.** Beard moved, seconded by Henry, to approve the Expense Approval Report for April 2024. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The Expense Approval Report for April 2024 was recorded as Exhibit 1.b.
   c. **\*PURCHASE CARD APPROVAL REPORT FOR MARCH 2024.**
      Cordova moved, seconded by Carlson, to approve the Purchase Card Approval Report for March 2024. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The Purchase Card Approval Report for March 2024 was recorded as Exhibit 1.c.

2. **\*CONSIDERATION OF NEW COURTHOUSE – ROBERTA GONZALES.**
   Gonzales stated that this was first brought to the April 16th Commission Meeting for consideration as a complex as a whole considering a new

6

detention center, a new administration building, and a new courthouse. After public comment it was decided to table the consideration and have a town hall meeting in Carlsbad and Artesia. The town hall meetings have been completed and additional public comments were received. This consideration was now being brought back, now being separated into 3 separate buildings but still 1 complex. She stated that the courthouse alone would cost $128M; it would include all courts: municipal, magistrate, and district. If it were district court alone it would cost $105M. Bowen advised that he would like to hear from each Commissioner before moving on. Beard stated he agreed with about 2/3 of the comments that were read. Beard stated that he was a 4th generation rancher from here and as a child he had unlimited access to the courthouse. He stated that the rumor that the county would tear that magnificent building down was so far out of line. He felt that we needed to reconstruct and preserve the historic value of the building. He stated that he would like to fill the empty rooms with civic organizations; a lot of people around city hall had shown interest in doing something there. He stated that downtown you could not walk into the jail or the front door of the courthouse unfettered. He understood in the 21st century the necessary security for the court. He questioned how to give that wonderful building back to the public with the court in it, stating that you could not have the necessary security along with public access; it was not compatible.  He pointed out that one of the first things the Farmer's Market must do is set up outhouses on the front lawn because there is not access to the restrooms in the courthouse, and asked if that is really what we want.  Henry stated that he had heard the public comments. He did find it disappointing that people continued to say that the courthouse was going to be torn down. He stated that has never been a discussion, and would never be a discussion. Two of the comments had really resonated with him, one was a request for a tour so they could see the inside. He felt that was something they had heard quite often so many people had not had as much access.  The other comment was from a lady in Artesia. She was a 3rd generation Carlsbad and the first time she had ever been in the courthouse was for that public hearing. He questioned at what point if generations were not allowed in the courthouse, would we lose the next generation of wanting to make sure the amazing building was cared for because they do not have ties to it. He wanted to see access to it so that people could go in there. He stated before moving forward with this there were more things he would like to understand and see. He felt it was a good idea to have an economic impact done. He was told about a beam that went across the courthouse that may cause problems for contractors. Some people had mentioned to him about the water table; he wanted to learn more about that. He stated that some had mentioned access to justice; the first time he heard that it was referring to access for Artesia. He stated he had driven from where you would turn on the loop to Courthouse; it was about +/- 10 to 13 minutes and from turning on the loop to the proposed courthouse site it was about and 15 minutes. He stated the time frame is a plus or minus 5 minutes. He stated that the second time he heard about access to justice it was about

7

people in Carlsbad that walk to the courthouse. He wanted to be fully aware and make sure he understood that.  Carlson stated he was born & raised in Carlsbad. He stated he had been in the courthouse many times before and after security had been added. He felt that the courthouse was beautiful and it would be cheaper to do the renovations that are needed than building a new courthouse. He said entering the courthouse he had not been asked what his business was but did need to go through a metal scanner. He felt that maybe there could be an organization that would give a public tour on certain days. Carlson stated that he would rather spend the money to renovate.  He understood Henry's reservations on some of the things and very good points that needed to be looked at. He felt that we should start with the economic impact that was talked about. He did not want to move forward until all the points had been answered. Cordova thanked everyone that took the time to come to the town halls and reach out to the County by phone and email, especially by the individuals that worked at the courthouse. She was enlightened on some of the workings and viewings. She had taken a second tour to look at the space. She stated that she was also born and raised in Carlsbad and had not spent a lot of time in the courthouse. She had jury duty there once before and thought it was a fantastic building. Some of the points for the town hall that has resonated with her was the access to justice. She had not once thought about how difficult it might be for individuals get there for important court dates, or the attorneys that work so close to the area. She felt Judge Finger's recommended for an economic impact analysis definitely needed to be done. She felt that it was unfortunate that the employees were not consulted as they felt they should be; moving forward that should be the highest priority before any decision was to be made. She was not prepared to move forward with a decision on the courthouse. She stated that we are the stewards of the public's money and she wanted to make sure this was a decision that was respectful and reasonable to all.  She understood that not everyone will 100% agree. She felt that it was important to take care of what we have and look at a full report or analysis of what renovation could be; she felt that there were unanswered questions. She did support a public tour or the public having some access to the courthouse while maintaining safety. She stated that this was a project that had been going on for a long time and Gonzales just took the direction she was provided to get us where we were today, she did not want to discount anybody's hard work and efforts, especially Burns or anyone that has come and gone from the County.  She stated that anytime they were looking at improvements or options that it was good work, providing options for the County. She stated as discussed, the economic impact analysis and looking at detailed schematics of the building and what it would take was where she stood. Bowen felt that the town hall turnout was good, especially in Carlsbad. He felt that the comments from Jameson Lucas, who was from the Historic Society about the building, the courthouse, the WPA constructing benches was something he would like to receive more information on.  He stated that most of the people that spoke were those directly impacted by the courthouse and its location. Others had

8

personal history and memories from the courthouse in its previous uses. Equal access to justice was reiterated several times and something he had not considered. He stated that the courthouse was a District Courthouse and served an area much larger than the city of Carlsbad. He did not believe that moving the courthouse 2.1 miles south would hurt anyone outside of the people who live inside the city of Carlsbad. He stated that public transit could be made more available to the new complex. He felt this argument while heard was unsubstantiated. The other point of contention was impact of moving the courthouse would have on downtown businesses and restaurants. He stated that his family owned 3 businesses downtown and they disagreed with this point. They did not feel that people are flocking to the downtown businesses from the courthouse nor the County Administration building. He felt that he could say with certainty that we should listen to the downtown business owners not just to the people who have imagined this as a side effect of a proposed relocation. He felt that an economic impact would be great and was something we needed to have. He appreciated everyone's memories and passion for the courthouse when they were growing up. However as stated by a constituent in Artesia she was also a life-long resident of Carlsbad and until this issue she had only been in the courthouse one other time. She stated that most people her age share the same sentiments. Bowen stated that the building was not in any danger with this Commission, but as those that get involved get younger that do not have a sense of attachment or draw to the building, it could be at risk with future Commissions who do not share the same ideas and beliefs as they do. Bowen stated that it was said multiple times that the courthouse was the heart and the lifeblood of this community and he could not disagree with that. The courthouse was a beautiful historic building but that is what it was, a building. The heart and soul of this community are the people who work in the potash, the nuclear, and oil & gas industries, that provide industry and opportunity not only for the men & women who feed off of them but also for the many ancillary businesses that also feed off of them, including the downtown businesses and restaurants. That was the true lifeblood of the community. The people are the lifeblood and heart of the community not a building. He had also heard that there were no restaurants south of town, except there were multiple restaurants south of town. This was also a building block of the community; as the town grows south, businesses and restaurants will also follow to suit the needs of the community. This is how growth occurs. He stated that he was an elected official and believed in listening to the concerns of the citizens of the county and making his decisions based on their wants as well as the facts that are presented while being a good steward of the County's money. He agreed that the courthouse was not needed now but definitely will be needed in 15 years. He felt that this was one of the rare occasions that government had the opportunity to be proactive and not reactive to a problem. He stated it had to be taken into consideration all of the people that had reached out in opposition of this. He stated that further information was needed before a decision was made. He wanted an

9

economic impact study, to have a true alternative proposal set in stone for what the courthouse would be used for if it was to be moved. He did not feel this could be voted on and looked for a motion for it to be tabled. Carlson stated he would like to add to the motion until all the proper studies were completed, an economic impact study, an engineering study as to what the structure looks like today, what would need to be done going forward, and the cost associated. He stated that was his motion. Carlson moved, seconded by Beard, to table the Consideration of New Courthouse until all the proper studies were completed, an economic impact study, an engineering study as to what the structure looks like today, what would need to be done going forward, and the cost associated. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0.

3. **\*CONSIDERATION OF NEW DETENTION CENTER – ROBERTA GONZALES.** Gonzales stated this was brought to the Commission meeting on April 16th it had been through presentation and same as the courthouse was being brought back to the Commission for consideration. Henry stated that the jail was built in 1993 and 31 years later we needed to build a new jail; because of the location, there was not room for expansion. He did not want the Commission in 20-30 years to have to spend money because this Commission did not make sure that they did everything they could to foresee what is coming. Carlson agreed and felt that as they finalized the design there needed to be input from the warden and other experts in prison & detention facilities, and to build it for expansion. He felt moving it from downtown Carlsbad was imperative. There had been instances where deputies had to chase inmates on foot through the middle of town. Cordova agreed, after touring the facility, speaking to the warden and staff members, her position was for the safety of the employees and inmates when it comes to how the detention center is functioning now. She felt that the warden had been active in the plans for the proposed detention center and it did have the ability to be added on to in the future. She wanted to explore the point that was brought up in the meetings by Mr. Banks, a public defender, he stated inmates are released 24 hours a day. She wanted to explore options of getting inmates back to town once released versus releasing them on the side of the road or the highway. She felt there was a reasonable solution that they could come up with. She supported moving forward, that these were some issues that they needed to have a solution to. Bowen stated that you should not be able to check your mail, go to the bank and visit someone in jail all in the same block. He felt this was much needed. Gonzales wanted to state that because the courthouse was tabled at the time, and the motion was being made to approve the detention center. The County does have the funding for the detention center and would not have to bond. Whether it is only for the detention center or for another building the County also had the funding for that too. She stated moving forward she would bring any final design conceptual back for the Commission consideration. Bowen made the motion to approve consideration of new detention center using the cash on hand, to

10

not go out for a bond for this portion of the project.  Beard moved, re-seconded by Carlson, to approve Consideration of New Detention Center using the cash on hand to not go out for a bond for this portion of the project. Voting yes:  Beard, Henry, Bowen, Cordova and Carlson.  Passed 5-0.

4.  **\*CONSIDERATION OF NEW ADMINISTRATION/FACILITIES BUILDING – ROBERTA GONZALES.** Gonzales stated that the Facilities building had to be included because they did need a separate bay area for facilities and emergency management area. The Administrative building would be roughly $45M, including it would be about $54M. Beard stated that he was in favor of doing this. It would free up space for business to move into this area. The reason the courthouse had empty rooms was because the county had moved out because there was no more room there.  He stated that we were in the same situation now that we were then, which proved the point that eventually we would outgrow everything. He stated that the pool of oil that was sitting under us was not going anywhere. Cordova questioned if we had looked at options for expanding the current Admin building. Gonzales stated that was a discussion back in 2017 along with the new detention center; they discussed building in the parking lot and tearing down the Admin building to build a new parking lot. She stated that that it never grew legs to come to the Commission for consideration at that time. Henry questioned if we did decide to build on this block would it give us the space with the bays and everything else that they were trying to consolidate. He stated that they have had to grow departments because of unfunded mandates, and wanted to know if that gave the option to continue to grow. Gonzales stated that the reason that there had been talks about moving Administration to the south end is because there were several buildings we were trying to maintain: Administration, DWI, Clerks, Facilities, OEM. She stated that rather than trying to have the space fit our needs, we would be building something so that we all could be housed in one area and utilize the space we actually need. In the foresight of 10-15 years if the County grows, we would still be trying to piece everything together making small remodels to house people, moving people from one building to another. Gonzales stated that it had not been seriously considered. Henry stated he felt it was tough in some aspects that we had outgrown our current building. He did not feel that the County should own as many buildings as they currently do. He wanted a building that we could grow into, to put us in the best spot so that in 20 years the Commission did not have to wish they had made better decisions. He did feel that parking was an issue and it would not resolve anything by putting a building next door. Carlson wanted to move south to make room for the Commission to have room for everyone that wanted to be at the meetings and not standing in the hallways. Beard moved, seconded by Cordova to approve the consideration of new Administration/Facilities building. Voting yes: Beard, Henry, Bowen, Cordova and Carlson.   Passed 5-0. Bowen added an additional motion to Consideration of New Administration/Facilities Building using the cash on hand and not to seek a bond for this cost of this project. Beard moved,

11

seconded by Cordova, to approve Consideration of New Administration/Facilities Building using the cash on hand and not to seek a bond for this cost of this project. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0.

5. **FY 2024-2025 PRELIMINARY BUDGET REVIEW, DISCUSSION AND DIRECTION WORKSHOP #1 – BREANNA SHIELDS.** Shields stated the countywide revenue for 24-25 was $361M, countywide expenses at $487M. This was high compared to current fiscal year due to $110M budgeted for the new complex. She stated the General Fund budget was $147M which was an increase of $29M from current year. For Gross Receipts, current budget year was $2.8M monthly. The average has been $5.6M monthly so next year there will be an increase to $3.2M monthly. The current year O&G was budgeted at $65 per barrel; the average has been $77 per barrel so for the 24-25 budget year they have increased to $69 per barrel. Monthly volume was budged at $16M per month this year; the average has been $22.5M per month. Next fiscal year will be budgeted at $19M per month. Property tax was increased to $6.5M to better align to this year's actuals and forecast for next year's calculations. The Personnel budget was at $54.5M which was a $2.9M increase; the large cause of that was insurance increases of 22% over the original 23-24 budget. Step increases were $355K. Longevity pay was $255K. Re-classification pay was $240K. New positions were added for $1M. Gonzales stated that the County increased funding for Mainstreets to $30K each, it was previously at $25K each. Southeast Community Action Corp received new funding of $20K, and the Community of Hope received new funding of $4.5K. She stated that the rest of the PSA funding stayed the same. Shields stated the $4M was set aside for the 4th judge remodel at the courthouse. She stated there was $11M in road construction maintenance budgeted. Capital spending for Fire & Rescue was $28M.

6. **\*R-24-48; FY 2024-2025 INTERIM BUDGET APPROVAL – BREANNA SHIELDS.** Gonzales requested that the 24-25 Interim Budget be approved with the net change of $77,658.28 for Personnel, along with $110M budgeted for the complex to be split in two buildings. Henry moved, seconded by Carlson, to approve R-24-48 with the net change of $77,658.28 for Personnel, along with $110M budgeted for the complex to be split in two buildings. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. R-24-28 was recorded as Exhibit 6.

7. **TREASURER'S REPORT FOR MARCH 2024 – LAURIE PRUITT – FYI ONLY.**

8. **\*REVENUE REPORT FOR MARCH 2024 – BREANNA SHIELDS.** Shields stated the March revenue for General Fund was $6M. O&G receipts were $6.9M. Gross Receipts had a $9.6M YTD increase over prior year. Cordova

Appellants' Appendix
0081

moved, seconded by Beard, to approve the Revenue Report for March 2024. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The Revenue Report for March 2024 was recorded as Exhibit 8.

9. **\*BUDGET VS. ACTUALS – MARCH REVENUE AND EXPENSES – BREANNA SHIELDS.** Shields stated that Budgeted Revenue was at $262M, Actual Revenue was $327M. Budgeted Expenses were $290M, actual expenses $190M. General Fund Revenue was 145% collected, General Fund Expenses without transfers were 58% spent. Henry moved, seconded by Beard, to approve the Budget vs. Actuals -- March Revenue and Expenses. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The Budget vs. Actuals -- March Revenue and Expenses was recorded as Exhibit 9.

10. **\*FY 2023-2024 3RD QUARTER LODGER'S TAX REPORT – BREANNA SHIELDS.** Shields stated the fiscal year cash balance was $139K, YTD $71K was received, $92K was paid out leaving a $118K cash balance. She stated that there was nothing committed for the rest of the fiscal year. Cordova moved, seconded by Carlson, to approve the FY 2023-2024 3rd Quarter Lodger's Tax Report. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The FY 2023-2024 3rd Quarter Lodger's Tax Report was recorded as Exhibit 10.

11. **\*APPROVAL TO BECOME FISCAL AGENT FOR NM HIDTA – BREANNA SHIELDS.** Shields stated that the County had been asked to become the fiscal agent for the high-level NM HIDTA. This would be for their operating budget, no labor, they had specific grants that would fund that. Shields felt that the County could meet their needs better than where they are currently sitting. Cage stated that NM HIDTA had struggled with having a fiscal agent. HIDTA was willing to fund an additional position in Finance to help handle this. Carlson moved, seconded by Beard, to accept the Approval to Become Fiscal Agent for NM HIDTA. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The Approval to Become Fiscal Agent for NM HIDTA was recorded as Exhibit 11.

12. **\*PROCUREMENT MANAGER RECLASSIFICATION – BREANNA SHIELDS.** Shields stated there had been some turnover in her office. After reviewing and aligning roles and responsibilities, she requested to re-class from a Procurement Manager to Procurement Administrator to get grades and titles more aligned. She wanted to allow for upward growth for high performers and create more upward advancement. She stated that this would not be a grade change for this position. Cordova moved, seconded by Henry, to approve the Procurement Manager Reclassification. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The Procurement Manager Reclassification was recorded as Exhibit 12.

13. **\*REQUEST FOR SPECIAL COMMISSION MEETING – BREANNA SHIELDS.** Shields stated that the Final Budget had to be approved before July 31st. She requested a Special Commission Meeting for July 26th morning to approve Q4 budget adjustments, Q4 DFA report, and the final 24-25 FY budget. Beard moved, seconded by Cordova, to approve the Request for Special Commission Meeting on July 26, 2024 at 8:30 a.m.   Voting yes: Beard, Henry, Bowen, Cordova and Carlson.  Passed 5-0.

14. **\*RE-CLASSIFICATION OF PUBLIC INFORMATION COORDINATOR TO PUBLIC INFORMATION OFFICER – ROBERTA GONZALES.** Gonzales stated that the goal of this position would be to have a central point of contact for the entire county. To have one person doing all communication on the County website, social media, newspapers, and speaking with the press. Carlson moved, seconded by Beard, to approve the Re-Classification of Public Information Coordinator to Public Information Officer.   Voting yes: Beard, Henry, Bowen, Cordova and Carlson.    Passed 5-0.    The Re-Classification of Public Information Coordinator to Public Information Officer was recorded as Exhibit 14.

15. **\*SETTING A DATE FOR THE ANNUAL SITE VISIT TO EDDY COUNTY DETENTION CENTER – ROBERTA GONZALES.** Gonzales stated that annual site visit from the Commission followed up by an inspection report was required by state statute. She proposed a date of May 21st after the Commission Meeting. Henry moved, seconded by Cordova, to Set a Date for the Annual Site Visit to Eddy County Detention Center for May 21, 2024 following the Commission Meeting.    Voting yes:  Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The Request for Setting a Date for the Annual Site Visit to Eddy County Detention Center was recorded as Exhibit 15.

16. **\*2024 FREEHOLDERS BOARD RECOMMENDATIONS – JASON BURNS.** Burns gave a presentation that showed the recommendations from the Convene of Freeholders. They had identified several roads to add/vacate to Eddy County mileage. There was a recommendation to add 4 sections of roads to maintenance and abandoning 2 sections. Henry moved, seconded by Cordova, to approve the 2024 Freeholders Board Recommendations. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The 2024 Freeholders Board Recommendations was recorded as Exhibit 16.

17. **\*CAT 140 GRADER – BUYOUT BUDGET ADJUSTMENT – JASON BURNS.** Burns stated that the buyout request was approved at the March 21, 2023 BOCC Meeting. The lease contract will expire at the end of May 2024 and a buyout of $123,375.00 will be due. Carlson moved, seconded by Henry, to approve the CAT 140 Grader – Buyout Budget Adjustment.  Voting yes: Beard, Henry, Bowen, Cordova and Carlson.  Passed 5-0.  The CAT 140 Grader – Buyout Budget Adjustment was recorded as Exhibit 17.

14

18. **\*BUDGET ADJUSTMENT FOR SANDPOINT MAINTENANCE SERVICES – JASON BURNS.** Burns stated that with the increase in trash at the landfill, additional equipment & operators were needed. This request was to cover the additional costs thru the remainder of the 2023-2024 year. Beard moved, seconded by Cordova, to approve the Budget Adjustment for Sandpoint Maintenance Services. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. The Budget Adjustment for Sandpoint Maintenance Services was recorded as Exhibit 18.

19. **\*REQUEST TO SET FOR CONSIDERATION AND PUBLIC HEARINGS, THE BELOW DESCRIBED ORDINANCE FOR JUNE 4, 2024 DURING REGULARLY SCHEDULED BOCC MEETING – STEVEN MCCROSKEY.** McCroskey stated that this was one of the remaining franchise agreements. They had settled this out with NM Gas Company and now would like to schedule a hearing. Cordova moved, seconded by Carlson, to approve Request to set for consideration and public hearings for the NM Gas Company at the June 4, 2024 during regularly scheduled BOCC meeting. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0.

20. **CONOCOPHILLIPS DONATION/GRANT – JOSHUA MACK – FYI ONLY.** Mack stated that Fire & Rescue had received a $12K grant from ConocoPhillips. The money was to be used to purchase McGrath Video Scopes.

21. **\*RESOLUTION AND AGREEMENT CONSENT AGENDA:** Since all of the items listed below have been distributed to the Commissioners in advance for review and are of a routine and non-controversial nature, they will be enacted by a single motion. Any Commissioner or the County Manager may remove an item from this Resolution and Agreement Consent Agenda if separate discussion is desired. Any item so removed shall be placed on the Trailing Agenda immediately following the approval of this Resolution and Agreement Consent Agenda or later, at a specific time or place on the Trailing Agenda.

    a. **RESOLUTIONS:**
        i. **R-24-37; RESOLUTION IMPOSING AN ANNUAL, NON-PROHIBITIVE LICENSE TAX UPON THE PRIVILEGES OF PERSONS HOLDING STATE LICENSES UNDER THE NEW MEXICO CONTROL ACT – CARA COOKE.**
        ii. **R-24-40; DONATION OF ASSETS FROM DEPARTMENT OF ENERGY (DOE) TO THE EDDY COUNTY SHERIFF'S OFFICE AT SHERIFF'S POSSE SHOOTING RANGE – MARK CAGE.**
        iii. **R-24-41; FY 2023-2024 DFA 3RD QUARTER REPORT – BREANNA SHIELDS.**
        iv. **R-24-42; APPROVE FY 2024-2025 BUDGET PREPARATION METHODOLOGY PROCESS – BREANNA SHIELDS.**

Appellants' Appendix
0084

    v. <u>R-24-43; DISPOSAL, REMOVAL, OR REVISE ITEMS IN THE EDDY COUNTY INVENTORY/ASSETS – JESSICA STYGAR.</u>

    vi. <u>R-24-44; APPROVAL TO DONATE THE FOLLOWING VEHICLES FROM THE EDDY COUNTY DETENTION CENTER TO SOUTHEAST NM COMMUNITY ACTION CORPORATION – WARDEN BILLY MASSINGILL.</u>

    vii. <u>R-24-45; DONATION OF CHEVROLET TAHOE TO THE WICHITA WEST, TX VFD – JOSHUA MACK.</u>

    viii. <u>R-24-46; DONATION OF EXTRICATION EQUIPMENT TO THE DELL CITY, TX VFD – JOSHUA MACK.</u>

    ix. <u>R-24-47; DONATION OF FIRE PREVENTION TRAILER TO THE NEW MEXICO STATE FIRE MARSHAL'S OFFICE – JOSHUA MACK.</u>

    x. <u>R-24-49; REMOVAL OF THE GENERAL EXPENSES FROM THE FEMA CONSTRUCTION IN PROGRESS LISTING – JESSICA STYGAR.</u>

    xi. <u>R-24-50; RATIFICATION OF A NEW MEXICO REGULATION & LICENSING DEPARTMENT PUBLIC CELEBRATION PERMIT APPLICATION FOR MILTON'S BREWING LLC TO SERVE ALCOHOLIC BEVERAGES AT A SPECIAL EVENT ON MAY 3, 2024 AT 4327 HARMON LANE, CARLSBAD – ROBERTA GONZALES.</u>

b. <u>AGREEMENTS:</u>

    i. <u>A-22-173; RENEWAL NO. 4; PROFESSIONAL ENGINEERING SERVICES WITH WOOD (WSP) ENVIRONMENTAL & INFRASTRUCTURE (RFP 20-04 LANDFILL ENGINEERING SERVICES) – BREANNA SHIELDS.</u>

    ii. <u>A-24-46; NEW MEXICO DEPARTMENT OF HOMELAND SECURITY AND EMERGENCY MANAGEMENT GRANT AGREEMENT 2016-027-EDC 001 – ROBERTA GONZALES.</u>

    iii. <u>A-24-47; USDA, FOREST GRANT 23-LE-11030800-075 MODIFICATION 002 – MARK CAGE.</u>

    iv. <u>A-24-54; PROCUREMENT SUPPORT CONTRACTOR – BREANNA SHIELDS.</u>

    v. <u>A-24-55; STATE & LOCAL CYBERSECURITY GRANT PROGRAM APPLICATION – LOCAL CONSENT AGREEMENT – CAROL HENNINGTON.</u>

    vi. <u>A-24-56; BRYCER, LLC – THE COMPLIANCE ENGINE – JAROD ZUNIGA.</u>

    vii. <u>A-24-58; APPROVAL FOR NM HIDTA GRANT FY JAN 2023-DEC 2024 – BREANNA SHIELDS.</u>

    viii. <u>A-24-59; APPROVAL FOR NM HIDTA GRANT FY JAN 2024-DEC 2025 – BREANNA SHIELDS.</u>

16

    ix. <u>**A-24-60; FY 24-25 JAG SUB-GRANTEE APPLICATION – MARK CAGE.**</u>
    x. <u>**A-24-61; APPROVAL OF THE EXECUTION OF A PIPELINE RIGHT OF WAY TO LM TOUCHDOWN, LLC, AS REQUESTED AND APPROVED BY SENDERO CARLSBAD MIDSTREAM, LLC WHO WAS ISSUED OUR IRB'S IN CONNECTION WITH THEIR EXPANSION – CAS TABOR, EDDY COUNTY ATTORNEY.**</u>

Beard moved, seconded by Henry, to approve the Resolution and Agreement Consent Agenda. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0. R-24-37 and R-24-40 through R-24-47, R-24-49 and R-24-50 were recorded as Exhibits 21.a.i – 21-a.xi, respectively. A-22-173, A-24-46, A-24-47, A-24-54 – A-24-56, A-24-58 – A-24-61, respectively.

22. <u>**\*TRAVEL REQUEST CONSENT AGENDA:**</u> Since all of the items listed below have been distributed to the Commissioners in advance for review and are of a routine and non-controversial nature, they will be enacted by a single motion. Any Commissioner or the County Manager may remove an item from this Travel Request Consent Agenda if separate discussion is desired. Any item so removed shall be placed on the Trailing Agenda immediately following this Travel Request Consent Agenda or later, at a specific time or place on the Trailing Agenda.

    <u>PRIOR:</u>
    a. <u>**KANE WYATT ATTENDED NATIONAL PUBLIC SAFETY INNOVATION ACADEMY IN WINTER HAVEN, FL FROM JANUARY 13, 2024 THROUGH MARCH 15, 2024.**</u>
    b. <u>**LUIS ORTEGA ATTENDED BUILDING THE LEADER WITHIN IN HOOVER, AL FROM APRIL 28, 2024 THROUGH MAY 2, 2024.**</u>

<u>FUTURE:</u> None.

Cordova moved, seconded by Carlson, to approve the Travel Request Consent Agenda. Voting yes: Beard, Henry, Bowen, Cordova and Carlson. Passed 5-0.

23. <u>EMERGENCY BUSINESS.</u> None.

24. <u>LEGISLATIVE COMMENTS/ ANNOUNCEMENTS/UPDATES.</u> Gonzalez stated that the Governor had called a special session starting July 18th to discuss public safety issues.

25. <u>ELECTED OFFICIAL/DEPARTMENT COMMENTS/ANNOUNCEMENTS/ UPDATES.</u> Cage thanked the Commission for their decision on HIDTA. He had attended an awards ceremony where the US Attorney in our district gave

17

awards. The following people had received awards: Commander Leos received the Lifetime Achievement Award, Deputy Moreno, Sargent Duchene, Sargent Aranda, and former Deputy Mathews. He would be going to DC representing the nation's sheriffs at the National Law Enforcement Memorial. He stated that they had received all budgeted vehicles. They were currently testing the 3rd canine; she would be coming on board soon. The National Sheriffs had requested that he sit on a National Behavioral Assessment Board, he was hoping to bring back some solutions for NM. He stated that the NM Counties Conference will be in Las Vegas, San Miguel County June 17-20. He wanted to remind everyone that on May 15th the 7-day waiting for firearms purchases would go into effect. Cooke announced that voting had started and the hours were 8am – 5pm Monday thru Friday. Beginning May 18th the hours would be 8am – 6pm Monday thru Friday, and on Saturdays 8am – 4pm. She encouraged everyone to get out and vote. Massingill thanked the Commission for the new detention center vote. He had been involved in preliminary designs and layout for a while. He looked forward to the Commission's tour coming up. He stated they were moving forward with the IGNITE Program. McCroskey had filled the Code Enforcement position and he introduced Landon Blackmon the new County Planner.

26. **COUNTY MANAGER'S COMMENTS/ANNOUNCEMENTS/ UPDATES.**
Gonzales reminded everyone that in-person early voting had started. She stated that a PSA was sent out on delinquent property tax auctions to be held in the Commission Chambers on May 29th at 10:00am. The PSA also included a notice concerning fraudulent tax notices that people had received. She announced that Emergency Management had been moved into a building on Main St. which had freed up some room in the Admin building for some Community Services personnel. She stated there had been a lot of office moving lately and thanked Moore and his team for the help. She was asked to speak at Leadership NM; Mack was also in attendance. She felt it was very informative. She gave some of the highlights from a presentation from Ryder Booth: he spoke about how 50% of Chevron's capital will be in the Permian Basin within the next 5 years. He stated that 9% of oil had been taken out of the ground. He spoke about how different countries only have 1 car per 1000 people and if one of the countries changed it would change the world's dynamic. He spoke a lot about green energy and how Chevron supports that. Gonzales did receive information after the last commission meeting that the Village of Hope was doing a clean up on April 20th–May 5th but unfortunately she received the information after it was done. Burns was able to get some roll off containers for their clean up. She wanted to confirm that there would be a quorum on the June 18th Commission Meeting in the Commission Chambers. That was the first day of NMC and there were some Commissioners that planned to attend. She reminded everyone that ICIP was due early this year on July 12$^{th}$and she asked that everyone get with

18

McCroskey so the information could be presented to the Commission for
consideration. She stated that the zoom recordings of the town hall meeting
were on our website and would be available until May 17th. She congratulated
Commander Leos and Deputy Moreno on the awards that they had received.
She summarized a letter she had received from NM Association of Counties.
According to their by-laws they needed to make sure the Authority remained
financially solvent in case they had a high-risk year and for re-insurability.
They needed $54M in their net position to be solvent; they currently had
$37.5M which left a deficit of $16.55M over the next 3 years. Eddy County's
portion would be $860K, which could be paid up front or split into 3 fiscal
years.

27. **COUNTY           COMMISSIONERS'          COMMENTS/ANNOUNCEMENTS/
UPDATES.** Beard stated that he definitely wanted the courthouse restored
and fixed. He stated that if we could allow the public to have access to a
portion of the building without security, he could get on board with keeping the
courthouse there. He stated that if the courthouse were to stay then the
courts need to go. Henry wanted to thank ConocoPhillips for their support;
they were great partners. He was proud of the HIDTA awards that were given,
proud of the dogs that we have available for use getting drugs off the streets.
He felt that what was happening at the border was a tragedy for the entire
US, he felt like it does not feel like as many are doing what they should as
are. He wanted to clarify when speaking of the jail 31 years ago, he would
never second guess the Commission's decision. They were doing the best
with what they had at the time. He also wanted to clarify that when he said he
was not a big proponent of government-owned buildings, the courthouse is
one of those we will always own as far as he was concerned. Henry thanked
O&G, WIPP, potash mines, farmers & ranchers who everyday drive hundreds
of miles to get their jobs done. The men and women in Eddy County are
doing some amazing things and he was proud of that. He encouraged
everyone to go out and vote. He stated that every vote counts, and it only
counts once, but it does not count if you do not vote. Carlson felt that there
was great participation in the town hall meetings; he thanked everyone who
got out to address government. He felt it was important. That they did not get
things done without community support. He felt the new information person
was going to be a great addition. Community was always welcome in
government and that was part of the transparency of this Commission.
Cordova felt that with the addition of .gov website and upgrading some of our
internal practices, we were making moves in the direction of being more
transparent with the public. She thanked the public for coming and providing
their comments. She agreed that the people of Eddy County worked hard in
our area. She was grateful that the County had the means to take care of
some of detention employees; she hoped we could give them a more
efficient, safe place to work in. Bowen congratulated Commander Leos and
the others on the awards they had received. He felt the Lifetime Achievement
Award that Commander Leos received was a big award that not many people

had received. He reminded that early voting had started and encouraged everyone to get out and vote. He stated that the courthouse had been a topic of contention. He appreciated everyone that reached out.  He heard everything but hearing and agreeing with are two different things. He felt perspective is key in looking at situations. It was very easy to get wrapped up and jump into the same group.  That when you start to look at things and you were so enamored in it you cannot step back and see what issues are actually trying to be addressed.  He was glad that the Commission took a step back to look at this examining all options. He stated that voting today would have been the wrong decision. He hoped that everyone understands and appreciates that these decisions are not being taken lightly. Referring to what Henry said about the ConocoPhillips just added to his point that the heart and soul of Eddy County being the industries that are here. It was not the courthouse giving $12K to Fire Services, it is all industries and the people. He hoped that we did not lose focus of that.

**28. <u>EXECUTIVE SESSION</u>**:  None.

*~Asterisks denote vote is required~*

EDDY COUNTY BOARD OF COMMISSIONERS
EDDY COUNTY, NEW MEXICO

_____          Date: <u>May 21, 2024</u>
Bo Bowen, Commission Chairman

**ATTEST:**

_____
Cara Cooke, County Clerk

20

# EXHIBIT B-2



# Agenda Center

View current agendas and minutes for all boards and commissions. Previous years' agendas and minutes can be found in the Document Center. Adobe Reader may be required to view some documents. 

**Tools**

RSS

Notify Me®

▼ **County Commissioners**          **2025**  2024  2023  View More

| Agenda | Minutes | Download |
|--------|---------|----------|
| Mar (March) 18, 2025 — Posted Mar (March) 14, 2025 3:05 PM | | |
| Agenda Packet for March 18, 2025 Commission Meeting | | |

Select Language ▼

Agenda                                              Minutes    Download

Mar (March) 4, 2025 — Posted Feb (February) 27, 2025 5:26 PM

Agenda Packet for March 4, 2025 Commission Meeting

Feb (February) 18, 2025 — Posted Feb (February) 13, 2025 10:21 PM

Agenda Packet for February 18, 2025 Commission Meeting

Feb (February) 4, 2025 — Posted Jan (January) 30, 2025 7:29 PM

Agenda Packet for February 4, 2025 Commission Meeting

Jan (January) 21, 2025 — Posted Jan (January) 16, 2025 9:05 PM

Agenda Packet for January 21, 2025 Commission Meeting

Jan (January) 7, 2025 — Posted Dec (December) 26, 2024 4:08 PM

Agenda Packet for January 7, 2025 Commission Meeting

Select Language ▼

Select Language ▼

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

     **Plaintiff,**

**vs.**                                      **Case No.: 2:25-cv-00226-MIS-GJF**

**MIKE GALLAGHER,**
**individually and in his official**
**capacity, and**
**EDDY COUNTY BOARD OF**
**COMMISSIONERS,**

     **Defendants.**

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**
**BASED IN PART ON QUALIFIED IMMUNITY**

     COME NOW Defendants Mike Gallagher and Eddy County Board of Commissioners

(hereafter "County Defendants")**,** by and through their counsel, Law Office of Jonlyn M.

Martinez, LLC, and hereby submits their Reply to Plaintiff's Response to Defendants' Motion

for Summary Judgment as follows.

**BACKGROUND**

     In his Overview of Response, the Plaintiff claims that "Plaintiff's comment is the only

one to have been submitted and not read." *See Plaintiff's Response*, at p. 2 [Document No. 10].

This claim is not factually accurate. Prior to Defendant Gallagher's decision to do away with on-

line public comments, made on February 7, 2025, multiple public comment forms were not read

at County Commission meetings. *See Undisputed Material Facts*, at ¶ 6.

     The Plaintiff's Complaint makes the following claims:

13.  Until very recently, the Board solicited comments through a public webpage
on Eddy County's website and Eddy County's Facebook page, through which any
person could submit a comment to be read at the meeting.

1

Appellants' Appendix
0094

21. On March 3, 2025, Plaintiff noticed that someone from Eddy County had disabled the online system for submitting comments to be read at the Board meeting. I.e., despite what only two weeks ago was Defendants' professed preference for written comments submitted ahead of time, it seemed Defendants disabled this function after receiving Plaintiffs comment.

*Plaintiff's Complaint*, at ¶¶'s 13 and 21 [Document No. 1]. In addition, the Plaintiff posted the

following on his website:



*See Exhibit 1 to Affidavit of LaSella Walthall*, attached hereto as Exhibit C. Thus, the Plaintiff

was aware that the link the County previously posted for public comments on Facebook had been

removed prior to the Commission Meeting on March 4, 2025.

Plaintiff argues that the County Manager's edict to remove the public comment from the

County's website is not at issue. *See Plaintiff's Response*, at p. 2 [Document No. 10]. However,

without any factual basis, the Plaintiff argues that the County Defendants engaged in viewpoint

discrimination and censorship. The Plaintiff argues that because he made this unsupported

inference, the Court is required to support it. However, to be worthy of support, inferences must

be based in definite, competent evidence cited by the parties and made part of the record at time

of completion of briefing on the Defendants' dispositive motion. In the present case, the Plaintiff

has no competent evidence to support his claim. As such, the Defendants' Motion for Summary

Judgment should be granted.

Appellants' Appendix
0095

**A.  Reply to Plaintiff's Response to Defendants' Undisputed Facts**.[1]

The Plaintiff only disputes the following Undisputed Material Facts:

12. On February 7, 2025, Andrew Medrano removed the link to the form titled "Public Comments for the Next Board of County Commissioners' Meeting" from the County Commission's webpage. *Id*., at ¶ 13.

In response to this Fact, the Plaintiff argues that although Mr. Medrano removed the link from the County Commission's webpage, he left it up elsewhere and thus, this did not constitute removal. The County has admitted that although the form had been removed from the County Commission's webpage a link to the form was still available through a pull down menu on the County website's "How Do I" drop down menu and through old Facebook posts. *Admitted Facts*, at ¶¶ 17 and 18. By February 26, 2025, the public comment form had been completely removed and no one could submit a public comment. *Id*., at ¶ 19. Thus, the public comment form was not available as it had previously been to members of the public as of February 7, 2025.

17.    Andrew Medrano reviewed the website and determined that although he had removed the link to this form from the Board of County Commissioners' webpage, the form was still available through a link on the County website's "How Do I" drop down menu. He was previously unaware that this form was available on a drop down menu. *Id*., at ¶ 17.

The Plaintiff has failed to create a material dispute of fact with regard to this Fact.

18.    A link to the form may also have been available through old Facebook posts. *Id*., at ¶ 18.

---

[1] Defendants' Undisputed Material Facts which are not disputed by the Plaintiff will be referred to herein as Admitted Facts. Defendants' Undisputed Material Facts to which the Plaintiff attempts to create a dispute will be referred to herein as Defendants' Undisputed Material Facts.

3

Appellants' Appendix
0096

The Plaintiff has failed to create a material dispute of fact with regard to this Fact. The Declaration of Jason Sanchez indicates that he submitted his public comment form through a link he found in an old Facebook post. *See Declaration of Jason Sanchez*, at ¶¶'s 4-8, [Document No. 10-1]. The Plaintiff's Declaration supports the facts contained in this Undisputed Fact.

20.     Mike Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to read a form submitted after February 7, 2025. *See Affidavit of Gallagher*, at ¶ 10, attached hereto as Exhibit B.

The Plaintiff has failed to create a material dispute of fact with regard to this Fact. The link to the public comment from was removed from the Board of County Commissioners' webpage on February 7, 2025, and all links to the public comment form were removed from the County's website as of February 26, 2025. Thus, the public comment form was not available as it had previously been to members of the public as of February 7, 2025.

**B. Reply to Objections to Defendants' summary judgment evidence**.

The Plaintiff states that Defendant Gallagher has no personal knowledge concerning whether the link was removed from the County Commission's webpage because a link remained on the Eddy County website. Plaintiff's refusal to understand the distinction between a link on the County Commission's webpage and a link available on a separate part of the Eddy County website appears contrived and does not preclude summary judgment.

**C. Response to Additional Undisputed Material Facts**

1.     The frequency of the Eddy County Commission Meetings is not relevant to a determination of this Motion and fails to create a dispute of material fact in this matter.

Appellants' Appendix
0097

2.      With respect to paragraph 2 of Plaintiff's Additional Undisputed Material Facts (hereafter "Plaintiff's Facts"), Andrew Medrano's Affidavit explains that the public comment forms were made available as a result of COVID and the public comment form itself indicates that it is being used in an effort to comply with public health orders. *See Affidavit of Andrew Medrano*, at ¶¶'s 4-5 [Document No. 6-1]. Due to the fact that public health order related to social distancing had been rescinded, Mr. Gallagher determined that on-line public comment forms were no longer needed. *Admitted Fact*, at ¶ 8. Thus, there was no longer a need for an online public comment form.

3.      With respect to paragraph 3 of Plaintiff's Facts, the County Defendants admit that public comments were read at the Eddy County Board of County Commission Meeting held on May 7, 2024.

4.      With respect to paragraph 4 of Plaintiff's Facts, the Defendants Motion acknowledges that online public comment forms were not read because they were directed to inactive email accounts. *Admitted Fact*, at ¶¶'s 5-6.

5.      With respect to paragraph 5 of Plaintiff's Facts, the Defendants admit  the last public comment form read at the Eddy County Commission Meeting of February 18, 2025, was submitted on February 5, 2025. *Admitted Fact*, at ¶ 15.

6-10. With respect to paragraphs 6 to 10 of Plaintiff's Facts, the Defendants admit that the County's old Facebook posts may have contained a link to the public comment form. *Undisputed Fact*, at ¶ 18.

11.- The allegations contained in paragraphs 11 of Plaintiff's Facts are contained in the Plaintiff's Complaint and do not create a material dispute of fact. *Plaintiff's Complaint*, at ¶ 19 [Document No. 1].

5

12. With respect to paragraph 12 of Plaintiff's Facts, the Defendants state that the contents of the Plaintiff's public comment form are irrelevant. Defendant Gallagher had already decided that the public comment forms were no longer needed and he instructed his staff to remove the public comment form from the County's website. *Admitted Facts*, at ¶¶ 's 8-9.

13. -14. With respect to paragraphs 13 and 14 of Plaintiff's Facts, the Defendants submit that the Plaintiff may have requested to receive an email copy of his form. However, this information is immaterial to the resolution of the Defendants' Motion for Summary Judgment.

15. The Defendants have stated that Eddy County staff completed the removal of the public comment form from the County's website on February 26, 2025. *Admitted Fact*, at ¶ 19. Therefore, the Defendant admits that if the Plaintiff attempted to locate the public comment form following that date, it was unavailable. However, this information is immaterial to the resolution of the Defendants' Motion for Summary Judgment.

16. The Defendants admit that the Plaintiff's public comment was not read at the March 4, 2025, Commission Meeting.

17. – 19. With respect to paragraphs 17 to 19 of Plaintiff's Facts, the Defendants state that information concerning other lawsuits brought by the Plaintiff are immaterial to this matter and Plaintiff's speculation concerning former Sheriff Cage does amount to facts which preclude summary judgment. Moreover, pursuant to footnote 22 of Plaintiff's Response, the lawsuit at issue was not filed until April 10, 2025. As such, the Defendants could have been aware of a lawsuit that had not been filed at the time of the March 4, 2025, Commission Meeting. Therefore, these baseless contentions are insufficient to rebut the Defendants' showing that they are entitled to summary judgment.

Appellants' Appendix
0099

20. With respect to paragraph 20 of Plaintiff's Additional Undisputed Material Facts, on February 7, 2025, Defendant Gallagher made a decision that the public comment forms would longer be needed and he directed his employees to remove the form from the County's website. *Admitted Fact,* at ¶¶'s 8-9. There is no requirement that the Defendants provide any notice that the County would no longer utilize the on-line public comment form. Further, this information is immaterial to the resolution of the Defendants' Motion for Summary Judgment.

21. With respect to paragraph 21 of Plaintiff's Additional Undisputed Material Facts, the Plaintiff has no evidence that, since February 7, 2025, public comment forms were read at Eddy County Commission Meetings. The Defendants have stated that the last public comment form was read at the Eddy County Commission Meeting of February 18, 2025, and was submitted on February 5, 2025. *Admitted Fact*, at ¶ 15.

## POINTS AND AUTHORITIES

The United States Supreme Court has stated that in the context of summary judgment under Rule 56, the court must review the record "taken as a whole." *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000), quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). In *Matsushita* the United States Supreme Court stated:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. See *DeLuca* v. *Atlantic Refining Co*., 176 F.2d 421, 423 (CA2 1949) (L. Hand, J.), *cert. denied*, 338 U.S. 943 (1950); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (1983); Clark, Special Problems in Drafting and Interpreting Procedural Codes and Rules, 3 Vand. L. Rev. 493, 504-505 (1950). Cf. *Sartor* v. *Arkansas Natural Gas Corp*., 321 U.S. 620, 627 (1944). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Fed. Rule Civ. Proc. 56(e) (emphasis added). See also Advisory Committee Note to 1963 Amendment of Fed. Rule Civ. Proc. 56(e), 28 U. S. C. App., p. 626 (purpose of summary judgment is to "pierce the pleadings and to assess the proof in order

7

to see whether there is a genuine need for trial"). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Cities Service, supra*, at 289

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87.

The Plaintiff cites *Tolan v. Cotton*, 572 U.S. 650, 657 (2014), for the proposition that in considering a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. However, while this Court may draw reasonable inferences, "such inferences must find support in definite, competent evidence cited by the parties and made part of the record at time of completion of briefing on the motion for summary judgment." *Stephens v. Geico Indem. Co.*, No. 1:04-cv-01168-MCA-RHS, 2006 U.S. Dist. LEXIS 115857, 2006 WL 8444161, at *3 (D.N.M. May 15, 2006) (citing *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256-57, 106 S. Ct. 2505 (1986); *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670-71 (10th Cir. 1998); *Mesnick v. Gen. Elec. Co*., 950 F.2d 816, 822 (1st Cir. 1991). The Court cannot manufacture grounds for denying a motion for summary judgment by piling inference upon inference without 'solid, fact-specific footings.'" *Quaker State Oil Refining Corp. v. Garrity Oil Co*., 884 F.2d 1510, 1516 (1st Cir. 1989); see *NLRB v. Meinholdt Mfg., Inc*., 451 F.2d 737, 738 (10th Cir. 1971), see also *Cousik v. City & Cty. of Denver*, Civil Action No. 22-cv-01213-NYW-KAS, 2024 U.S. Dist. LEXIS 36614, at *21 (D. Colo. Mar. 1, 2024). Further, when a Plaintiff verifies the conclusory allegations in Plaintiff's complaint, these allegations are of as little help in carrying her burden under Rule 56(e) as are conclusory arguments in her brief. *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671-72 (10th Cir. 1998), citing See Fed. R. Civ. P. 56(c), (e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986); *Thomas v. Wichita Coca-Cola Bottling Co*., 968 F.2d 1022, 1024 (10th Cir. 1992); *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988). The

Appellants' Appendix
0101

Plaintiff's Response merely reasserts the allegations contained in the Plaintiff's Complaint and contains no fact-specific footings. Therefore, summary judgment in this matter is appropriate.

**A. Defendant Gallagher did not censor Plaintiff's speech.**

Without any evidence to support his argument, the Plaintiff claims that Defendant Gallagher censored the Plaintiff's speech. The Plaintiff's argument that because a link remained available after Defendant Gallagher instructed his staff to remove the link to the public comment form is not evidence of content-based censorship. The decision to stop accepting public comment forms was made on February 7, 2025, eighteen days before the Plaintiff submitted his form. *Admitted Facts*, at ¶¶'s 8 and 9. The link to the form was removed from the County Commission's webpage on February 7, 2025, and the form was removed from the County's website completely on February 26, 2025. *Defendant's Undisputed Fact*, at ¶ 12 and *Admitted Fact,* at ¶ 19. Thus, there can be no argument that the decision to stop accepting on-line public comment forms had anything to do with the Plaintiff or the content of his speech.

Plaintiff argues that because multiple online public comment submissions were read on May 7, 2024, his online submission was the only online public comment that was not read. The Plaintiff has no facts to support this argument and it is contrary to the facts undisputed by the Plaintiff. *Admitted Fact*, at ¶ 6 (It appears that multiple public comment forms were not read at County Commission meetings as a result of this issue).

Next, the Plaintiff argues that because he was able to locate and submit the form, his form should have been read. The Plaintiff provides no authority in support of this argument. The decision not to use the online form had been made and partially implemented as of February 7, 2025. *Admitted Facts*, at ¶¶'s 8 and 9, and *Defendant's Undisputed Fact*, at ¶ 12. The link to the form was completely removed as of February 26, 2025, and was not contained in the County's

Appellants' Appendix
0102

Facebook post prior to the March 4, 2025, Commission Meeting. *Admitted Fact*, at ¶ 6, *and see Exhibit 2, attached to Exhibit C*, attached hereto. While the Plaintiff does not like the Defendants' decision, he has no evidence to support any content based censorship and no authority to support his argument in this regard.

Next, the Plaintiff argues that because Defendant Gallagher does not say the County changed policy to no longer read written comments at Board meetings his conduct was not a change in policy. Again, the Plaintiff cites no authority for this argument. As stated in the facts admitted by the Plaintiff, Mike Gallagher determined that an on-line public comment form was no longer needed and he instructed Eddy County staff to remove the public comment form from the County's website. *Admitted Facts*, at ¶¶'s 8 and 9. No public pronouncement was required.

## B. Defendant Gallagher is Entitled to Qualified Immunity

In support of his argument, the Plaintiff cites *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 115 S. Ct. 2510 (1995), for the proposition that the government may not regulate speech based on its substantive content or the message it conveys. Of course, this is a broad generalization and has nothing to do with the facts of this case. The question is whether the Plaintiff's rights were violated "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam) (quotation omitted). The Plaintiff failed to cite to a single case which establishes that Defendant Gallagher violated clearly established law. As such, Defendant Gallagher is entitled to qualified immunity.

## C. The Declaration Submitted Pursuant to Rule 56(d) is Insufficient.

A district court's ruling on a Rule 56(d) motion is reviewed for abuse of discretion. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015). However, the Court's discretion

Appellants' Appendix
0103

under Rule 56(d) is "further restricted when a summary judgment motion based on qualified immunity is at issue." *Lowrey v. Portis*, No. 23-372 JCH/JFR, 2024 U.S. Dist. LEXIS 103959, at *4 (D.N.M. June 11, 2024), quoting *Jones v. City and Cnty. of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988). In cases where qualified immunity is asserted, "there is a strong policy justification for staying discovery and for refusing requests for additional discovery." *Id.,* quoting *Martin v. City of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015). 740.  "When the summary judgment motion is based on qualified immunity, the non-movant's Rule 56(d) affidavit must also demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion." *Id.,* quoting *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (internal quotation marks and citation omitted). Thus, "the plaintiff bears the burden of demonstrating how such discovery will raise a genuine fact issue as to the defendants' qualified immunity claim." *Martin*, 626 F. App'x at 740 (alteration, internal quotation marks, and citation omitted).

Counsel's Declaration concerning the discovery will not establish that Defendant Gallagher's decision to stop using the public comment form on February 7, 2025, had anything to do with Plaintiff's First Amendment rights. The manner in which the public could submit these forms was materially curtailed as of February 7, 2025, and was completely terminated as of February 26, 2025. Thus, no discovery concerning this issue is required. As Plaintiff and his counsel had access to the May 7, 2024, Commission Meeting, the Plaintiff similarly has access to all County Commission meetings since March 4, 2025. Yet, the Plaintiff has failed to demonstrate that any written forms have been read since that date. Finally, the Plaintiff has failed to cite any case law that would establish his rights were violated if the County failed to announce an official change in policy concerning the reading of online public comment forms. Thus,

Appellants' Appendix
0104

because the Plaintiff has failed to demonstrate a connection between the information he would

seek in discovery and the validity of the defendant's qualified immunity assertion, his request for

discovery should be denied.

**D.  The Plaintiff's *Monell* Claim Fails.**

The Plaintiff argues that the Defendants' *Monell* arguments are circular. However,

Defendant Gallagher is entitled to qualified immunity, the Plaintiff's claims against Defendant

County fail as a matter of law. *City of L.A. v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573

(1986).

**E.  Plaintiff's Claims Brought Under the NMCRA Should Be Dismissed**.

The Defendants have demonstrated that they are entitled to summary judgment. When a

party seeks to have a provision of the state constitution interpreted differently than its federal

counterpart, that "party also must assert in the trial court that the state constitutional provision at

issue should be interpreted more expansively than the federal counterpart and provide reasons

for interpreting the state provision differently from the federal provision." *State v. Ochoa*, 2009-

NMCA-0002, ¶ 9, 146 N.M. 32, 37. The Plaintiff has failed in this regard. Therefore, the

Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted.

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

By: */s/ Jonlyn M. Martinez*
    JONLYN M. MARTINEZ
    *Attorney for County Defendants*
    P.O. Box 1805
    Albuquerque, NM 87103-1805
    jonlyn@jmartinezlaw.net

I hereby certify that a copy of the foregoing
was served via CM/ECF on
April 29, 2025, to all counsel of record:
_____/s/_____

Appellants' Appendix
0105

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

     **Plaintiff,**

**vs.**                                                                 **Case No.: 2:25-cv-00226-KRS-GJF**

**MIKE GALLAGHER,**
**individually and in his official**
**capacity, and**
**EDDY COUNTY BOARD OF**
**COMMISSIONERS,**

     **Defendants.**

## AFFIDAVIT OF LASELLA WALTHALL

STATE OF NEW MEXICO       )
                                )SS.
COUNTY OF BERNALILLO    )

     1.     My name is LaSella Walthall, and I am over 18 and I am the paralegal for the

Law Office of Jonlyn M. Martinez, LLC.

     2.     I discovered a Facebook page called Eddy County Exposed which is operated by

the Plaintiff, Jason Sanchez.

     3.     I determined that the Facebook page called Eddy County Exposed was operated

by Jason Sanchez when I found images and videos of Jason Sanchez and posts concerning this

and other litigation involving Jason Sanchez.

     4.     Screenshots of the materials identifying Jason Sanchez as the creator of the

Facebook page called Eddy County Exposed are attached hereto as Exhibit 1.

     5.     I took a screenshot of a post I located on the Facebook page called Eddy County

Exposed that was made on March 3, 2025, concerning making a public comment at an Eddy

County Board of County Commission Meeting. *See post of March 3, 2025,* attached hereto as

Exhibit 2.



FURTHER AFFIANT SAYETH NOT

LASELLA WALTHALL

SUBSCRIBED AND SWORN TO before me on April 29, 2025.

Notary Public

My Commission Expires:

10/ 9 /2028



I will be live streaming my adventure into Las Cruces, NM for the Sanchez v Helton settlement conference alongside my civil right attorneys. Think twice before attempting to kidnap me again!

Eddy County Exposed
April 22 at 9:07 PM · ⚙

3 comments

👍 Like     💬 Comment     ↪ Share

View more comments

Al Martinez Flo
What does this case cover?

6d   Like   Reply

Author
Eddy County Exposed
**Lea County Sheriff's Office** censoring/blocked this page for airing out Undersheriff Walker's DWI Cover during the election.



Eddy County Exposed
April 3 at 10:31 PM · ⚙

5/20/25 See you there! I'll never surrender! **Lea County Sheriff's Office**

5/20/2025

Sprite 2025. Sanchez V Hill for those who want to be in

EXHIBIT 1



I was trying to renew comments that I sent a couple of days ago today to ensure they are tomorrow. Anyone know why Eddy County didn't post the comment link in their Facebook post for tomorrow meeting and when you click on the comment link for a previous meeting says page not found... Well I hope they read the ones I sent then./

EXHIBIT 2                Appellants' Appendix
0109

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

     **Plaintiff,**

**vs.**                                  **Case No.: 2:25-cv-00226-MIS-GJF**

**MIKE GALLAGHER,**
**individually and in his official**
**capacity, and**
**EDDY COUNTY BOARD OF**
**COMMISSIONERS,**

     **Defendants.**

### DEFENDANTS' NOTICE OF COMPLETION OF BRIEFING

COME NOW Defendants, by and through their counsel of record, the Law Office of

Jonlyn Martinez, LLC., and hereby give notice that briefing has been completed concerning

Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity, [Doc No. 6],

filed April 2, 2025, and is ready for decision on the following:

1.     Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity [Doc. No. 6], filed April 2, 2025;

2.     Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. No. 10], filed on April 16, 2025; and

3.     Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. No. 13], filed on April 29, 2025.

Therefore, briefing concerning the Defendants' Motion for Summary Judgment Based in Part

on Qualified Immunity, [Doc. No. 6] is complete, and this matter is ready for decision.

Appellants' Appendix
0110

Respectfully submitted:

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

*Filed electronically*
By: */s/   Jonlyn M. Martinez*
  JONLYN M. MARTINEZ
  Attorney for the County Defendants
  P.O. Box 1805
  Albuquerque, NM 87103-1805
  (505) 247-9488

I hereby certify that a copy of the foregoing
was sent via CM/ECF to all counsel
of record on April 30, 2025:


*/s/ Jonlyn Martinez*
JONLYN MARTINEZ

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

     **Plaintiff,**

                             **Case No: 2:25-cv-00226-MIS-GJF**

**vs.**

**MIKE GALLAGHER,**
**individually and in his**
**official capacity, and**
**EDDY COUNTY BOARD**
**OF COMMISSIONERS,**

     **Defendants.**

## **UNOPPOSED MOTION FOR LEAVE TO FILE SUR-REPLY**

Plaintiff files this Unopposed Motion for Leave to File Sur-Reply in response to Defendants' Reply in Support of Defendants' Motion for Summary Judgment. The Reply is at Docket Entry No. 13; the initial Motion is at Docket Entry No. 6.

Defendants' Reply brief attaches new summary judgment evidence that was not included in Defendants' initial Motion. Pursuant to the Local Rules, Plaintiff respectfully requests that he be granted leave to file a Sur-Reply and address this new evidence.[1]

The proposed Sur-Reply is attached hereto.

Date: May 1, 2025

---

[1] *Pippin v. Burlington Res. Oil And Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) ("if the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials.") (internal quotations and citations omitted).

Respectfully submitted,


WALDO GUBERNICK
LAW ADVOCATES LLP

*/s/ Curtis Waldo*_____

Benjamin Gubernick
New Mexico Bar No. 145006
Ben@wglawllp.com
Curtis Waldo
New Mexico Bar No. 163604
curtis@wglawllp.com
346-394-8056
717 Texas St., Suite 1200
Houston, TX 77002


## CERTIFICATE OF SERVICE


I hereby certify that on May 1, 2025, I caused the foregoing document to be filed with the Court and served on counsel for all parties.


*/s/ Curtis Waldo*_____
Curtis Waldo

## CERTIFICATE OF CONFERENCE

I hereby certify that on May 1, 2025, I conferred with counsel for Defendants via email, and Defendants are unopposed to the relief sought herein.

*/s/ Curtis Waldo*_____
Curtis Waldo

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

     **Plaintiff,**

                             **Case No: 2:25-cv-00226-MIS-GJF**

**vs.**

**MIKE GALLAGHER,**
**individually and in his**
**official capacity, and**
**EDDY COUNTY BOARD**
**OF COMMISSIONERS,**

     **Defendants.**

### SUR-REPLY IN FURTHER RESPONSE TO
### <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff files this Sur-Reply in Further Response to Defendants' Motion for Summary Judgment. This Sur-Reply does not seek to address all of Defendants' (incorrect) arguments from their Reply (Dkt. #13) and will instead address only new arguments and evidence inappropriately raised by Defendants for the first time in their Reply.

**A.      Objection to late-filed evidence.**

With their Reply brief, Defendants filed a new affidavit attaching three screenshots from Facebook.[1] It is unclear why Defendants attach this new evidence when it does not seem to help their argument, but out of caution, Plaintiff objects to the late inclusion of these exhibits. The screenshots all pre-date Defendants' Motion for Summary Judgment, and they could have been included with the initial Motion. To the extent the Court believes the screenshots help Defendants' argument, Plaintiff has been prejudiced and therefore seeks their exclusion.

---

[1] Dkt. #13-1.

**B.      Defendants' late-filed evidence does not support their argument and in fact helps Plaintiff.**

Defendants cite their late-filed evidence for the proposition that, as of March 3, 2025, "Plaintiff was aware that the link the County previously posted for public comments on Facebook had been removed prior to the Commission Meeting on March 4, 2025." Reply at 2. But this proposition is completely consistent with Plaintiff's Complaint, his summary judgment response, and his Declaration. *I.e.*, Plaintiff submitted his comment on February 25; Defendants saw the comment on February 26 and decided they did not want to read that comment due to the viewpoint expressed therein; and also on February 26, Defendants decided to (actually) take down the form by which people may submit comments, which Plaintiff realized Defendants did on March 3.

Defendants also cite the new evidence for the proposition that the "link to the form was completely removed as of February 26, 2025, and was not contained in the County's Facebook post prior to the March 4, 2025, Commission Meeting." Reply at 10. Again, this is consistent with Plaintiff's Complaint, his response, and his Declaration, and it is consistent with the very reasonable inference that Gallagher did not read Plaintiff's comment because of the comment's viewpoint.

***

Ultimately, nothing in Defendants' Reply changes the facts that (1) Plaintiff submitted a comment to be read at a Board meeting, through a form available on Defendants' website, (2) the comment was critical of Eddy County law enforcement; (3) Defendants were aware of Plaintiff's comment; and (4) Defendants opted not to read Plaintiff's comment at the March 4, 2025 Board meeting. A reasonable inference from the summary judgment record is that Gallagher elected not to read the comment due to his disagreement with the viewpoint expressed by Plaintiff. Gallagher's credibility in this regard is an issue for the jury, not for summary judgment. Even if

Defendants' late-filed documents are considered, Defendants have failed to provide any evidence of a policy against reading written, submitted comments at Eddy County Board meetings.

　　　For these reasons and those in Plaintiff's Response, Defendants' Motion should be denied.


Date:  May 1, 2025


　　　　　　　　　　　Respectfully submitted,



　　　　　　　　　　　WALDO GUBERNICK
　　　　　　　　　　　LAW ADVOCATES LLP

　　　　　　　　　　　*/s/ Curtis Waldo*_____
　　　　　　　　　　　Benjamin Gubernick
　　　　　　　　　　　 New Mexico Bar No. 145006
　　　　　　　　　　　Ben@wglawllp.com
　　　　　　　　　　　 Curtis Waldo
　　　　　　　　　　　 New Mexico Bar No. 163604
　　　　　　　　　　　 curtis@wglawllp.com
　　　　　　　　　　　346-394-8056
　　　　　　　　　　　717 Texas St., Suite 1200
　　　　　　　　　　　Houston, TX 77002


## <u>CERTIFICATE OF SERVICE</u>


　　　I hereby certify that on May 1, 2025, I caused the foregoing document to be filed with the Court and served on counsel for all parties.


　　　　　　　　　　　　 */s/ Curtis Waldo*_____
　　　　　　　　　　　　Curtis Waldo

 Outlook

Activity in Case 2:25-cv-00226-MIS-GJF Sanchez v. Gallagher et al Order on Motion for Leave to File

**From** cmecfbb@nmd.uscourts.gov <cmecfbb@nmd.uscourts.gov>
**Date** Mon 05/05/2025 09:47
**To** cmecfto@nmcourt.uscourts.gov <cmecfto@nmcourt.uscourts.gov>

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### United States District Court - District of New Mexico

### Notice of Electronic Filing

The following transaction was entered on 5/5/2025 at 9:47 AM MDT and filed on 5/5/2025
**Case Name:**          Sanchez v. Gallagher et al
**Case Number:**      2:25-cv-00226-MIS-GJF
**Filer:**
**Document Number:** 16(No document attached)

**Docket Text:**
**ORDER by District Judge Margaret I. Strickland GRANTING [15] Unopposed Motion for Leave to File Sur-Reply.**

**[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (jsq)**

**2:25-cv-00226-MIS-GJF Notice has been electronically mailed to:**

Jonlyn M Martinez jonlyn@jmartinezlaw.net, admin@jmartinezlaw.net, jmartinezlaw@comcast.net, jmartinezlawoffice@gmail.com, jonlyn.martinez@gmail.com

Benjamin Gubernick ben@wglawllp.com

Curtis Waldo curtis@wglawllp.com

**2:25-cv-00226-MIS-GJF Notice has been delivered by fax to:**

**2:25-cv-00226-MIS-GJF Notice has been delivered by USPS to:**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JASON SANCHEZ

      Plaintiff,

                                         **Case No: 2:25-cv-00226-MIS-GJF**

vs.

MIKE GALLAGHER,
individually and in his
official capacity, and
EDDY COUNTY BOARD
OF COMMISSIONERS,

      Defendants.

## SUR-REPLY IN FURTHER RESPONSE TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff files this Sur-Reply in Further Response to Defendants' Motion for Summary Judgment. This Sur-Reply does not seek to address all of Defendants' (incorrect) arguments from their Reply (Dkt. #13) and will instead address only new arguments and evidence inappropriately raised by Defendants for the first time in their Reply.

**A.**      **Objection to late-filed evidence.**

With their Reply brief, Defendants filed a new affidavit attaching three screenshots from Facebook.[1] It is unclear why Defendants attach this new evidence when it does not seem to help their argument, but out of caution, Plaintiff objects to the late inclusion of these exhibits. The screenshots all pre-date Defendants' Motion for Summary Judgment, and they could have been included with the initial Motion. To the extent the Court believes the screenshots help Defendants' argument, Plaintiff has been prejudiced and therefore seeks their exclusion.

---

[1] Dkt. #13-1.

**B.    Defendants' late-filed evidence does not support their argument and in fact helps Plaintiff.**

Defendants cite their late-filed evidence for the proposition that, as of March 3, 2025, "Plaintiff was aware that the link the County previously posted for public comments on Facebook had been removed prior to the Commission Meeting on March 4, 2025."  Reply at 2.  But this proposition is completely consistent with Plaintiff's Complaint, his summary judgment response, and his Declaration.  *I.e.*, Plaintiff submitted his comment on February 25; Defendants saw the comment on February 26 and decided they did not want to read that comment due to the viewpoint expressed therein; and also on February 26, Defendants decided to (actually) take down the form by which people may submit comments, which Plaintiff realized Defendants did on March 3.

Defendants also cite the new evidence for the proposition that the "link to the form was completely removed as of February 26, 2025, and was not contained in the County's Facebook post prior to the March 4, 2025, Commission Meeting."  Reply at 10.  Again, this is consistent with Plaintiff's Complaint, his response, and his Declaration, and it is consistent with the very reasonable inference that Gallagher did not read Plaintiff's comment because of the comment's viewpoint.

\*\*\*

Ultimately, nothing in Defendants' Reply changes the facts that (1) Plaintiff submitted a comment to be read at a Board meeting, through a form available on Defendants' website, (2) the comment was critical of Eddy County law enforcement; (3) Defendants were aware of Plaintiff's comment; and (4) Defendants opted not to read Plaintiff's comment at the March 4, 2025 Board meeting.  A reasonable inference from the summary judgment record is that Gallagher elected not to read the comment due to his disagreement with the viewpoint expressed by Plaintiff.  Gallagher's credibility in this regard is an issue for the jury, not for summary judgment.  Even if

Defendants' late-filed documents are considered, Defendants have failed to provide any evidence of a policy against reading written, submitted comments at Eddy County Board meetings.

For these reasons and those in Plaintiff's Response, Defendants' Motion should be denied.

Date:  May 5, 2025

Respectfully submitted,

WALDO GUBERNICK
LAW ADVOCATES LLP

*/s/ Curtis Waldo*_____

Benjamin Gubernick
 New Mexico Bar No. 145006
Ben@wglawllp.com
 Curtis Waldo
 New Mexico Bar No. 163604
 curtis@wglawllp.com
346-394-8056
717 Texas St., Suite 1200
Houston, TX 77002

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2025, I caused the foregoing document to be filed with the Court and served on counsel for all parties.

*/s/ Curtis Waldo*_____

Curtis Waldo

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JASON SANCHEZ,

      Plaintiff,

v.

                                         Case No. 2:25-cv-00226-MIS-GJF

MIKE GALLAGHER, individually
and in his official capacity, and
EDDY COUNTY BOARD OF
COMMISSIONERS,

      Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED IN PART ON QUALIFIED IMMUNITY

**THIS MATTER** is before the Court on Defendants Mike Gallagher ("Gallagher") and Eddy County Board of Commissioners ("Board," and collectively, "Defendants")' Motion for Summary Judgment Based in Part on Qualified Immunity ("Motion"), ECF No. 6, filed April 2, 2025. Plaintiff Jason Sanchez ("Plaintiff") filed a Response on April 16, 2025 ("Response"), ECF No. 10, to which Defendants filed a Reply on April 29, 2025 ("Reply"), ECF No. 13. Plaintiff filed a Sur-Reply on May 5, 2025 ("Sur-Reply"). ECF No. 17. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion.

## I.    Introduction[1]

Plaintiff is currently a resident of Texas, but used to live in Eddy County, New Mexico. Compl. ¶ 1, ECF No. 1. Gallagher is the County Manager of Eddy County. Id. ¶ 2. As County Manager, Gallagher oversees day-to-day operations and all of Eddy County's government

---

[1] Unless otherwise indicated, the information contained in this section is gleaned from the Complaint and is included solely to frame the issues raised by Defendants.

departments.  Id.  Gallagher attends the Board's meetings that take place once every two weeks and is the ultimate decisionmaker as to which comments from the public are heard at Board meetings.  Id.

With the exception of certain matters that are discussed in private during Executive Session—like litigation or employment negotiations—Board meetings are open to the public.  Id. ¶ 10.  The public may attend the meetings in person or watch them online.  Id.  At the beginning of each Board meeting members of the public may speak to the Board, for up to three minutes each, about matters of public concern.  Id. ¶ 11.

Until recently, the Board solicited comments through a portal available on Eddy County's website and Facebook page, through which anybody could submit a comment to be read at a Board meeting.  Id. ¶ 13.  The website portal specifically noted that written comments were preferable to in-person comments.  Id. ¶ 14.  Customarily, Gallagher (or someone else) would read the written comments at the beginning of the Board meeting.  Id. ¶ 16.

On February 25, 2025, Plaintiff submitted a written comment ("Comment") through the portal to be read at the next Board meeting, which was scheduled for March 4, 2025.  Id. ¶ 17.  Plaintiff's Comment concerned public corruption at the Eddy County Sheriff's Office ("ECSO")—specifically, Plaintiff questioned the integrity of certain ECSO employees, including Sheriff Matthew Hutchinson and Undersheriff Mark Cage.  Id. ¶ 18.  If read aloud, Plaintiff's comment would have been less than three minutes long; it did not contain profanity, promote his personal business interests, or encourage violence.  Id. ¶ 19.

On March 3, 2025, Plaintiff noticed that the County had disabled the online system for submitting comments to be read at Board meetings.  Id. ¶ 21.  Plaintiff alleges that the decision to

Appellants' Appendix
0123

disable the online submission of comments was made either by Gallagher or by someone acting with authority granted by Gallagher.  Id. ¶ 22.

The March 4, 2025 Board meeting lasted approximately three hours.  Id. ¶ 23.  Despite being properly submitted through the portal, no part of Plaintiff's Comment was read during the meeting.  Id. ¶ 24.  Plaintiff alleges that Gallagher and others decided not to read Plaintiff's Comment because they wanted to protect Matthew Hutchinson, Mark Cage, and others in the ECSO from criticism or embarrassment.  Id. ¶ 26.  Plaintiff also believes that Defendants removed the online comment submission process because they knew Plaintiff lived in Texas, knew that it would be difficult for him to attend Board meetings in person, and wanted to prevent Plaintiff from being able to voice his concerns about public corruption in Eddy County.  Id. ¶ 27.

On March 5, 2025, Plaintiff filed this lawsuit against Gallagher and the Board alleging viewpoint discrimination in violation of the New Mexico and United States Constitutions.  See id. ¶¶ 28-47.  Count I of the Complaint asserts a claim against the Board under the New Mexico Civil Rights Act ("NMCRA"), N.M. Stat. Ann. § 41-4A-3, for violations of Plaintiff's free speech rights under Article II, Section 17 of the New Mexico Constitution.  Id. ¶¶ 30-41.  Count II asserts a claim against the Board and Gallagher under 42 U.S.C. § 1983 for violations of Plaintiff's free speech rights under the First Amendment to the U.S. Constitution.  Id. ¶¶ 42-47.  On March 31, 2025, Defendants filed an Answer to the Complaint.  ECF No. 4.

On April 2, 2025—before the commencement of discovery—Defendants filed the instant Motion for Summary Judgment.  ECF No. 6.  Plaintiff filed a Response, ECF No. 10, to which Defendants filed a Reply, ECF No. 13.  Plaintiff subsequently filed a Sur-Reply.  ECF No. 17.

Appellants' Appendix
0124

## II.    Legal Standards

### a.    Rule 56

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the nonmovant is required to point the court to record evidence of facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  Id. at 248.  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment.  See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988).  Rather, the nonmovant must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment."  Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not the court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment.  See Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012), abrogated on other grounds by Muldrow v. City of St. Louis, 601 U.S. 346, 355

Appellants' Appendix
0125

(2024).  Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999); see also Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005).  However, summary judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative."  Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted).

### b.     Qualified immunity

The doctrine of qualified immunity protects government officials sued in their individual capacity from liability for monetary damages unless their actions violate a "clearly established" statutory or constitutional right.  City of Escondido v. Emmons, 586 U.S. 38, 42 (2019) (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018)).  A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he [or she] was violating it." Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014).

"A plaintiff can demonstrate that a constitutional right is clearly established 'by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.'" Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006)).  "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority."  District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (internal citations and quotation marks omitted).  Although the plaintiff is not required to identify a case "perfectly on-point[,]" Quinn v. Young, 780 F.3d 998, 1005 (10th Cir. 2015), "existing precedent must have placed the statutory or constitutional question beyond debate."  Kisela, 584 U.S. at 104 (quoting White v. Pauly, 580 U.S. 73, 79 (2017)).  Clearly

established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case. Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987). But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Quinn, 780 F.3d at 1005 (quoting Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007)). The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law. See Creighton, 483 U.S. at 640.

When a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established." Kapinski v. City of Albuquerque, 964 F.3d 900, 905 (10th Cir. 2020) (quoting Koch v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011)). The court may address these two inquiries in any order. Pearson v. Callahan, 555 U.S. 223, 236 (2009); McCowan v. Morales, 945 F.3d 1276, 1282 (10th Cir. 2019). If the plaintiff fails to satisfy either part of the test, the court must grant qualified immunity. McCowan, 945 F.3d at 1282 (quoting Est. of Ceballos v. Husk, 919 F.3d 1204, 1212-13 (10th Cir. 2019)). If the plaintiff succeeds, then—and only then—does the defendant bear the traditional burden of the movant for summary judgment. Kapinski, 964 F.3d at 905 (quoting Koch, 660 F.3d at 1238).

Appellants' Appendix
0127

### III.    Facts[2]

As a result of the COVID-19 pandemic, on or about April 9, 2020, Eddy County created a public comment form that was made available through a link on the Board's webpage on the County's website and through a link posted on Facebook.  Defs.' Facts ¶ 1.  The public comment form stated:

> In an effort to comply with public health orders, the number of persons attending the Eddy County Board of Commissioners meeting will be limited, but in person public comments are possible. The preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at the meeting. Please complete the online form below to submit your comments. Individuals wishing to make in person Public Comments need to be in good health and follow recommended practices.

Id. ¶ 2.

In January 2025, Gallagher became Eddy County's new County Manager.  Id. ¶ 7.  Because the public health orders related to social distancing under COVID had been rescinded, Gallagher determined that an on-line public comment form was no longer needed.  Id. ¶ 8.  Thus, on February 7, 2025, Gallagher instructed Eddy County staff to remove the public comment form from the County's website.  Id. ¶ 9.  The same day, Andrew Medrano removed the link to the public comment form from the Board's webpage; however, the form was still available through a link on the County's "How Do I" drop down menu, which Medrano had no knowledge of.  See id. ¶¶ 12,

---

[2]    The following facts are gleaned from Defendants' Statement of Undisputed Material Facts, which is incorporated into their Motion, ("Defs.' Facts"), ECF No. 6 at 2-5; Plaintiff's Response to Defendants' Facts ("Pl.'s Resp. Facts"), ECF No. 10 at 3-4; Plaintiff's Additional Undisputed Material Facts ("Pl.'s Add'l Facts"), id. at 5-7; Defendants' Reply to Plaintiff's Response to Defendants' Facts ("Defs.' Reply Facts"), ECF No. 13 at 3-4; and Defendants' Response to Plaintiff's Additional Facts ("Defs.' Resp. to Pl.'s Add'l Facts"), id. at 4-7.  All facts are undisputed unless otherwise noted.  To the extent that certain facts are omitted from this section, the Court deems those facts to be immaterial to its disposition.

17; Pl.'s Resp. Facts ¶¶ 12, 17; Aff. Andrew Medrano ("Medrano Aff.") ¶¶ 13, 17, ECF No. 6-1.[3]

A link to the form may also have been available through old Facebook posts.  Defs.' Facts ¶ 18.[4]

On February 25, 2025, Plaintiff accessed the public comment form on the Board's website

through a link on the Board's Facebook page and submitted a public comment to be read at the

next meeting, which was scheduled for March 4, 2025.  Pl.'s Add'l Facts ¶¶ 6-10.  In his Comment,

Plaintiff expressed concern about abuse of power by Eddy County law enforcement after he was

wrongfully convicted of a crime, id. ¶ 12; the Comment states that he was later "exonerated" of

wrongdoing, see Comment, ECF No. 10-1 at 6.  The Comment contained no profanity and would

have taken less than three minutes to read out loud in its entirety.  Pl.'s Add'l Facts ¶ 11, ECF No.

10.  Shortly after submitting his Comment, Plaintiff received an email notification from Eddy

County which contained the same language as the public comment form; specifically:

> In an effort to comply with public health orders, the number of persons attending
> the Eddy County Board of Commissioners meeting will be limited, but in person
> public comments are possible. The preference is for written public comments, that
> are received by 5:00 PM on the day prior to the meeting, which will be read at the
> meeting. Please complete the online form below to submit your comments.
> Individuals wishing to make in person Public Comments need to be in good health
> and follow recommended practices.

Id. ¶¶ 13-14 (quoting email from noreply@civicplus.com to Jason Sanchez (Feb. 25, 2025, 21:33

CST), ECF No. 10-1 at 5) (italics omitted).

---

[3]    Plaintiff purports to dispute that Medrano "removed" the link to the public comment form because
it was still available on the County's website.  See Pl.'s Resp. Facts ¶¶ 12, 17.  The Court deems it undisputed that
Medrano removed the link to the public comment form from the Board's webpage, even though it was still available
elsewhere on the County's website.

[4]    Plaintiff appears to dispute this fact on the grounds that a link to the form was available via the
Board's old Facebook posts.  See Pl.'s Resp. Facts ¶ 18.  In fact, Plaintiff avers that he accessed the public comment
form by clicking on a Facebook link.  See Decl. Jason Sanchez ("Sanchez Decl.") ¶¶ 4-8, ECF No. 10-1.  This
purported dispute is immaterial to the Court's disposition.

On February 26, 2025, Andrew Medrano completely removed the public comment form from the County's website; therefore, even if links to the form still exist, the form cannot be accessed.  Defs.' Facts ¶ 19.

On March 4, 2025, the Board held its scheduled meeting but did not read Plaintiff's Comment.  Pl.'s Add'l Facts ¶ 16.

The last public comment read at a Board meeting was submitted on February 5, 2025, and was read at the February 18, 2025 meeting.  Defs.' Facts ¶ 15.

Defendants assert that Gallagher "determined that because no links had been made available to the public to submit a public comment following February 7, 2025, it was not appropriate to read a form submitted after February 7, 2025."  Id. ¶ 20.  Plaintiff disputes this fact on the grounds that a link to the public comment form was still available after February 7, 2025, which is how he was able to submit a comment on February 25, 2025.  Pl.'s Resp. Facts ¶ 20.

There is no evidence that prior to February 25, 2025, Gallagher or the County enacted or announced any policy prohibiting written comments from being read at Board meetings.  Pl.'s Add'l Facts ¶ 20.  There is no evidence that since February 7, 2025, the County has declined to read any written public comment other than the one submitted by Plaintiff.  Id. ¶ 21.

## IV.    Discussion

Defendants initially argue that Plaintiff's claim under the NMCRA fails because Defendants "passed no law to restrain or abridge the Plaintiff's liberty of speech."  Mot. at 6.  Rather, Defendants "determined that the submission of online public comments was no longer needed, because the public health orders related to social distancing under COVID was [sic] no longer in place at County Commission meetings."  Id.  They argue that they attempted to remove

9

the ability to submit public comment forms from the County's website on February 7, 2025,[5] and "Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to read a form submitted after February 7, 2025." Id. Thus, they argue, Plaintiff cannot establish a violation of Article II, Section 17 of the New Mexico Constitution because "[t]he decision not to utilize public comment forms was made 18 days before the Plaintiff submitted his form." Id. Defendants further argue that Gallagher is entitled to qualified immunity as to the Section 1983 claim because

> [P]laintiff's First Amendment right to free speech was not violated by the Defendants. The Plaintiff had no right to have a comment read at the Eddy County Commission Meeting once it had been determined that Eddy County would no longer utilize public comments submitted online. The decision to stop accepting public comments submitted online applied to everyone, not just the Plaintiff. Thus, no decision was made with regard to the content of the Plaintiff's speech and the Plaintiff cannot establish the first prong of the qualified immunity analysis.

Id. at 9. Defendants also argue that Plaintiff cannot establish the second prong of the qualified immunity analysis because "[t]here is no Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, that places this constitutional question beyond debate. . . . Defendants were unable to locate any case law that determined that the enforcement of a decision to stop accepting public comment forms violates the Constitution." Id. Defendants further argue that Plaintiff's municipal liability claim under Monell v. Department of Social Services, 436 U.S. 658 (1978) fails because no First Amendment violation occurred. Id. at 10-11.

Plaintiff argues that Defendants' "content-neutral" explanation for not reading his Comment is undermined by the fact that the public comment form was still available on the

---

[5]        Defendants' Motion actually states: "On February 7, 2024, the Defendants attempted to remove the ability to submit public comment forms from the County's website." Mot. at 6, ECF No. 6 (emphasis added) (citing Defs.' Facts ¶¶ 10-12). However, the facts to which they cite state that they attempted to remove the public comment forms on February 7, 2025. See Defs.' Facts ¶¶ 10-12.

Appellants' Appendix
0131

County's website after February 7, 2025. Resp. at 9. He argues that the fact that Gallagher failed

to even investigate how Plaintiff was able to submit a comment when Gallagher had ordered the

online form to be disabled, and instead simply declined to read the Comment, "strongly suggests

that Gallagher declined to read the comment due to its content and not because of some issue of

fairness or propriety." Id. at 9-10 (citing Aff. Mike Gallagher ("Gallagher Aff.") ¶ 9, ECF No. 6-

2). Plaintiff argues that "Gallagher's argument boils down to, 'trust me[,]'" but there is ample

evidence from which a factfinder could conclude that Gallagher's content-neutral explanation is

pretextual. Id. at 10. Specifically:

> Gallagher could see Plaintiff's comment and knew it was critical of Eddy County
> law enforcement. As a fellow Eddy County employee, Gallagher had reason to
> protect the reputation of Eddy County law enforcement. If Plaintiff's comment had
> been complimentary of Gallagher or Eddy County law enforcement, can there be
> any doubt Gallagher would have read it? Gallagher knew a comment had been read
> at the February 18 Board meeting; Gallagher knew his IT department had failed to
> effectuate his request to disable public comments after February 7; and Gallagher
> knew the public could submit comments as late as February 25 and that the form to
> do so was still on the Eddy County website and Facebook page. From these facts,
> it is a perfectly natural inference to draw that Gallagher declined to read Plaintiff's
> comment because Gallagher disapproved of Plaintiff's viewpoint.

Id. at 10-11. Plaintiff argues that Defendants have submitted no evidence of a content-neutral

policy barring Plaintiff's comment from being read at the March 4, 2025 meeting. Id. at 11.

Rather, Gallagher's Affidavit states only that he ordered a staff member to remove the public

comment form from the County's website, not that the County changed its policy to no longer read

written comments at Board meetings. Id. As to qualified immunity, Plaintiff argues that where,

as here, a defendant files a motion for summary judgment before discovery, the court "must

determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated

clearly established law." Id. at 12 (first citing Crawford-El v. Britton, 523 U.S. 574, 598 (1998);

then citing Janny v. Gamez, 8 F.4th 883, 902 (10th Cir. 2021)). Plaintiff argues that when assuming

Appellants' Appendix
0132

the truth of his allegations and drawing all inferences in his favor, Gallagher engaged in viewpoint discrimination when he chose not to read Plaintiff's Comment.  Id.  He further argues that "[i]t is 'clearly established' that such viewpoint discrimination violates the First Amendment."  Id. (citing Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828 (1995)).  Plaintiff further argues that at a minimum Defendants' Motion raises material questions of fact on which Plaintiff requires additional discovery under Rule 56(d).  Id. at 13-14 (citing Decl. Curtis Waldo, ECF No. 10-2).  Plaintiff further argues that his Monell claim survives because Gallagher is a final policymaker who chose not to read Plaintiff's Comment based on Gallagher's own purported policy.  Id. at 15.  Finally, Plaintiff argues that genuine issues of material fact preclude summary judgment on his NMCRA claim because "it can be reasonably inferred that Defendants engaged in viewpoint discrimination against Plaintiff when they elected not to read his comment."  Id. at 16.

In their Reply, Defendants initially argue that although the Court must draw reasonable inferences in favor of the non-movant, those inferences must be based on record evidence.  ECF No. 13 at 8 (citations omitted).  They argue that Plaintiff has presented no evidence supporting his argument that Gallagher censored Plaintiff's speech, and the fact that a link to the public comment form remained available after Gallagher ordered it to be taken down is not evidence of content-based censorship.  Id. at 9.  Defendants maintain that the decision to not read comments submitted after February 7, 2025 was made eighteen days before Plaintiff submitted his Comment, and Plaintiff offers no authority supporting his argument that his Comment should have been read just because he was able to submit a comment after that date.  Id.  They further argue that Gallagher was not required to publicly announce his decision to stop reading electronically-submitted comments.  Id. at 10.  As to qualified immunity, Defendants argue that Plaintiff failed to cite any

12

authority establishing that Gallagher violated clearly established law.  Id.  In this regard, they argue that Plaintiff's citation to Rosenberger for the proposition that the government may not regulate speech based on its substantive content or the message it conveys is too broad of a principle to clearly establish the right Plaintiff is asserting.  Id. (citing Mullenix v. Luna, 577 U.S. 7, 12 (2015)).  Defendants further contend that the Court should not grant Plaintiff's request for discovery under Rule 56(d).  Id. at 10-11.  They argue that when a summary judgment motion is based upon qualified immunity "the non-movant's Rule 56(d) affidavit must also demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion."  Id. at 11 (quoting Lowrey v. Portis, Civ. No. 23-372 JCH/JFR, 2024 U.S. Dist. LEXIS 103959, at *4 (D.N.M. June 11, 2024)).  They argue that Plaintiff's "Counsel's Declaration concerning the discovery will not establish that Defendant Gallagher's decision to stop using the public comment form on February 7, 2025, had anything to do with Plaintiff's First Amendment rights."  Id.  And "Plaintiff has failed to cite any case law that would establish his rights were violated if the County failed to announce an official change in policy concerning the reading of online public comment forms."  Id.  Defendants further argue that the Monell claim fails because Gallagher is entitled to qualified immunity.  Id. (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).  Finally, Defendants argue that the NMCRA claim fails for the same reason that the Section 1983 claim fails.  Id. at 12.

### a.    Qualified immunity

Qualified immunity is the most logical starting point for the Court's discussion.  As previously stated, when a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and

(2) the constitutional right was clearly established." Kapinski, 964 F.3d at 905 (quoting Koch, 660 F.3d at 1238).

### 1.    Violation of constitutional right

The First Amendment to the United States Constitution commands that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "By incorporation through the Fourteenth Amendment, this prohibition applies to states and their political subdivisions." Brewer v. City of Albuquerque, 18 F.4th 1205, 1217 (10th Cir. 2021) (quotation marks and citation omitted). Furthermore, "the First Amendment applies not only to legislative enactments, but also to less formal governmental acts, including city policies . . . ." Id. (quotation marks and citation omitted). However, an individual's right to free speech is not absolute and "[e]ven protected speech is not equally permissible in all places and at all times." Snyder v. Phelps, 562 U.S. 443, 456 (2011) (quotation marks and citation omitted).

"Courts use a three-step framework for analyzing the constitutional protections afforded to free speech rights." Mesa v. White, 197 F.3d 1041, 1044 (10th Cir. 1999) (first citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797 (1985); then citing Summum v. Callaghan, 130 F.3d 906, 913 (10th Cir. 1997)). First, the Court determines whether the plaintiff's claim involves protected speech. Id. Second, the Court determines the type of forum the alleged First Amendment violation occurred in "because that determination defines in large part the extent to which a government may limit speech in that forum . . . ." Id. Third, the Court determines whether the defendant's justification for regulating the speech satisfies the requisite standard. Id. at 1045. Unfortunately, neither party identified, much less analyzed Plaintiff's claim under this standard.

14

## A.    Protected speech

First, the Court must determine whether Plaintiff's claim involves protected speech.  <u>See</u> <u>id.</u> at 1044.  "[T]he First Amendment's core purposes [are] to protect free and robust discussion of public affairs, hold government officials accountable, and check abuse of power."  <u>Irizarry v. Yehia</u>, 38 F.4th 1282, 1295 (10th Cir. 2022) (footnote omitted); <u>see also</u> <u>NAACP v. Claiborne Hardware</u> <u>Co.</u>, 458 U.S. 886, 913 (1982) (observing that the Supreme Court "has recognized that expression on public issues has always rested on the highest rung of the hierarchy of First Amendment values[,]" that "[s]peech concerning public affairs is more than self-expression; it is the essence of self-government[,]" and that "[t]here is a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open" (internal quotation marks and citations omitted)).  Here, Plaintiff's Comment states, in its entirety:

> In 2018 my freedom was taken away and it destroyed the parent-child relationship I had with my 2.5 year old son to satisfy the egos of your public officials in Eddy County. I was later exonerated of any wrong doing despite having made this Commission aware of the unethical behavior of Jared Rostro and the ECSO Leadership. No has been held accountable for the crimes committed against me that destroyed the parent-child relation between me and my son.

> I'm not going to sit here and tell you i was the perfect co-parent when I wasn't. Sharing a child can be the most difficult thing when parents cannot get along and go tit for tat yall all knew the charges were false including this commission.

> I am demanding the resignation and/or prosecution of Eddy County Sheriff Matthew Hutchinson, Undersheriff Mark Cage, Capt Eric Threlkeld, and Sgt Jared Rostro for their participation in my frivolous prosecution.

> How many times is Eddy County Sheriff going to allow Rostro to abuse his kids?

> How many times is Eddy County Sheriff going allow Rostro to stalk his ex or harass her despite having a DV Expert?

> How many more people are going to be victimize by Rostro because the Leadership at Eddy County Sheriff is complicit in his unethical behavior?

How many times is Eddy County Sheriff going to allow Threlkeld to testify false in DV hearings?

How many more good LEO must lose their lively hood because the Eddy County Sheriff has to protect Jared Rostro for some reason?

How many times is Eddy County Sheriff Leadership going to allow Rostro and their actions destroy the Eddy County Sheriff's Office Institution?

How many more times is Eddy County Sheriff and Eddy County going to allow Mark Cage to lie on financial disclosures for personal gain?

How more times is President of Affirming Heart Victim Services Amy Dugas going to let Jared Rostro victimize his children and ex wife?

Thank you for time and the public awakes your response to this troubling matter.

Sir Eddy County Exposed

ECF No. 10-1 at 6-7. The Court finds that Plaintiff's Comment, which alleges corruption, impropriety, and malfeasance at the Eddy County Sheriff's Office, falls within the First Amendment's protections. See Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007) (stating that the plaintiff "was engaged in constitutionally protected activity when he alleged government corruption during the public comments portion of the city council meetings"); cf. Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988) (stating that "[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import" for purposes of determining whether a public employee's speech warrants First Amendment protection).

## B.    Type of forum

Next, the Court must determine what type of forum the public comment portion of the Board meeting is, "because that determination defines in large part the extent to which a

Appellants' Appendix
0137

government may limit speech in that forum and establishes the standard for judicial review[.]"

Mesa, 197 F.3d at 1044.

> The [Supreme] Court has identified three types of speech fora: the traditional public forum, the designated public forum, and the nonpublic forum. Traditional public fora are places that by long tradition have been open to public assembly and debate. In these traditional public fora, the government's right to limit expressive activity is sharply circumscribed. A designated public forum is public property, not constituting a traditional public forum, which the government has intentionally opened to the public for expressive activity. The government is not required to retain the open character of the property indefinitely, but as long as it does so, it is bound by the same standards as apply in a traditional public forum. If the property is not a traditional public forum and it has not been designated as a public forum, it is a nonpublic forum. Access to a nonpublic forum be restricted as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view.

Verlo v. Martinez, 820 F.3d 1113, 1129 (10th Cir. 2016) (internal quotation marks, citations, and alterations omitted). "[T]he Supreme Court has also recognized that the government can create a 'limited public forum' by allowing 'selective access to some speakers or some types of speech in a nonpublic forum,' while not opening 'the property sufficiently to become a designated public forum.'" Id. at 1129 n.6 (quoting Callaghan, 130 F.3d at 946).

The Tenth Circuit has observed that, under its own precedent, "it is not entirely clear whether" the analogous scenario of a city council meeting should be treated as a "designated public forum" or a "limited public forum." Shero, 510 F.3d at 1202. However, in Griffin v. Bryant, United States District Judge James O. Browning concluded that governing body meetings in the Village of Ruidoso, New Mexico—"and the public input portions in particular"—are limited public forums. 30 F. Supp. 3d 1139, 1178 (D.N.M. 2014). Relying on the Tenth Circuit's analysis in Summum v. City of Ogden, 297 F.3d 995, 1002 (10th Cir. 2002), the Griffin court reasoned:

> Neither the Governing Body meeting as a whole nor the public comment portion constitutes an "intentional opening [of] a nontraditional public forum," Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. at 802, 105 S.Ct. 3439, that

17

"voluntarily transforms" it "into a traditional public forum," Summum v. City of Ogden, 297 F.3d at 1002. The core pursuit of Governing Body meetings is to make decisions and conduct business on behalf of the municipality. To assist itself in this core pursuit, the Governing Body has chosen to open its meetings to limited public comment so that it can be informed of its constituents' opinions, and, with this information, be better situated to make decisions that are more democratic, and, sometimes, more competent. That having been said, to serve their purpose, Governing Body meetings do not strictly require public input or participation by anyone outside of the Governing Body itself. Although New Mexico state law requires the Governing Body to open its meetings to the public, neither state law nor the Constitution requires it to let the public speak. N.M. Stat. Ann. § 10–15–1.

The Governing Body has transformed what would otherwise be a non-forum into some level of speech forum through its Resolutions, which provide, among other things, for a public input period. The provisions in the Resolutions do not, however, intentionally "bestow[ ] all the free speech rights associated with the traditional public forum, albeit on a potentially temporary basis." Summum v. City of Ogden, 297 F.3d at 1002. The meeting as a whole cannot be a designated forum; designated forums are open to all speech and are subject-neutral, meaning that the government cannot restrict the topics on which individuals speak. The entire structure of the Governing Body meetings restricts subject matter, partitioning different topics— "consent regular items," "planning and zoning," "operation business," "council policies," and "appointments," Village of Ruidoso Resolution 2012–16 at 3—into different segments of the meeting without allowance for overlap. It would be hard for a city council to conduct its business without a similar structure. Even if the public input portion is analyzed on its own, the Court cannot reasonably conclude that the Governing Body has intentionally elevated it to the level of a traditional public forum. The Governing Body has not left open a courtyard to public protest or opened a university classroom to all comers on a first-come-first-served basis. See Widmar v. Vincent, 454 U.S. 263, 265, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (Powell, J.)(holding that where a university "routinely provides University facilities for the meetings of registered organizations," it may not selectively disallow "use for purposes of religious worship or religious teaching" (internal quotation marks omitted)). The Governing Body has placed numerous reasonable restrictions on speakers: they must sign up in advance; they may not speak anonymously; they must provide their address; they must disclose in advance the topic about which they intend to speak; they must present in turn; they are limited to five minutes; they must each begin their speech with a thesis sentence describing their topic; they are subject to the authority of a moderator, and, if they violate the guidelines, then they are directed to cease speaking. See Village of Ruidoso Resolution 2012–16 at 4–5. Moreover, only "resident[s], property owner[s and] business owner[s] in the Village of Ruidoso" may speak in the public comment portion, which fits with the Tenth Circuit's description that "a 'limited public forum' . . . 'arises where the government allows selective access to some speakers or some types of speech.'"

18

<u>Shero v. City of Grove, Okla.</u>, 510 F.3d at 1202 (quoting <u>Summum v. City of Ogden</u>, 297 F.3d at 1002 n. 4).

Although a number of courts have followed the Tenth Circuit's lead in refraining from categorizing city council meetings one way or the other, the Court's conclusion comports with every United States Court of Appeals that has decided the issue: the Fourth, Fifth, Ninth, and Eleventh Circuits. <u>See</u> <u>Fairchild v. Liberty Independent Sch. Dist.</u>, 597 F.3d 747, 759 (5th Cir.2010) ("The Board meeting here—and the comment session in particular—is a limited public forum 'for the limited time and topic of the meeting.'" (footnote omitted)); <u>Steinberg v. Chesterfield Cnty. Planning Comm'n</u>, 527 F.3d 377, 385 (4th Cir.2008) ("In this case the parties agree that the Commission's public meeting was a 'limited public forum,' and we concur in that assessment."); <u>Rowe v. City of Cocoa, Fla.</u>, 358 F.3d 800, 803 (11th Cir.2004) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand."); <u>White v. City of Norwalk</u>, 900 F.2d 1421, 1425 (9th Cir.1990) ("[S]uch meetings, once opened, have been regarded as public forums, albeit limited ones." (citations omitted)). <u>See also</u> Terri Day & Erin Bradford, <u>Civility in Government Meetings: Balancing First Amendment, Reputational Interests, and Efficiency</u>, 10 First Amend. L.Rev. 57, 77–78 (2011)(footnotes omitted)("The First, Second, Third, Fifth, Sixth, Eighth, and Tenth Circuit Courts of Appeals have struggled with the distinction between a 'designated public forum' and a 'limited public forum,' and consequently, remain unclear how to categorize public comment sessions." (placing the Fifth Circuit in this category because, although it expressly found that public meetings are limited public forums, it applied an intermediate scrutiny standard closer to the one used for designated public forums)).

<u>Id.</u> at 1179-81 (footnote omitted). The evidence cited by Plaintiff reflects that the Board's meetings are similar in nature to the Village of Ruidoso's Governing Body meetings. Specifically, Plaintiff's counsel attaches to his Declaration the Minutes of the Board's May 7, 2024 meeting which reflects that the meeting began with public comments, limited to three minutes each, ECF No. 10-2 at 6-10, although it is unclear whether comments were limited to certain topics. The Board then went on to government affairs, approving the minutes from the previous Board meeting, an expense report, and purchase card report; considering a new courthouse, detention center, and administrative buildings; reviewing and discussing the County's budget; etc. <u>Id.</u> at 10-20. Plaintiff

Appellants' Appendix
0140

also cites the portion of the County's website that contains the agendas and minutes of prior meetings. See Resp. at 5 n.5 (citing https://www.co.eddy.nm.us/194/County-Commissioners).

The Court is persuaded by the analysis in Griffin and adopts it. And, considering the similarities between the Governing Body meetings at issue in Griffin and the Board's meetings in this case, the Court finds that the public comment portion of the Board's meetings are limited public forums for purposes of the First Amendment. However, the Court's ultimate conclusion does not depend on this finding: for reasons explained below, the Court finds that a genuine issue of material fact exists as to whether Plaintiff experienced viewpoint discrimination, and viewpoint discrimination violates the First Amendment in any forum. See Schmidt v. Siedel, 717 F. Supp. 3d 1147, 1158 (D. Wyo. 2023) (explaining that the court's "ultimate conclusion" as to whether the plaintiff showed a substantial likelihood of success on the merits of his First Amendment claim did "not hinge on" its finding that the restriction on speech occurred in a limited public forum because the plaintiff "experienced viewpoint discrimination, and viewpoint discrimination is not permissible in limited or designated public forums"); see also Callaghan, 130 F.3d at 917 ("[A]lthough content-based discrimination is permissible in a limited or nonpublic forum if it preserves the purpose of the forum, when the government moves beyond restricting the subject matter of speech and targets 'particular views taken by speakers on a subject,' such viewpoint discrimination is 'presumed impermissible.'" (quoting Rosenberger, 515 U.S. at 829-30)).

## C.  Justification for speech restriction

Finally, the Court must determine whether Gallagher's justification for regulating Plaintiff's speech satisfies the standard that applies to limited public forums. See Mesa, 197 F.3d at 1044. "In such a forum, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral." Pleasant Grove City v. Summum, 555 U.S. 460, 470 (2009)

Appellants' Appendix
0141

(citing <u>Good News Club v. Milford Cent. Sch.</u>, 533 U.S. 98, 106-07 (2001)).  "Viewpoint discrimination is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."  <u>Rosenberger</u>, 515 U.S. at 829.  To succeed on a viewpoint discrimination claim under Section 1983, a plaintiff must show that "the defendant acted with a viewpoint-discriminatory purpose."  <u>Pahls v. Thomas</u>, 718 F.3d 1210, 1230 (10th Cir. 2013) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009)).  This standard requires the plaintiff to show that (1) "the defendant's individual actions caused viewpoint discrimination to occur," and (2) "that those actions were taken <u>because of</u>, not merely in spite of, plaintiffs' . . . message."  <u>Id.</u> at 1230-31 (cleaned up).  If the plaintiff makes this showing, the government action is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests."  <u>Animal Legal Def. Fund v. Kelly</u>, 9 F.4th 1219, 1227 (10th Cir. 2021) (alteration in original) (quoting <u>Nat'l Inst. of Fam. & Life Advocs. v. Becerra</u>, 585 U.S. 755, 766 (2018)); <u>see also</u> <u>id.</u> at 1232 (concluding that the challenged statutory provisions were "viewpoint discriminatory" and, as such, were subject to strict scrutiny).

Here, Gallagher's explanation for not reading Plaintiff's Comment at the March 4, 2025 Board meeting is this: "Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to read a form submitted after February 7, 2025."  Defs.' Facts ¶ 20, ECF No. 6 (citing Gallagher Aff. ¶ 10, ECF No. 6-2); <u>see also</u> Mot. at 9, ECF No. 6.  Although this is a viewpoint-neutral justification for not reading Plaintiff's Comment, the Court finds that a reasonable jury could conclude that this explanation is pretext for viewpoint discrimination.

21

It is undisputed that on February 25, 2025, Plaintiff submitted his Comment using the online form available on the County's website, which he navigated to using a link on the Board's Facebook page. Pl.'s Add'l Facts ¶¶ 6-9, ECF No. 10. The Comment is critical of the ECSO, accuses Sgt. Jared Rostro of "unethical behavior[,]" accuses the ECSO of being "complicit in [Rostro's] unethical behavior[,]" and accuses Rostro and others within the ECSO of potentially illegal behavior, including malicious prosecution, child abuse, stalking, giving false testimony, and lying on financial disclosures for personal gain. ECF No. 10-1 at 6-7. The Comment also faults the Board for not holding Rostro or the ECSO Leadership "accountable for the crimes committed against" Plaintiff. Id. As such, one could reasonably infer that Gallagher—the County Manager—did not want to make Plaintiff's accusations public.

Although it is undisputed that Gallagher instructed Eddy County staff to remove the online public comment form from the County's website on February 7, 2025, Defs.' Facts ¶ 7, there is no evidence that Gallagher or the County enacted or announced a policy terminating the reading of written comments at Board meetings, Pl.'s Add'l Facts ¶ 20. Indeed, there is no evidence that anyone other than Gallagher knew that public comments would no longer be read at Board meetings.

Furthermore, the County read at least one public comment at the February 18, 2025 Board meeting, Defs.' Facts ¶ 15, which was the Board meeting immediately preceding the March 4, 2025 meeting, and exactly one week before Plaintiff submitted his Comment. See Pl.'s Add'l Facts ¶ 1 (stating that the Board "typically holds meetings every two weeks . . . ."). And until the March 4, 2025 meeting, the County had been reading public comments submitted through the online portal at Board meetings since on or about April 9, 2020—almost five years. See Defs.' Facts ¶ 1.

Appellants' Appendix
0143

Even though Plaintiff submitted his Comment after February 7, 2025, the notification email Plaintiff received upon submitting his Comment explicitly stated that "[t]he preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, <u>which will be read at the meeting</u>."  Email from noreply@civicplus.com to Jason Sanchez (Feb. 25, 2025, 21:33 CST), ECF No. 10-1 at 5 (emphasis added).  Plaintiff submitted his Comment seven days prior to the March 4, 2025 meeting, <u>see</u> Pl.'s Add'l Facts ¶ 16, and Gallagher does not dispute that he received Plaintiff's Comment, <u>see</u> Gallagher Aff. ¶ 9, ECF No. 6-2 (stating "I do not know how the Plaintiff was able to submit a public comment form following February 7, 2025").  However, Plaintiff's Comment was not read at the meeting.  <u>See id.</u> ¶ 10; Pl.'s Add'l Facts ¶ 16.

Viewing the evidence and drawing reasonable inferences in Plaintiff's favor, a reasonable jury could conclude that Gallagher refused to read Plaintiff's Comment at the March 4, 2025 Board meeting <u>because of</u> the viewpoints expressed therein.  Stated differently, a reasonable jury could conclude that Gallagher's viewpoint-neutral explanation for not reading Plaintiff's Comment at the March 4, 2025 Board meeting is pretext for viewpoint discrimination.  <u>See</u> <u>Mesa</u>, 197 F.3d at 1048 (reversing summary judgment in favor of county commissioners because, when viewing the evidence and drawing reasonable inferences in the plaintiff's favor, the commissioners' explanations for not permitting the plaintiff to make a public comment at a commission meeting were pretext for viewpoint discrimination); <u>Cornelius</u>, 473 U.S. at 811-13 (remanding for a determination as to whether the government's posited "facially neutral and valid justifications for exclusion" from a nonpublic forum were "in reality a facade for viewpoint-based discrimination"); <u>Callaghan</u>, 130 F.3d at 920 (reversing dismissal of First Amendment claim and remanding with instructions that the district court "carefully scrutinize the validity of the County's stated reasons for refusing access to the courthouse lawn to ensure that the County's justifications are not simply

post hoc rationalizations or a pretext for viewpoint discrimination" (quotation marks omitted));
MacQuigg v. Albuquerque Pub. Schs. Bd. of Educ., Civ. No. 12-1137 MCA/SCY, 2015 WL
13650030, at *7 (D.N.M. Feb. 6, 2015) (concluding that "a reasonable jury could find that the
justifications offered by Defendant for banning Plaintiff were pretexts masking viewpoint
discrimination, and that Defendant targeted Plaintiff precisely 'because of' Plaintiff's unwelcome
criticism of the Board's administration of APS and of Defendant, personally" (quoting Pahls, 718
F.3d at 1230)); S. Utah Drag Stars v. City of St. George, 677 F. Supp. 3d 1252, 1287 (D. Utah
2023) ("Last-minute policy changes that break from past practice also may support a finding of
pretext: where stated reasons for excluding protected speech are 'of such recent vintage . . . and
such a break with past traditions,' they may be pretexts for content or viewpoint discrimination."
(quoting Mesa, 197 F.3d at 1048)).

        Gallagher does not argue that declining to read Plaintiff's Comment at the March 4, 2025
Board meeting was narrowly tailored to serve a compelling government interest.  Consequently,
the Court finds that Plaintiff has established a genuine issue of material fact as to the first prong of
the qualified immunity analysis: whether Gallagher declined to read Plaintiff's Comment at the
March 4, 2025 meeting without constitutionally adequate justification.  See MacQuigg, 2015 WL
13650030, at *5 (finding that plaintiff established a genuine issue of material fact as to the first
prong of the qualified immunity analysis—"whether he was ejected from the November 4, 2009
[school board meeting] without constitutionally adequate justification"—because "there is a view
of the evidence by which a reasonable jury could find that both of the rationales expressly invoked
by Defendant as justification for ejecting Plaintiff lacked factual support").

Appellants' Appendix
0145

### 2.    Clearly established right

If Gallagher refused to read Plaintiff's Comment because of the viewpoints expressed therein, he violated Plaintiff's clearly established constitutional rights.  Specifically, in March of 2025, it was clearly established that "[a]ny government restriction on speech in a limited public forum must . . . be viewpoint neutral."  Shero, 510 F.3d at 1202 (citing Rosenberger, 515 U.S. at 829); see also Pleasant Grove City, 555 U.S. at 470 (same); Chiu v. Plano Indep. Sch. Dist., 260 F.3d 330, 350 (5th Cir. 2001) ("It is well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum."); Mesa, 197 F.3d at 1048 (holding that the district court should have denied the defendants' motion for summary judgment because there was evidence that the defendants prevented the plaintiff from speaking at a county commissioner's meeting because of the viewpoints plaintiff intended to express).  Thus, every reasonable government official would have understood that refusing to read Plaintiff's Comment at a Board meeting because of the viewpoints expressed therein violates the First Amendment.

In sum, the Court finds that genuine issues of material fact preclude summary judgment in favor of Gallagher on qualified immunity grounds.

### b.    **Monell**

Next Defendants argue that the Board is entitled to summary judgment as to Plaintiff's municipal liability claim.  Mot. at 10-11, ECF No. 6.

"When an officer deprives a citizen of a constitutional right, . . . municipal governments may incur liability under § 1983 when 'the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'"  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting Monell, 436 U.S. at 690).  A municipal liability claim has three elements: "(1)

Appellants' Appendix
0146

official policy or custom, (2) causation, and (3) state of mind." Schneider v. Grand Junction Police Dep't, 717 F.3d 760, 769 (10th Cir. 2013); see also Burke v. Regalado, 935 F.3d 960, 998 (10th Cir. 2019).

Here, Defendants argue only that Plaintiff's municipal liability claim fails because no First Amendment violation occurred. Mot. at 10-11 (citing Heller, 475 U.S. at 799). However, as explained in Section IV(a)(1)(C), supra, genuine issues of material fact exist as to whether a First Amendment violation occurred. Because Defendants do not argue that the Monell claim fails for any other reason, the Monell claim survives summary judgment. See Pacheco v. Hopmeier, 770 F. Supp. 2d 1174, 1194 (D.N.M. 2011) ("Defendant School Board argues that the Court should grant summary judgment on Plaintiff's Monell claim, arguing solely at this juncture that Plaintiff cannot sustain a Monell claim because no constitutional violation occurred. . . . Since the Court has found enough evidence to sustain findings of multiple constitutional violations, summary judgment against Plaintiff on his Monell claim is improper at this stage.").

Regardless, viewing the evidence and drawing reasonable inferences in Plaintiff's favor, all three elements are satisfied. First, "[a] challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is . . . a final decision by a municipal policymaker . . . ." Schneider, 717 F.3d at 770. In this regard, Defendants appear to concede that Gallagher is the final decisionmaker regarding whether public comments submitted online are read at a Board meeting. See Mot. at 7, ECF No. 6 ("Defendant Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to read a form submitted after that date." (citing Defs.' Facts ¶ 20)).

Second, to establish causation, Plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Schneider, 717 F.3d at 770 (quoting Bd.

26

of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).  Here, Gallagher's decision to not read Plaintiff's Comment at the March 4, 2025 Board meeting caused the deprivation of Plaintiff's First Amendment rights if that decision was based on the viewpoints expressed in the Comment.  See Section IV(a)(1)(C), supra.

Finally, "[a] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  Schneider, 717 F.3d at 770 (quoting Brown, 520 U.S. at 407).  "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  Id. at 771 (quoting Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998)).  Here, the Court has already found that every reasonable government official would have understood that refusing to read Plaintiff's Comment at a Board meeting because of the viewpoints expressed therein violates the First Amendment.  See Section IV(a)(2), supra.  Consequently, the Court finds that a reasonable jury could find that Gallagher acted with deliberate indifference.  As such, the Board is not entitled to summary judgment on Plaintiff's Monell claim.

c.    **New Mexico Civil Rights Act**

Finally, Defendants seek summary judgment on Plaintiff's claim under the NMCRA that alleges the Board violated Plaintiff's free speech rights under Article II, Section 17 of the New Mexico Constitution. Mot. at 5-6.  Article II, Section 17 provides, in relevant part: "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

27

N.M. Const. art. II, § 17.  Defendants argue that Plaintiff's claim under the NMCRA fails because the Board "passed no law to restrain or abridge the Plaintiff's liberty of speech."  Mot. at 6. Plaintiff argues that viewpoint discrimination offends the New Mexico Constitution just as it does the United States Constitution.  Resp. at 16.

The Court agrees with Plaintiff.  "While the difference in the language used in the First Amendment and Article II, Section 17, may be some evidence that the drafters of the New Mexico Constitution intended a somewhat different scope of protection, [the New Mexico] supreme court has recognized that Article II, Section 17, 'reads substantially the same' as the First Amendment." City of Farmington v. Fawcett, 843 P.2d 839, 846 (N.M. Ct. App. 1992) (quoting Nall v. Baca, 626 P.2d 1280, 1284 (1980)).  See also Coll v. First Am. Title Ins. Co., 642 F.3d 876, 895 (10th Cir. 2011) (citing American Association of People with Disabilities v. Herrera, 690 F. Supp. 2d 1183, 1224 (D.N.M. 2010) for the principle that the "U.S. Constitution's First Amendment freedoms of speech and association are coextensive with protections provided by New Mexico Constitution, art. II, § 17").  Because the protections of Article II, Section 17 are at least coextensive with those of the First Amendment, see Coll, 642 F.3d at 895, the Board may be liable to Plaintiff for viewpoint discrimination under the NMCRA.  Cf. Fawcett, 843 P.2d at 846-47 ("While it is settled constitutional law that state courts may not restrict the protection afforded by the federal Constitution, as interpreted by the United States Supreme Court, they may find greater protection under their state constitutions, even when the language is identical.").  For the reasons discussed in Section IV(a)(1), supra, genuine issues of material fact exist as to whether Defendants violated Plaintiff's rights under Article II, Section 17 of the New Mexico Constitution.

Appellants' Appendix
0149

**V.     Conclusion**

Therefore, it is **HEREBY ORDERED** that Defendants' Motion for Summary Judgment

Based in Part on Qualified Immunity, ECF No. 6, is **DENIED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

29

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JASON SANCHEZ**

     **Plaintiff,**

**vs.**                                         **Case No.: 2:25-cv-00226-MIS-GJF**

**MIKE GALLAGHER,**
**individually and in his official**
**capacity, and**
**EDDY COUNTY BOARD OF**
**COMMISSIONERS,**

     **Defendants.**

**NOTICE OF APPEAL**

Notice is hereby given that Defendants Eddy County Board Of Commissioners and Mike Gallagher, by and through their counsel of record, Law Office of Jonlyn M. Martinez, LLC (Jonlyn M. Martinez) hereby appeals to the United States Court of Appeals for the Tenth Circuit, the Order Denying Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity enter in this action on June 10, 2025 [Document 18], denying Defendants' Motion for Summary Judgment which is based on qualified immunity. Defendant appeals the Order pursuant to 28 U.S.C. § 1291, as well as *Mitchell v. Forsyth*, 472 U.S. 511 (1985), and similar cases.

Respectfully Submitted:

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

By: */s/ Jonlyn M. Martinez*
    JONLYN M. MARTINEZ
    Attorney for County Defendants
    P.O. Box 1805
    Albuquerque, NM 87103-1805
    P: (505) 247-9488
    jonlyn@jmartinezlaw.net

I hereby certify that a copy of the foregoing
was served via CM/ECF on June 30, 2025:


*/s/ Jonlyn M. Martinez*